**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRACE PARK, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 16-CV-1520 (LTS) (SN) |
| vs. | **Hon. Judge Laura T. Swain** |
| FDM GROUP (HOLDINGS) PLC and FDM GROUP, INC. | |
| Defendants. | |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

2443052.9

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................2

A.   FDM'S BUSINESS ................................................................................................2

     1.   FDM's Training Program ...........................................................................3

     2.   Placement of FDM Consultants ..................................................................4

B.   GRACE PARK ......................................................................................................4

     1.   The Employment Agreements and the Early Termination Fee. ..............................5

C.   The Amended Complaint .........................................................................................6

LEGAL STANDARD ....................................................................................................8

ARGUMENT ...............................................................................................................9

A.   THE AMENDED COMPLAINT SHOULD BE DISMISSED IN FULL. ........................9

     1.   The Trainee Claims (Counts 3 & 4) .............................................................9

     2.   The Consultant Claims (Counts 1, 2, 5, 6, 8 & 11) ........................................11

         a)   Park failed to state a claim for minimum wage (Counts 5 & 6). ...............12

         b)   Park failed to state a claim for gap time wages (Count 8). ........................13

         c)   Park failed to state a claim for overtime wages (Counts 1 & 2). ...............13

         d)   Park failed to state a declaratory judgment claim (Count 11). .................15

     3.   The Early Termination Fee Claim (Count 7). .................................................16

         a)   The Fee is an enforceable liquidated damages provision. .........................16

         b)   The Fee is not prohibited by the New York Labor Law. ...........................18

     4.   The State Records and Wage Statement Claims (Counts 9 & 10) ........................21

B.   IN THE ALTERNATIVE, ANY SURVIVING FEDERAL CLAIMS SHOULD
     BE LIMITED TO TWO YEARS PRIOR TO THE FILING OF THE
     COMPLAINT. ...................................................................................................21

     1.   Park Does Not Plausibly Allege Equitable Tolling. .........................................21

2.      Park Does Not Allege Willful Violations. ..............................................................23

CONCLUSION .............................................................................................................................25

2443052.9

# TABLE OF AUTHORITIES

Page(s)

CASES

*Bautista v. El Coyote Mex Rest.*,
    No. CV-14-S-458, 2014 WL 2465327 (N.D. Ala. May 30, 2014) .........................................24

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382 (1999) ...............................................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................................8

*Bustillos v. Academy Bus, LLC*,
    No. 13-cv-565, 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014) .....................................................14

*Cano v. DPNY, Inc.*,
    287 F.R.D. 251 (S.D.N.Y. 2012) ................................................................................................9

*Chen v. Major League Baseball*,
    6 F.Supp.3d 449, 452 (S.D.N.Y. 2014).......................................................................................3

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
    No. 12-CV-5018, 2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013) .............................................15

*Dejesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013)...........................................................................................8, 13, 14, 15

*Diaz v. Consortium for Worker Educ., Inc.*,
    No. 10 CIV. 01848, 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010)...........................................8

*Era Helicopters, LLC v. Amegin*,
    181 So. 3d 241 (La. App. Ct.. 2015)....................................................................................17, 18

*Ferrand v. Credit Lyonnais*,
    No. 02 CIV 5191, 2003 WL 22251313 (S.D.N.Y. Sept. 30, 2003)..........................................20

*Fitzgerald v. Signature Flight Support Corp.*,
    No. 13 CV 4026, 2014 WL 3887217 (S.D.N.Y. Aug. 5, 2014) .................................................8

*Frasier v. Gen. Elec. Co.*,
    930 F.2d 1004 (2d Cir.1991)....................................................................................................23

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d 528 (2d Cir. 2016).........................................................................................9, 10, 11

*Gold v. Am. Med. Alert Corp.*,
    No. 14 CIV 5485, 2015 WL 4887525 (S.D.N.Y. Aug. 17, 2015) ..........................................19

*Goldberg v. Jacquet*,
    No. 14 Civ 1581, 2015 WL 5172939 (S.D.N.Y. Sept. 3, 2015) .............................................18

*Heartland Sec. Corp. v. Gerstenblatt*,
    2000 WL 303274 (S.D.N.Y. Mar. 22, 2000) .........................................................................18

*Hudacs v. Frito–Lay, Inc.*,
    90 N.Y.2d 342 (1997) .............................................................................................................19

*Kold, LLC v. Croman*,
    No. CV N13C-05-249, 2014 WL 7008431 (Del. Super. Nov. 25, 2014) ..........................17, 18

*Lundy v. Catholic Health System of Long Island, Inc.*,
    711 F.3d 106 (2d Cir. 2013)...............................................................................................13, 14

*Maldonado v. La Nueva Rampa, Inc.*,
    10-cv-8195, 2012 WL 1669341 (S.D.N.Y. May 14, 2012) ....................................................22

*Mark v. Gawker Media LLC*,
    13-cv-4347, 2016 WL 1271064 (S.D.N.Y. Mar. 29, 2016)............................................ passim

*Marsh v. Prudential Sec. Inc.*,
    1 N.Y.3d 146 (2003) ...............................................................................................................20

*Marshall v. UBS Fin. Servs., Inc., No. 14 CV. 4384*,
    *2015 WL 4095232 (S.D.N.Y. July 7, 2015)* ..........................................................................23

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988)..................................................................................................................23

*Miller v. Int'l Tel. & Tel. Corp.*,
    755 F.2d 20 (2d Cir. 1985)........................................................................................................22

*Milwaukee Area Joint App'ship Train'g Comm. v. Howell*,
    67 F.3d 1333 (7th Cir. 1995) ...................................................................................................17

*Morgovsky v. AdBrite, Inc.*,
    No. C-10-05143, 2012 WL 1595105 (N.D. Cal. May 4, 2012)................................................24

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
    723 F.3d 192 (2d Cir. 2013).....................................................................................................14

*New York Guardian Mortgagee Corp. v. Cleland*,
    473 F. Supp. 409 (S.D.N.Y. 1979).........................................................................................15

2443052.9

*Ochoa v. Pearson Educ*,
  11-cv-1382, 2012 WL 95340 (D.N.J. Jan. 12, 2012)..........................................................23, 25

*Perkins v. 199 SEIU United Healthcare Workers East*,
  73 F. Supp. 3d 278 (S.D.N.Y. 2014)......................................................................................14

*Ramos v. City of New York Fire Dept.*,
  No. 13-cv-9225, 2014 WL 2111687 (S.D.N.Y. May 9, 2014) ...........................................8, 12

*Rattigan v. Commodore Int'l Ltd.*,
  739 F. Supp. 167 (S.D.N.Y. 1990)..........................................................................................16

*Saunders v. City of New York*,
  594 F. Supp. 2d 346 (S.D.N.Y. 2008).....................................................................................22

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
  425 F.3d 119 (2d Cir. 2005).....................................................................................................3

*Thind v. Healthfirst Mgmt. Servs, LLC*,
  14-cv-9539, 2015 WL 4554252 (S.D.N.Y. July 29, 2015).....................................................12

*Urista v. Ohman*,
  2012 WL 7849882 (Minn. Dist. Ct. Nov. 15, 2012)...............................................................17

*Vysovsky v. Glassman*,
  No. 01 CIV 2531, 2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007), *reversed on
  other grounds sub nom. Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d
  93 (2d Cir. 2014).....................................................................................................................21

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947).............................................................................................................9, 11

*Wang v. Hearst Corp.*,
  No. 12-cv-793, 2013 WL 105784 (S.D.N.Y. Jan. 9, 2013) ...................................................19

**STATUTES**

29 U.S.C. § 203(e) ........................................................................................................................9

29 U.S.C. § 206(a)(1)..................................................................................................................12

29 U.S.C. § 207(a)(1)..................................................................................................................13

FLSA ................................................................................................................................... passim

N.Y. Lab. Law § 193 ..............................................................................................................19, 20

New York Labor Law ...............................................................................................................13, 18

NY Lab. L. § 193(1)(b)(xi) ................................................................................................20

NY Lab L § 652 .............................................................................................................12

**OTHER AUTHORITIES**

12 N.Y.C.R.R. § 142-2.14(a) ............................................................................................9

Am. Compl. at ¶ 5 ......................................................................................................4, 5

Fed. R. Civ. P. 12(b)(6) ..........................................................................................2, 3, 12

Local Rule 18.3 ...............................................................................................................2

N.Y. Comp. Codes R. & Regs. Title 12 § 195-2.1(a)(2) .............................................20

Rule 8 .............................................................................................................................8

2443052.9

**Preliminary Statement**

Defendants FDM Group, Inc. and FDM Group (Holdings) PLC (collectively, "FDM")
offer college graduates and military veterans a platform to advance their careers in one of the
most in-demand industries – Information Technology (IT).  FDM fronts the entire cost of a
lengthy training program that teaches highly-specialized technical skills critical to IT jobs.  After
acquiring these marketable skills, trainees can get real world experience with leading companies.

Plaintiff Grace Park received this training for free, was placed with a large financial
institution, but quit less than a year into her employment contract.  Now she claims that she
should have been paid a salary during the period she was being trained for free; that she should
have been paid additional amounts for the period she was working; and that her breach of
contract should be excused.  Each of these three categories of claims fails to state a claim.

1. Park asserts that the "FDM Trainees" should have been paid minimum wage (Counts 3
& 4).  But Second Circuit law is clear that trainees who learn specialized and marketable skills in
a classroom setting to their primary benefit are not entitled to minimum wage for the period they
are being trained, because they are not "employees" under federal or state law.

2.  Park asserts that after FDM Trainees went to work at the companies where FDM
placed them (at which point they became "FDM Consultants"), the FDM Consultants were
misclassified as exempt and, as a result, were not properly paid minimum wage, gap time or
overtime wages (Counts 1, 2, 5, 6, 8 and 11).  Even assuming that FDM Consultants are non-
exempt, however, Park has not made sufficiently detailed factual allegations to render these
claims plausible.  She has failed even to estimate the amount she was allegedly underpaid.

3.  Park alleges that the FDM Consultants were improperly subjected to an early
termination fee (Count 7).  But the termination fee is an appropriate measure of liquidated

damages due to Park's failure to satisfy the terms of her employment contract.  Further, the termination fee was not deducted from her wages, so does not run afoul of wage deduction law.

This motion to dismiss also addresses the statute of limitations.  Park does not sue solely on her own behalf, or solely for the year or so she interacted with FDM.  Instead, she seeks to represent claims spanning a six-year period.  The federal statute of limitations is two years.  Park argues that FDM violated the federal law in bad faith and asks the Court to "equitably toll[]" her claims because FDM allegedly failed to post signs regarding her wage rights.  Park fails to allege factual detail to support these conclusory claims.

The Defendants respectfully ask the Court to dismiss the amended complaint.

## FACTUAL BACKGROUND[1]

### A.    FDM'S BUSINESS

FDM Group, Inc. ("FDM") is a Delaware company with a corporate headquarters on Wall Street in New York.  (Am. Compl. ¶ 6.)  FDM Group (Holdings) PLC is a Public Limited Company registered in England, with a principal place of business in London.  (*Id.* at ¶ 7.)[2] FDM provides valuable "classroom and practical skill development" training in a highly technical and marketable field, plus job placement services in that field, permitting FDM employees to enter the industry.  (*Id.* at ¶¶ 1, 21, 25, 28, 34.)  In exchange for these valuable training and placement services, FDM employees agree to work for FDM for two years.  (*See id.* at ¶¶ 24, 27, 31.)  To prevent employees from exploiting their valuable training, denying FDM its bargained-for return on investment and damaging its reputation with clients, employees agree

---

[1] For the purposes of this motion only, Defendants assume the facts stated in the Amended Complaint are true pursuant to Fed. R. Civ. P. 12(b)(6), except as otherwise noted.

[2] The Defendants maintain that FDM Group (Holdings) PLC is not subject to the Court's personal jurisdiction.  In lieu of filing a motion to dismiss based on personal jurisdiction, the parties have agreed to enter into a Notice Of Voluntary Dismissal Of FDM Group (Holdings) Plc Without Prejudice And Stipulation Regarding Tolling, which is being submitted to the Court clerk per Local Rule 18.3

to a termination fee if they do not work the full two years.  (*See id*. ¶ 54)

### 1.    FDM's Training Program

FDM training takes place at FDM's Wall Street office in New York City through seminars, workshops, on-site training and online access. (Am. Compl. ¶ 28; Ascher Decl. at ¶ 2, attach'g Park Train'g Agr. (Ex. A) at § 5.1.)[3]  FDM provides trainees with a workstation, relevant books and training materials.  (Ex. A at § 5.2.)

FDM provides the training curriculum in a series of distinct training courses – called modules – that focus on particular skills, along with a trainer for each module.  (*Id.* at §§ 2,11; Sch. 1, p. 8.)  The modules include Core Skills, Development Java/.Net, Finance Analyst, Test Analyst, Infrastructure and Project Management Office.  (*Id.* at § 2.)  Skills trainees can obtain depend on the training module, but include:  Unix, SQL, SQL Server, Java SE, Java EE, .Net Framework, C#.NET, C# ADO.NET, C# ASP.NET, WPF, Service Oriented Architecture and WCF, Excel – VBA, ITIL, PL/SQL, OS Admin, APM, etc. (*Id.* at Sch. 1, pp. 10-11.)

Trainees receive training for approximately eight hours a day for two to six months, depending on their focus.  (Am. Compl. ¶¶ 26, 36, 37.)  During that time, FDM tests the progress of trainees through a series of projects, tests, examinations and interviews on relevant subjects throughout the training.  (*Id.* at §5.2.)   If relevant to their coursework, Trainees are provided with external certificates for successful completion of any certification examinations taken as part of the training, as well as an FDM Certificate of Completion that indicates that trainees have successfully completed the FDM Training Academy.  (*Id.* at Sch. 1, p. 9.)

---

[3] In ruling on a motion under Fed. R. Civ. P.  12(b)(6), the court may properly consider "documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *Chen v. Major League Baseball*, 6 F.Supp.3d 449, 452 (S.D.N.Y. 2014).  Plaintiff relies on language in the Training and Employment Agreements to argue that there were "uniform policies and practices", to support jurisdictional allegations, and as the foundation upon which she bases her claims.  *See* Am. Compl. ¶¶ 1, 5, 13, 16, 17, 24, 43, 47, 50, 54, 55, 57, 63.

In addition to technical skill development, FDM assists trainees in their personal development planning and career aspirations, so they can maximize their chances of suitable employment after completion.  (*See* Ex. A at Schedule 1, p. 8.)  FDM fronts all costs for the training, which are significant.  (Am. Compl. ¶ 55.)

### 2.     Placement of FDM Consultants

FDM Consultants are employees who have been engaged by FDM Group to work at a client site.  (Am. Compl. ¶¶ 31, 41.)  Once trainees have graduated from the training program, they are eligible to be placed as FDM Consultants with clients, many of whom are in the financial industry.  (*Id.* at ¶¶ 21, 23.)  Depending on the combination of training modules successfully completed, trainees were deemed qualified to interview for particular work "streams" that correspond to a range of technical and business disciplines.  (*See id.* at ¶ 21.)  The "streams" include Development, Testing, Project Management Office, Data and Operational Analysis, Business Analysis, Business Intelligence, and Production support.  (*Id.*)

Although FDM's goal is to coordinate placements for successful graduates from the FDM Training Academy, FDM explicitly advises trainees that it "cannot guarantee that [trainees] will receive a Placement."  (Ex. A at § 8.2.)  Among the reasons that a placement may not occur are "market conditions, client requirements and other factors at the relevant time."  (*Id.*)

## B.     GRACE PARK

Plaintiff Grace Park signed a Training Agreement on June 30, 2014.  (Ex. A. at 5.)  She received training from FDM for two months through the Data and Operational Analysis stream.  (Am. Compl. ¶¶ 22, 33.)  Park "agree[d] that nothing in this [Training] Agreement shall give rise to a relationship of employee and employer between you and FDM."  (Ex. A at § 12.3.)  Park was employed as an FDM Consultant between October 2014 until October 2015.  (Am. Compl. at ¶  5.)  Park was "placed at a financial institution in Delaware."  (*Id.* at ¶ 22.)  Park "resigned

4

shortly before the start of her second year" of employment and "paid the Termination Fee [of $20,000] shortly after resigning."  (*Id.* at ¶ 60.)

      **1.**      **The Employment Agreements and the Early Termination Fee.**

Park signed an Employment Agreement on October 9, 2014.  (*See* Ascher Decl. at ¶ 3, attach'g Park Emp't Agr. (Ex. B).)  The Term of the Agreement is "the longer of (i) two years from the date of this Agreement; and (ii) completion of the project on which the Employee is working at the time he/she has fulfilled the two-year requirement; or until otherwise terminated by the Parties."  (*Id.* at § 1.)  The Agreement provides that "[t]he Employee acknowledges that the Company has incurred significant costs in training for which there has been no charge to the Employee" so "the Employee agrees to commit to a minimum employment term of two years." (*Id.* at § 2.2; Am. Compl. ¶ 55.)  FDM values the "cost of each training course . . . at $75 per hour for each module started, up to a maximum of $30,000."  (Ex. A at Sch 1, p. 10).

The "Termination Fee" is "$30,000.00 in the first year . . .  and $20,000 in the second year of this Agreement as a good faith estimate of the damages and losses the Company will suffer in the event of an early termination of this Agreement due to a breach by the Employee prior to the completion of the Term."  (Ex. B at § 1.)  The "Termination Fee is not applicable to year 3 employees and beyond."  (*Id.*)  If the employee terminates the Employment Agreement, "the Employee shall pay to the Company as liquidated damages and not as a penalty, the amount of the full cost of the Termination Fee to compensate the Company for the damages it will sustain due to the Employee's breach."  (*Id.* at § 4.3.)  If FDM terminates the Employment Agreement without cause, the payment obligations "shall cease."  (*Id.* at § 4.1.)  Further, as long as candidates "agree to keep [their] resume up to date, attend interviews . . . and accept Placements" "for the Commitment Period and comply with the terms and conditions of [their] employment contract, then [they] shall have no liability for the payment of the [Early

Termination] Charges."  (Ex. A at § 8.2; Am. Compl. ¶ 55.)

Any FDM Consultant obligated to pay the Fee either pays by their last day of employment or is "responsible for the payment of the balance . . . by separate transaction."  (Am. Compl. ¶ 57.)  The agreement provides that the "Company is authorized to apply, against any monetary obligation owed to the Company by the Employee, any final salary or other emoluments due to the Employee upon termination of the Agreement."  (*Id.* at § 4.3.)

Per Schedule 1 to Park's Employment Agreement, her salary was:

| **Year 1** | **Year 2** |
|---|---|
| **Basic Salary**:  $23,000 per annum | **Basic Salary**:  $25,000 per annum |
| **Daily Bonus**:  $88 per full day (8 hrs +) | **Daily Bonus**:  $104 per full day (8 hrs +) |
| $44 per half day (4 to < 8 hours) | $52 per half day (4 to < 8 hours) |

(*Id.* at Sch. 1, p. 6.)  In addition, Schedule 1 indicates that she "receive[d] a one-time bonus of $750."  (*Id.*)  Assuming Park worked 8 hours a day, 5 days a week (totaling 40 hours), Park would have been paid $882 a week.  Including the one-time bonus, that would put Park on track to make over $46,600 in 2014.  In 2015, she would have made approximately $52,040.

## C.  The Amended Complaint

On February 26, 2016, Grace Park filed the Class Action Complaint (Doc. #1).  On June 17, 2016, Park filed the First Am[en]ded Class Action Complaint (Doc. #20) (the "Amended Complaint").  The Amended Complaint asserts eleven (11) causes of action that can be divided into the following six categories:

(1) **Consultant Overtime Claims Under Federal (Count 1) & State (Count 2) Law:** Park alleges that she was misclassified as exempt, resulting in violations of overtime law.  Park alleged that she "and the Collective Class and Class members regularly worked over 40 hours per week."  (Am. Compl. ¶ 43, 44; *see also id. at* ¶ 46 ("[u]pon information and belief, all other Collective Class and Class Members were similarly required to work beyond their standard 40 hour workweek without any overtime compensation.").)  Park alleges she "emailed her account manager Pippa Susskind that she arrives at work 'by 8:30am' and gets out 'around 6:45-7:15pm'." (*Id.* at ¶. 45.)  Plaintiff further stated that she "quite frequently had to work on weekends" and that she was not "able to even have a one hour lunch break (which

6

[she was] not even paid for).["]  (*Id.*)  Park does not allege further detail.

(2) **Trainee Minimum Wage Claims Under Federal (Count 3) & State (Count 4) Law**:  Park alleges that the pre-employment training time should have been compensated under minimum wage laws.  Park did not receive any compensation for her training.  (*Id.* at ¶ 33.)  She was categorized as an "unpaid 'Trainee[]" during [the] training period."  (*Id.* at ¶ 38.)  Park alleges that she and other trainees "received training for approximately eight hours per day, Monday through Friday."  (*Id.* at ¶¶ 36-37.)  Park alleges that all members of "her training class . . . were recruited for placement as FDM Consultants at the conclusion of their training."  (*Id.* at ¶ 33.)

(3) **Consultant Minimum and Gap Time Wage Claims Under the Federal (Count 5) & State (Counts 6 & 8) Law**:  Park alleges that she was misclassified as exempt, resulting in violations of minimum wage and gap-time laws.  Park was paid $1,916.67 a month in basic pay.  (*Id.* at ¶ 50.)  Park was also paid a daily performance bonus of $88.00 if she worked a full 8-hour day, and a half-day bonus of $44.00 if she worked at least four hours.  (*Id.* at ¶¶ 47-48.)

(4) **Consultant Unlawful Wage Deduction Claims Under the NYLL (Count 7) Regarding the Early Termination Fee:**  Park alleges that the requirement that she pay an early termination fee as liquidated damages in her employment agreement violated state wage deduction laws. Park left her placement within the first 12 months of employment, making her obligated to pay an early termination fee of $30,000. FDM agreed to deem her resignation as having taken place in her second year, and she was allowed to pay a Termination Fee of $20,000 instead.  (*Id.* at ¶ 60.)  Plaintiff alleged that she "paid the Termination Fee shortly after resigning."  (*Id.*)  Park does not allege that any deductions were made from her paychecks.

(5) **Violations of NYLL Recordkeeping (Count 9) and Wage Statement Provisions (Count 10):**  Park alleges that FDM violated state record-keeping and wage statement law.  She alleges that FDM "did not provide Plaintiffs and the members of the Classes with a written notice of their rate of pay, regular payday, and such other information" and "did not provide Plaintiffs and the members of the Class with a legally sufficient wage statement upon the payment of wages."  (*Id.* at ¶¶ 142, 146.)

(6) **Consultant Declaratory Judgment Claim (Count 11) Regarding the Early Termination Fee:**  Park alleges that "since [she] was required to kick back $20,000 of her monthly base pay and daily bonuses, she and other members of the [] Class suffered minimum wage and 'gap time' damages given the fact that the kickbacks reduced her monthly base pay and daily bonus for the final compensation periods to zero."  (*Id.* at ¶ 64.)

Park seeks to recover on behalf of collective and class members for claims dating back six years.  (Am. Compl. ¶ 2.)  Park left FDM in October 2015.  (*Id.* at ¶ 5.)  Park filed opt-in forms on February 26 and April 29, 2016.  (Doc. Nos. 1, 5 & 10.)  Park alleges that the FLSA statute of limitations should be "equitably tolled from three years."  (Am. Compl. ¶ 2.)  In

2443052.9

support, Park alleges that "During her employment, Plaintiff informed her FDM supervisor that she was regularly working over forty hours per week and inquired about receiving overtime pay." (*Id.* at ¶ 44.)   Plaintiff alleges that she "was informed that unless her placement manager approved it, she was not eligible for overtime pay." (*Id.*)  Park also alleges that "Defendants failed to conspicuously post notice in the workplace advising Plaintiffs of their statutorily-protected right to minimum wage and overtime compensation." (*Id.* at ¶ 66.)  Lastly, Park alleges that "Defendants' conduct, as set forth in this Complaint, was willful and in bad faith." (*Id.* at ¶ 65.)  No factual allegations support the claim of willfulness or bad faith.

## LEGAL STANDARD

The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fitzgerald v. Signature Flight Support Corp.*, No. 13 CV 4026, 2014 WL 3887217, at *3 (S.D.N.Y. Aug. 5, 2014).  The factual content must "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ramos v. City of New York Fire Dept.*, No. 13-cv-9225, 2014 WL 2111687, *2 (S.D.N.Y. May 9, 2014) (quoting *Iqbal,* 556 U.S. at 678-79).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to state a claim. *Dejesus*, 726 F.3d at 87-88 (quoting *Iqbal*, 556 U.S. at 678).  "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Diaz v. Consortium for Worker Educ., Inc.*, No. 10 CIV. 01848, 2010 WL

8

3910280, at *2 (S.D.N.Y. Sept. 28, 2010) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**A.      THE AMENDED COMPLAINT SHOULD BE DISMISSED IN FULL.**

### 1.      The Trainee Claims (Counts 3 & 4).

Plaintiff's trainee claims should be dismissed because the allegations of the Amended Complaint establish as a matter of law that Park was the primary beneficiary of her FDM training.  Genuine trainees are not "employees" under either the FLSA or the NYLL.  *See* 29 U.S.C. § 203(e); 12 N.Y.C.R.R. Sec. 142-2.14(a).  The inquiry into employee status under the NYLL and FLSA is the same.  *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016) ("the NYLL definition [of employee is] the same in substance as the definition in the FLSA."); *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 n.2 (S.D.N.Y. 2012).  "Plaintiffs bear the burden of demonstrating that they were employees entitled to the protections of the FLSA rather than bona fide [trainees]."[4]  *Mark v. Gawker Media LLC*, 13-cv-4347, 2016 WL 1271064, *9 (S.D.N.Y. Mar. 29, 2016).  In the seminal Supreme Court case on bona fide trainees vs. employees, *Walling v. Portland Terminal Co.*, 330 U.S. 148, 153 (1947), the Court stated:

> "The Fair Labor Standards Act was not intended to penalize [companies] for providing, free of charge, the same kind of instruction at a place and in a manner which would most greatly benefit the trainees."

Relying on *Walling*, the Second Circuit analyzes whether an unpaid intern/trainee or the employer is the "primary beneficiary" of the relationship.  *Glatt*, 811 F.3d at 536.  The *Glatt* court identifies the following[5] non-exhaustive list of considerations:

---

[4] While recent case law deals with interns, rather than trainees, the basic inquiry is the same.

[5] The *Glatt* court also evaluated whether the program at issue "is tied to [a] formal education program" and "correspond[s] to the academic calendar." *Id.* at 536.  Those elements do not apply to post-graduate training programs like the one here, for which "academic credit" is not applicable.  Instead, those factors are "confined to internships and do[] not apply to the training programs in other contexts [because t]he purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting." *Id.* at 537.  This is consistent with the "flexible approach" applied in the Second Circuit. *Id.*

2443052.9

(1) The extent to which the intern and the employer clearly understand that there is no expectation of compensation;

(2) The extent to which the internship provides training that would be similar to that which would be given in an educational environment;

(3) The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning;

(4) The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern;

(5) The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

*Id.* at 537.  While the courts weigh these considerations, "[n]o one factor is dispositive and every factor need not point in the same direction for the court to conclude that the [trainee] is not an employee entitled to the minimum wage."  *Id.* at 537.  The "touchstone of this analysis is the 'economic reality' of the relationship."  *Id.*  In "collective actions, [courts] consider evidence about a [training] program as a whole rather than the experience of a specific [trainee]"  *Id.*

The relevant *Glatt* factors weigh heavily in favor of dismissal:

- The trainees are explicitly advised that they are not employees in the Training Agreement.  Park does not allege that FDM led her to expect compensation during the training.

- Park acknowledged that the training was "classroom and practical skill development training."  (Am. Compl. ¶ 34.)  FDM provides a workstation, books, materials and trainers, as well as testing, projects and certifications.

- The duration of training is specifically tailored to provide the trainee with beneficial learning for the particular "streams" into which they may be placed.  (Am. Compl. ¶ 25).  A training period of two to six months, depending on the stream, is reasonable. *Mark*, 2016 WL 1271064 at *10 (characterizing a three month internship as "short" and finding that, "the length of the internship must be grossly excessive in comparison to the period of beneficial learning" "[i]n order to provide significant weight in favor of the plaintiff").

- FDM trainees do not displace paid employees.  The trainees are trained in FDM's Wall Street office in New York City, and are recruited for placement at a client site as FDM Consultants after they complete their training.  (Am. Compl. ¶ ¶ 28, 31.)

- The trainees are advised that FDM "cannot guarantee that [trainees] will receive a Placement."  (Ex. A at § 8.2.).

The trainees are plainly the beneficiaries of the FDM Training Academy.  They receive

10

training "similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions." *Glatt, 811 F.3d* at 537.  The skills the trainees receive are technical skills that are marketable far beyond any single FDM client and patently increase the trainees' earning power well beyond the two-year period of their prospective employment with FDM.  Further, the trainees are given placement opportunities that offer real world experience, which is invaluable.

FDM, on the other hand, does not receive any immediate benefit from the training.  In fact, FDM must hire instructors and other staff and pay overhead at the Wall Street office in order to run the training program.  FDM benefits from the training if and only if the trainee successfully completes the program, gets a placement, and works for at least the agreed-upon two-year period.  (*See* Am. Compl. at ¶ 27 (training teaches "Trainees to perform professional business and IT consultancy to Defendants' clients, which is necessary for Defendants to generate billable revenue.")  None of that is guaranteed.

While Plaintiff alleges that "FDM mandates that all FDM Consultants attend training," Am. Compl. ¶ 32, the fact that FDM may have a future potential benefit is irrelevant.  In *Walling*, the Court found that the benefit gained by the employer – there, the railroad -- because the training graduates formed a pool of qualified individuals from which the defendant could hire was too attenuated to be relevant.  *Walling,* 330 U.S.at 152-153.  It is not "unfair or abusive for Defendants to look to their interns as a potential pool of future employees." *Mark*, 2016 WL 1271064 at *13.

Park was a bona fide trainee as a matter of law, so Counts 3 and 4 should be dismissed.

### 2.      The Consultant Claims (Counts 1, 2, 5, 6, 8 & 11).

Park fails to establish an entitlement to minimum wage, gap-time or overtime during her

employment as an FDM Consultant.[6]

  a)  Park failed to state a claim for minimum wage (Counts 5 & 6).

Assuming Park was entitled to minimum wage pay, her allegations demonstrate that her

salary was above minimum wage.  "An employee cannot state a claim for a minimum wage

violation unless his average hourly wage falls below the federal minimum wage."  *Thind v.*

*Healthfirst Mgmt. Servs, LLC*, 14-cv-9539, 2015 WL 4554252, at *4 (S.D.N.Y. July 29, 2015)

(internal quotations omitted) (dismissing minimum wage claims under federal and state

minimum wage).  During Park's employment, the New York minimum wage was $8.75/hour,

NY Lab L § 652, and the federal minimum wage was $7.25/hour.  29 U.S.C. § 206(a)(1).

Plaintiff alleges she was paid $1,916.67 a month in basic pay.  (Am. Compl. ¶ 50.)  She

also acknowledges that she received daily bonuses – but does not specify the amount that she

received.  (*Id.* at ¶¶ 47-48.)  Park also received a one-time bonus of $750.  (Ex. B at Sch. 1, p. 6.)

That is a salary of between $23,750 and almost $46,600 a year.  Divided by 52 weeks, that

amounts to between $456.73 and $896.15 a week.  Divided by 40 hours, that translates to

between $11.42 and $22.40 an hour.  This clearly exceeds $8.75 an hour.

While Park alleges that she "arrived" at work at 8:30 A.M. and "gets out" around 6:45 to

7:15 PM, she does not allege she actually worked those hours.  She does not indicate what time

she actual began work each day, what breaks she took, what lunch periods she took.  Even

assuming she did work those hours, accounting for lunch and other breaks (and ignoring the

daily bonuses and one-time $750 bonus she was indisputably paid), her pay exceeded $8.75 an

hour.  Park's allegations do not show any entitlement to relief.  *See Ramos v. City of New York*

---

[6] Park was classified as exempt.  Park alleges that the classification was incorrect.  FDM in no way intends to waive the affirmative defense that Park (and the other FDM Consultants) were exempt from the FLSA and the NYLL. FDM stands by its categorization, but recognizes the limitations imposed at the Rule 12(b)(6) stage, so assumes the FDM Consultants were covered employees solely for the purposes of this motion.  *See Ramos*, 2014 WL 2111687 at *3.

*Fire Dept.*, No. 13-cv-9225, 2014 WL 2111687, *3-5 (S.D.N.Y. May 9, 2014) (calculating wage based on complaint's allegations to find that average hourly rate exceeded minimum wage, and dismissing claim).

b)   <u>Park failed to state a claim for gap time wages (Count 8).</u>

Plaintiff includes a count asserting an entitlement to "gap time" wages under the NYLL. A "gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013).   Plaintiff alleges that "Defendants have failed to pay Plaintiffs and the Class straight time/gap time wages to which they were entitled under the NYLL." (Am. Compl. ¶ 137.)  Park also quotes from the statute: "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of any such underpayments . . . ." (Am. Compl. ¶ 136 (quoting NYLL Sec. 663(1).)  Plaintiff includes no allegations regarding the "wage to which . . . she is entitled" or regarding the amount of any underpayment.  Plaintiff has not included factual detail in support of her conclusory claim, so her claim should be dismissed.

c)   <u>Park failed to state a claim for overtime wages (Counts 1 & 2).</u>

Park has failed to allege sufficient facts showing that she worked overtime.  For an overtime claim, the "relevant portions of New York Labor Law do not diverge from the requirements of the FLSA." *Dejesus*, 726 F.3d at 89 n.5.  For a workweek longer than forty hours, an employee must "receive[] compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  In the Second Circuit, "in order to state a plausible FLSA overtime claim, a plaintiff must allege 40 hours of work in a given workweek as well as some uncompensated time in

13

excess of the 40 hours." *Lundy*, 711 F.3d at 114.  Plaintiff "must provide sufficient detail about

the length and frequency of their unpaid work to support a reasonable inference that they worked

more than forty hours in a given week."  *Nakahata v. New York-Presbyterian Healthcare System,*

*Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).  The rule is "designed to require plaintiffs to provide

some factual context that will nudge their claim from conceivable to plausible." *Dejesus*, 726

F.3d at 90.

Park alleges that she and the class "regularly worked over 40 hours per week."  (Am.

Compl. ¶ 43.)  She also alleges she "arrives at work 'by 8:30am' and gets out 'around 6:45-

7:15pm'" that she "quite frequently had to work on weekends" and that she was not "able to

even have a one hour lunch break (which [she was] not even paid for).[''']  (Am. Compl. at ¶ 45.)

Park does not allege that she *always* worked these hours.  Second Circuit precedent requires an

account of the hours worked each week, not a generalization of work over the span of a full year.

*Dejesus*, 726 F.3d at 87 (allegation of overtime in "some or all workweeks" insufficient); *Lundy*,

711 F.3d at 114-115 (allegation that plaintiff "typically" worked 37.5 hours and "occasionally"

worked an additional 12.5 hour shift insufficient; plaintiff did not allege the frequency of the

occurrence); *Perkins v. 199 SEIU United Healthcare Workers East*, 73 F. Supp. 3d 278

(S.D.N.Y. 2014) (allegation that "'[a]t all relevant times' since 2008, plaintiff 'was assigned and

actually worked more than 40 hours per week'" insufficient); *Bustillos v. Academy Bus, LLC*,

No. 13-cv-565, 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014) (allegation that plaintiff "would

regularly work from 60 to 90 hours per week" insufficient).

The Second Circuit's opinion in *Dejesus* is instructive.  In that case, the plaintiff alleged

she "worked more than forty hours 'in some or all weeks.'"  *Dejesus*, 726 F.3d at 87.  The court

held that because plaintiff did not allege "any approximation of the number of unpaid overtime

hours worked, her rate of pay, or any approximation of the amount of wages due," she failed to "render her claim plausible rather than merely conceivable."  *Id*.  Not only does Park fail to provide any estimate of unpaid hours worked, rate of pay, or wages due, she alleges that "no part of FDM Consultants' compensation was based on an hourly rate."  (Am. Compl. ¶ 49.)

        d)    <u>Park failed to state a declaratory judgment claim (Count 11).</u>

Plaintiff also asserts a different theory packaged as a "declaratory judgment" claim:  that the Early Termination Fee is a "kick-back" that reduced her salary beyond that required by minimum wage, gap time and overtime law.  (Am. Compl. ¶ 64.) ("since Plaintiff was required to kick back $20,000 . . . her monthly base pay and daily bonus for the final compensation periods [was reduced] to zero.")  Plaintiff's claim for a declaratory judgment must be dismissed because she cannot show a valid claim under the substantive law.

A declaratory judgment can only be issued when a "case or controversy" exists.  *See New York Guardian Mortgagee Corp. v. Cleland*, 473 F. Supp. 409, 418 (S.D.N.Y. 1979).  However, even when this requirement is met, the decision "as to whether to grant declaratory relief is within the sound discretion of the court." *Id.*  Although count eleven of the complaint is stylized as a separate claim, "a declaratory judgment is a remedy, not a cause of action." *Clayton's Auto Glass, Inc. v. First Data Corp.*, No. 12-CV-5018, 2013 WL 5460872, at *7 (E.D.N.Y. Sept. 30, 2013) (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir.1993)). Thus, without showing a claim under the substantive law, a plaintiff cannot show an entitlement to declaratory relief.  *See Id.*  Like her minimum wage, gap time and overtime allegations more generally, this allegation is devoid of any factual content.  Plaintiff fails to allege how much she was paid – including specifically through the daily bonuses – or identify what pay periods were "final compensation periods."  Park provides no detail regarding the other class members. Without speculating, it is impossible to deem these allegations plausible.

15

Park has not sufficiently alleged that she was underpaid under minimum wage, gap-time or overtime laws, so Counts 1, 2, 5, 6, 8 and 11 of the Amended Complaint should be dismissed.

### 3.      The Early Termination Fee Claim (Count 7).

Because Park was required to pay the Early Termination Fee as liquidated damages for prematurely terminating her Employment Agreement with FDM, and the Fee does not meet the standard for an unenforceable penalty, Park fails to state a claim under Count 7.

#### a)      The Fee is an enforceable liquidated damages provision.

The Termination Fee is an enforceable liquidated damages provision reflecting a reasonable estimate of the damages FDM incurred when Park prematurely terminated her employment agreement.   New York courts will enforce a liquidated damages provision (1) if the "damages flowing from the breach are difficult to ascertain"; (2) under "a provision fixing the damages in advance;" (3) and if the "amount is a reasonable measure of the anticipated probable harm." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 396 (1999).  The Termination Fee meets the criteria for an enforceable liquidated damages provision.  The "Termination Fee" is explicitly disclosed, and agreed to, as "a good faith estimate of the damages and losses the Company will suffer in the event of an early termination of this Agreement due to a breach by the Employee prior to the completion of the Term."  (Ex. B at §§ 1; 4.3 ("the Employee shall pay to the Company as liquidated damages and not as a penalty . . . to compensate the Company for the damages it will sustain due to the Employee's breach."))

Damages here are difficult to ascertain. *Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167 (S.D.N.Y. 1990) (acceleration of obligations upon termination was enforceable and not a penalty because damages were difficult to ascertain).  An early termination deprives FDM of revenue from its clients.  A consultant who leaves early also harms FDM's relationship and reputation with its clients.  FDM's clients seek consultants that are available for a minimum of

16

two years – they want continuity of services, not employees who leave within 12 months.  At its

worst, an early termination could result in FDM breaching its contract with its clients.

In addition, FDM must recoup its losses in providing an up-front investment in training.

Analogously, Courts across the country have upheld arrangements requiring employees to recoup

the employer's losses related to their up-front investment in training.  *See Milwaukee Area Joint*

*App'ship Train'g Comm. v. Howell*, 67 F.3d 1333 (7th Cir. 1995) (upholding training repayment

provision); *Urista v. Ohman*, 2012 WL 7849882 (Minn. Dist. Ct. Nov. 15, 2012) (accord); *Era*

*Helicopters, LLC v. Amegin*, 181 So. 3d 241 (La. App. Ct.. 2015) (accord).  Although recouping

of training costs is not the sole rationale for the Early Termination Fee, the case law clearly

supports that application.  FDM unquestionably incurred substantial costs in providing training.

Hiring instructors dedicated to providing eight-hours of training a day for months on end,

providing a workstation, overhead for the office space (on Wall Street, no less), providing books

and materials, all costs money.  *Kold, LLC v. Croman*, No. CV N13C-05-249, 2014 WL 7008431

*4 (Del. Super. Nov. 25, 2014) (upholding a liquidated damages provision because the "only

reasonable inference is that the Liquidated Damages Provision was included as a way for KOLD

to recoup the losses from its obligation to train [the employee], if [the employee] prematurely

terminated her employment" and the fee was a reasonable estimate of the potential damage

suffered by the employer)

The Termination Fee is proportionate to the actual loss FDM incurred.  As damages to

FDM upon a trainee's failure to adhere to the two year commitment period are difficult to

ascertain, FDM set the fee at $30,000.  Notably, this fee is comparable to how much FDM values

its training program (*i.e.*, $75/hour per training module, with a cap of $30,000).  Courts have

upheld liquidated damage figures higher than $30,000 in similar employment contexts.  *See, e.g.,*

17

*Kold*, 2014 WL 7008431 ($35,000); *Era Helicopter*, 181 So. 3d at 242 ($80,000).  Conversely, the only case from this circuit we identified – reported or unreported – as having struck down such a provision did so when the payment was exponentially greater than (*i.e.*, 10 times) this amount.  *Heartland Sec. Corp. v. Gerstenblatt* , 2000 WL 303274, at *6-7 (S.D.N.Y. Mar. 22, 2000) ($200,000).  Further, the obligation to repay in that case depended on whether the employee left to work for a competitor, unlike here.  *Id.*

FDM's practices in connection with the Early Termination Fee are eminently reasonable.  First, the Early Termination Fee is graduated and is reduced from $30,000 to $20,000 once the consultant completes one year of employment.  Second, once the two year period has been completed, FDM Consultants are free to take any position – without restraint – either with the FDM client with whom they were placed or with another employer.  Third, in Park's situation, although she was obligated to pay an early termination fee of $30,000, FDM reduced her obligation by $10,000.  (Am. Compl. ¶ 60.)

Park accepted classroom-style instruction for months, signed an Employment Agreement, was placed with a large financial institution – a job which would not have been possible prior to her participation in the FDM training – and then left within 12 months.  FDM invested in Park based upon her commitment.  She did not follow through on that commitment, so was required to pay FDM liquidated damages so that it could recoup its losses.

b)       The Fee is not prohibited by the New York Labor Law.

The Early Termination Fee is not prohibited by the New York Labor Law because the law does not apply to the Fee.  Even if it did, the Fee was not deducted from Park's paycheck, Park agreed to it in advance, and it was deducted for her benefit.

Park attempts to "fit a square peg into a round hole in order to find a violation of the NYLL" with her argument that the Early Termination Fee is a deduction from wages.  *Goldberg*

18

*v. Jacquet*, No. 14 Civ 1581, 2015 WL 5172939, at *4 (S.D.N.Y. Sept. 3, 2015), *aff'd*, ___ Fed. Appx. ___, 2016 WL 3569930 (2d Cir. June 30, 2016) (Ascher Decl. at ¶ 4, attached as Ex. C.). Section 193 permits "deductions" from wages "where the deductions are expressly authorized in writing by the employee and are for the benefit of the employee."  N.Y. Lab. Law § 193.  The purpose of section 193 is to "place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee."  *Gold v. Am. Med. Alert Corp.*, No. 14 CIV 5485, 2015 WL 4887525, at *5 (S.D.N.Y. Aug. 17, 2015) (citing *Hudacs v. Frito–Lay, Inc.*, 90 N.Y.2d 342, 349 (1997)).  Deductions are "limited to [things like . . . ]pay docking."  *Gold*, 2015 WL 4887525 at *5.  Section 193 is not intended to be used to challenge any type of condition applied to an employment relationship.  Courts have rejected an attempt to read section 193 broadly to "mean that an employer cannot withhold or deduct any amount for any reason." *Id* at *4.  The "Early Termination Fee" is a condition of employment that is "unrelated to and independent from the payment of wages."  *Hudacs*, 90 N.Y.2d at 344.  Here, Park seeks to refashion a contract claim – i.e., that the Early Termination Provision is unconscionable and unenforceable – as a labor claim.  This argument has already been rejected by the courts.  *See Gold*, 2015 WL 4887525 at *5 (rejecting "reading of the statute that would simply make an employee's common-law-breach of contract claim also actionable under section 193").

Even if section 193 applied here, Park failed to sufficiently allege a violation.  Section 193 requires a plaintiff to plead "a specific instance of docking the employee's pay."  *Id.* at *2; *Wang v. Hearst Corp.*, No. 12-cv-793, 2013 WL 105784 (S.D.N.Y. Jan. 9, 2013) (dismissing claim because language of statute requires deduction to be from wages).  However, there was no "wage deduction" here.  Park alleges that she "paid the Termination Fee shortly after resigning." (Am. Compl. ¶ 60.)  She conspicuously does not allege that the fee was deducted from her

wages.[7]  Neither does she allege that other FDM Consultants had the fee deducted from their wages.  Instead, she makes the conclusory allegation that she "is aware of at least two other FDM Consultants employed with FDM during the Collective Class Period who have resigned and paid the Termination Fee."  (Am. Compl. ¶ 61.)

Park "expressly authorized" the deductions in writing and the deductions were pursuant to the categories enumerated under the statute for the benefit of Park.  Park's Employment Agreement, which she signed and is bound by, provides that the "Company is authorized to apply, against any monetary obligation owed to the Company by the Employee, any final salary or other emoluments due to the Employee upon termination of the Agreement."  (Ex. B at § 4.3.)

The regulations authorize deductions if they are "specified by, or similar to those specified by, section 193 of the Labor Law."  N.Y. Comp. Codes R. & Regs. tit. 12 § 195-2.1(a)(2).  "[D]eductions are for the benefit of the employee when they provide financial or other support for the employee" including "educational benefits."  *Id.* at § 195-4.3(a).  Given the correlation between how FDM values its training ($75/module, with a cap of $30,000) and the liquidated damages fee ($30,000), the deduction could be considered similar to the expressly enumerated benefit of "tuition [for] post-secondary educational institutions" and permissible under the statute.  NY Lab. L. § 193(1)(b)(xi).  Courts have approved wage deductions when the reason for the deduction was "similar" to those enumerated in section 193.  *See Marsh v. Prudential Sec. Inc.*, 1 N.Y.3d 146, 150-54 (2003) (holding employee contribution account that required forfeiture of entire account if employee stopped working was permissible because it was similar enough to an enumerated category, "deductions for pensions and bonds," to be

---

[7] Park's lack of specificity is meaningful.  Park has not clarified whether she argues the Termination Fee – though not directly coming out of her paycheck – *indirectly* "came from" her basic pay or from her bonuses.  Park appears to be basing her minimum wage and overtime claims on an assumption (that FDM disputes) that bonuses are not considered "wages."  However, deductions from bonus compensation are not prohibited by section 193.  *See, e.g., Ferrand v. Credit Lyonnais*, No. 02 CIV 5191, 2003 WL 22251313, at *4 (S.D.N.Y. Sept. 30, 2003).

permissible under the statute); *Vysovsky v. Glassman*, No. 01 CIV 2531, 2007 WL 3130562, at *1 (S.D.N.Y. Oct. 23, 2007), *reversed on other grounds sub nom. Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93 (2d Cir. 2014) (finding factual issues precluded judgment, but noting that the "system of deducting from an employee's monthly paycheck . . . made the purchase of a franchise feasible for those employees who could not finance the purchase of the franchise in a single payment.").

### 4.    The State Records and Wage Statement Claims (Counts 9 & 10).

Park alleges violations of the New York law relating to record-keeping and wage statements.  In support of these claims, Park merely makes conclusory allegations that "Defendants did not provide Plaintiffs and the members of the Classes with a written notice of their rate of pay, regular payday, and such other information," or "with a legally sufficient wage statement upon the payment of wages."  (Am. Compl. ¶ 142, 146.)

The claims should be dismissed for two reasons.  First, Park's allegations are completely devoid of any factual enhancement and do not plausibly assert a claim to relief.  She does not identify any ways in which her paycheck, for example, was deficient.  Second, the Employment Agreement clearly lays out information regarding Park's rate of pay.  (Ex. B. at Schedule 1.) Park's Counts 9 and 10 amount to nothing more than threadbare recitals of the law.

### B.    IN THE ALTERNATIVE, ANY SURVIVING FEDERAL CLAIMS SHOULD BE LIMITED TO TWO YEARS PRIOR TO THE FILING OF THE COMPLAINT.

If the Court declines to fully dismiss Count 1 (overtime for FDM consultants), Count 3 (minimum wage for trainees), and Count 5 (minimum wage for FDM consultants), which arise under the FLSA under Part A, above, the claims should be limited to a two-year period.

### 1.    Park Does Not Plausibly Allege Equitable Tolling.

"Equitable tolling is an extraordinary measure." *Mark*, 2016 WL 1271064 at *3 (internal

quotation marks omitted).  The tolling doctrine is employed only where a plaintiff has been "prevented in some extraordinary way from exercising his rights."  *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985).  A "court must consider whether the [plaintiff] (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Mark*, 2016 WL 1271064 at *3 (internal quotation marks omitted).  "The burden . . . lies with the plaintiff."  *Id.*  Park makes two allegations in support of her claim for equitable tolling.  Plaintiff asserts that the claims should be "equitably tolled from three years" and that "Defendants failed to conspicuously post notice in the workplace advising Plaintiffs of their statutorily-protected right to minimum wage and overtime compensation." (Am. Compl. ¶ 2, 66.)

The "failure to post a FLSA notice is not by itself sufficient to warrant equitable tolling; plaintiff must also show that she had not received notice of her rights through any other avenue." *Mark*, 2016 WL 1271064 at *5 (internal quotation marks omitted); *Saunders v. City of New York*, 594 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2008) ("If plaintiffs knew of the rights outlined on the required notice despite the failure to post, then equitable tolling is unavailable."); *Maldonado v. La Nueva Rampa, Inc.*, 10-cv-8195, 2012 WL 1669341, at *4 (S.D.N.Y. May 14, 2012) (failure to provide notice was insufficient for tolling where plaintiffs have not pled or otherwise alleged that they were unaware of their rights.").  Park does not allege that she was unaware of her rights – in fact, she alleges that she made a complaint to her FDM supervisor.  (Am. Compl. ¶ 44.) Park seeks to represent claims back to 2010, but fails to allege that other class members were unaware of their rights.

Further, these allegations are devoid of the factual content needed to render the claim for equitable tolling "plausible."  Was there no posted notice at the FDM's Wall Street office?  At

each FDM client office?  Both?  Park purports to speak on behalf of all "Plaintiffs," but does not include any allegations supporting her claim of such far-reaching failure to post FLSA notices at every FDM client site for the past six years.  The allegation is simply not credible.  Park's attempt to secure an expanded, six-year class for her federal claims is an over-reach and fails.

### 2.     Park Does Not Allege Willful Violations.

In order for the two-year statute of limitation to be extended to three years, the plaintiff must establish that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).   "To state a claim for a willful violation of the FLSA, the complaint must allege more than an ordinary violation." *Marshall v. UBS Fin. Servs., Inc.*, No. 14 CV. 4384, 2015 WL 4095232, at *4 (S.D.N.Y. July 7, 2015); *McLaughlin*, 486 U.S. at 132 ("Congress intended to draw a significant distinction between ordinary violations and willful violations."). "To satisfy the *Iqbal* pleading requirements, it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation" *Ochoa v. Pearson Educ*, 11-cv-1382, 2012 WL 95340, *3 (D.N.J. Jan. 12, 2012) (quoting *Mell v. GNC Corp*., No. CIV.A. 10-945, 2010 WL 4668966, at *8 (W.D. Pa. Nov. 9, 2010); *see also Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir.1991) (recognizing that plaintiff must state a claim capable of withstanding a motion to dismiss on statute-of-limitations grounds).

Plaintiff has not even alleged an ordinary violation  –  let alone facts that support application of a three-year statute of limitations.  Park alleges that she "informed her FDM supervisor that she was regularly working over forty hours per week and inquired about receiving overtime pay," and that she "was informed that unless her placement manager approved it, she was not eligible for overtime pay."  (Am. Compl. ¶ 44.)  Based on this, Park

concludes that "Defendants' conduct . . .was willful and in bad faith."  (*Id.* at ¶ 65.)  These allegations are wholly insufficient to justify applying a three-year statute of limitations.  Plaintiff does not allege any facts showing that she spoke with her placement manager, that she provided information about specific hours of overtime she allegedly worked or that her request was not considered in good faith by FDM.  FDM classified Park as exempt and not subject to overtime. Park has not alleged that FDM did so with knowledge or reckless disregard for the legality of her classification.  Importantly, these allegations speak only to overtime issues, and not to the training claim or the claim for minimum wage.

Courts have dismissed allegations like these for failure to adequately plead the underlying facts of willfulness.  *See, e.g., Bautista v. El Coyote Mex Rest.,* No. CV-14-S-458, 2014 WL 2465327, at *3 (N.D. Ala. May 30, 2014) (allegations that "pled no facts tending to prove defendants' knowledge or reckless disregard for the illegality of their conduct . . . insufficient to satisfy plaintiff's burden to plead willfulness); *Morgovsky v. AdBrite, Inc.,* No. C-10-05143, 2012 WL 1595105, at *6 (N.D. Cal. May 4, 2012) (employer's email explaining that "he expects employees to put in '9-10 hours' and 'to give more than the typical 9-5 job'" did not "provide a factual basis which plausibly suggests that Defendants' alleged FLSA violation was willful."); *see also Spataro v. Govt. Employers Ins. Co.*, 23 Wage & Hour Cas.2d (BNA) 446, No. 13-cv-5020, 2014 WL 3890222, *4  (E.D.N.Y. Aug. 6, 2014) (in context of overtime claim, plaintiff's allegation that employer "discouraged him and other adjusters from reporting overtime" insufficient because it provided "no facts to support this allegations, such as an estimate of hours Plaintiff failed to report or who allegedly discouraged adjusters from reporting overtime.")

In *Ochoa*, the plaintiff alleged he "was instructed not to show more than 40 hours of work per workweek [on his timesheet], regardless of the quantity of hours he did in fact work,"

24

that he was "deliberately misclassified as a salaried employee" and that "Defendant had no good faith basis for believing that their pay practices . . . were in compliance with the law." *Ochoa*, 2012 WL 95340 at *3.  The court held that "[t]hese allegations do not rise significantly above legal conclusions" as "Plaintiff has not provided this Court with sufficient information to determine that Defendant showed reckless disregard for whether its pay practices violated the FLSA." *Id.*  The court found that the three year statute of limitations could not be applied.

Likewise, in *Stout v. FedEx Ground Package System, Inc.*, 2015 Wage & Hour Cas.2d (BNA) 378,638, , 2015 WL 7259795 at *4 (N.D. Ohio Nov. 17, 2015), the plaintiffs alleged that they were misclassified as independent contractors and sought application of the three-year statute of limitations.  In support, the plaintiffs alleged that "(1) they were employees, (2) FedEx knew the FLSA requires it to determine whether the Plaintiffs were employees or independent contractors, (3) FedEx classified the Plaintiffs as independent contractors, and (4) FedEx did so willfully." *Id*.  The complaint, however, contained no "factual allegations about FedEx's mental state which could support a plausible inference of willfulness." *Id.*  Accordingly, the court barred any claims outside the two-year period. *Id.* at *5.  The same should apply here.

## CONCLUSION

For the foregoing reasons, FDM respectfully seeks an order from this Court dismissing all Counts of the Amended Complaint.  In the alternative, FDM respectfully seeks an order limiting Counts 1, 3 and 5 to a two-year period.

Dated:  July 18, 2016                                    Respectfully Submitted,

                                                         **FDM Group, Inc. and FDM Group**
                                                         **(Holdings) PLC**


                                                         By:_ *Stephen L. Ascher*_____
                                                         One of its attorneys

                                                         Stephen L. Ascher
                                                         JENNER & BLOCK LLP
                                                         919 3rd Ave,
                                                         New York, NY 10022

2443052.9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant's Memorandum in Support of

Motion to Dismiss was served on the 18th day of July upon the following via operation of the

ECF system:

Christopher Q. Davis
Rachel Haskell
THE LAW OFFICE OF CHRISTOPHER Q. DAVIS

*Attorneys for Plaintiff Grace Park*

*Stephen L. Ascher*_____

**Counsel for Defendants FDM Group, Inc.
and FDM Group (Holdings), PLC**

27

2443052.9