**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GRACE PARK, individually and on behalf of all others similarly situated, | : | |
| | : | |
| | : | Civil Action No: 1:16-cv-01520-LTS |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| FDM GROUP HOLDINGS PLC and FDM GROUP, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ....................................................................................................... 3

    I.    **Legal Standard Under Rule 12(b)(6)** ............................................... 3

    II.   **Plaintiff's Amended Complaint Sufficiently Alleges the Existence of an Employment Relationship Between FDM and its Trainees for Purposes of Minimum Wage Compensation** ............................... 4

    III.  **Plaintiff's Amended Complaint Contains Well-Pled Factual Allegations That Defendant Has Unlawfully Denied Plaintiff and Similarly Situated FDM Consultants Minimum Wages, Gap-Time Wages and Overtime Premiums** ........... 8

        A.  **Plaintiff has Stated a Claim for Minimum Wage Violations** ........................ 8

        B.  **Plaintiff has Stated a Claim for Gap Time Wages** ................................... 11

        C.  **Plaintiff has Stated a Claim for Overtime Wages** ................................... 12

        D.  **Park has Stated a Claim for Declaratory Judgment** .................................. 15

    IV.  **Plaintiff's Amended Complaint Contains Sufficiently Alleges That the Early Termination Fee Constitutes an Unlawful Deduction From Wages in Violation of Section 193 of the NYLL** .......................................... 15

    V.   **Plaintiff's Amended Complaint Sufficiently Alleges Violations NYLL's Recordkeeping Requirements and Wage Statement Provisions** ........................... 18

    VI.  **Plaintiff's Allegation of Willfulness Sufficiently States a Claim to Extend the Statute of Limitations Under FLSA to Three-Years** ............... 19

    **CONCLUSION** ................................................................................. 21

# TABLE OF AUTHORITIES

CASES                                                                                   PAGE(S)

*Agerbrink v. Model Serv. LLC*,
   1:14-cv-07841-JPO-JCF, Dkt. No. 25 (S.D.N.Y.) ..................................................16

*Almanzar v. C & I Associates, Inc.*,
   No. 14-CV-1810 (SHS), 2016 WL 1268271, at *6 (S.D.N.Y. Mar. 31, 2016) .....................11

*Alvarez v. IBM Restaurants Inc.*,
   839 F.Supp.2d 580, 587–88 (E.D.N.Y.2012) .......................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) .....................................................................3, 4

*Beaulieu v. Vermont*,
   No. 2:10-cv-00032, 2010 WL 3632460, at *2 (D. Vt. Aug. 5, 2010) ...........................3, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007) ..........................................................................3

*Chime v. Peak Sec. Plus, Inc.*,
   137 F. Supp. 3d 183, 191–92 (E.D.N.Y. 2015) ......................................................20

*Connolly v. Smugglers' Notch Mgmt. Co.*,
   No. 2:09-cv-131, 2009 WL 3734123, at *3 (D. Vt. Nov. 5, 2009) ....................................3

*DeJesus v. HF Mgmt. Servs.*,
   726 F.3d 85, 91 (2d Cir. 2013) ..................................................................5, 14

*Era Helicopters, LLC v. Amegin*,
   181 So. 3d 241 (La. App. Ct. 2015) ................................................................17

*Frasier v. General Electric Co.*,
   930 F.2d 1004, 1008 (2d Cir. 1991) ................................................................19

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528, 534 (2d Cir. 2016) ...................................................................6

*Gold v. American Medical Alert Corp.*,
   No. 14-cv-5485 JFK, 2015 WL 4887525 (S.D.N.Y. Aug. 17, 2015) .................................17

*Goldberg v. Jacquet*,
   No. 15-3104, 2016 WL 3569930 (2d Cir. June 30, 2016) ..........................................17

*Goodman v. Port Auth. of New York & New Jersey*,
   850 F.Supp.2d 363 (S.D.N.Y.2012) ...............................................................20

*Gregory v. Stewart's Shops Corp.*,
No. 7:14-cv-00033, 2015 WL 893058, at *4 (N.D.N.Y. Mar. 2, 2015) ...............................11

*Gunawan v. Sake Sushi Rest.*,
897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) ...........................................................................20

*Hart v. Rick's NY Cabaret Int'l, Inc.*,
No. 09-cv-3043, 2013 WL 11272536, at *10 (S.D.N.Y. Nov. 18, 2013) .............................16

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
No. 09 C 3633, 2013 WL 1337158, at *4 (N.D. Ill. Mar. 28, 2013) .......................................7

*Heartland Sec. Corp. v. Gerstenblatt*,
No. 99-cv- 3694, 2000 WL 303274, at *1 (S.D.N.Y. Mar. 22, 2000) ...................................17

*He v. Home on 8th Corp.*,
No. 09-cv-5630 GBD, 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014) ...........................8

*Hoffmann v. Sbarro, Inc.*,
982 F. Supp. 249, 259–60 (S.D.N.Y. 1997) ...........................................................................9

*Holzapfel v. Town of Newburgh*,
145 F.3d 516, 522 (2d Cir. 1998) ..........................................................................................4

*Inclan v. New York Hosp. Grp., Inc.*,
95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) ...............................................................................4

*Janus v. Regalis Const., Inc.*,
No. 11-CV-5788 ARR VVP, 2012 WL 3878113, at *6 (E.D.N.Y. July 23, 2012),
*report and recommendation adopted,* No. 11-CV-5788 ARR, 2012 WL 3877963
(E.D.N.Y. Sept. 4, 2012) .......................................................................................................19

*Ketner v. Branch Banking & Trust Co.*,
143 F. Supp. 3d 370, 376 (M.D.N.C. 2015) ..................................................................4, 9, 15

*Kold, LLC v. Croman*,
No. CV N13C-05-249 MMJ, 2014 WL 7008431, at *1 (Del. Super. Nov. 25, 2014) ..........17

*Koljenovic v. Marx*,
999 F. Supp. 2d 396, 403 (E.D.N.Y. 2014) .....................................................................15, 16

*Lundy v. Catholic Health System of Long Island, Inc.*,
711 F.3d 109 (2d Cir. 2013) .................................................................................................14

*Marsh v. Prudential Sec. Inc.*,
1 N.Y.3d 146, 154-57, 802 N.E.2d 610 (2003) ....................................................................17

*Marshall v. UBS Fin. Servs., Inc.*,
No. 14 CV. 4384 JGK, 2015 WL 4095232, at *3 (S.D.N.Y. July 7, 2015) ...........................5

*McBeth v. Gabrielli Truck *192 Sales, Ltd.,*
  768 F.Supp.2d 396, 399 (E.D.N.Y.2011) .........................................................20

*Milwaukee Area Joint App'ship Train'g Comm. v. Howell,*
  67 F.3d 1333 (7th Cir. 1995) .........................................................................17

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,*
  723 F.3d 192, 202 (2d Cir. 2013) ..................................................................11

*Neil v. Sidney W. Barbanel Consulting Eng'r LLC,*
  No. 12 Civ. 4061, 2014 WL 3907909, at *2 (E.D.N.Y. Aug. 11, 2014) ...............20

*Nichols v. Mahoney,*
  608 F. Supp. 2d 526, 546 (S.D.N.Y. 2009) ........................................................4

*Perez v. Westchester Foreign Autos, Inc.,*
  No. 11 CIV. 6091 ER, 2013 WL 749497, at *10 (S.D.N.Y. Feb. 28, 2013) ..........10

*Perkins v. 199 SEIU United Healthcare Workers E.,*
  73 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) ........................................................13

*Pfister v. Allied Corp.,*
  539 F. Supp. 224, 228 (S.D.N.Y. 1982) ...........................................................19

*Quinones v. PRC Mgmt. Co. LLC,*
  No. 14-cv-9064, 2015 WL 4095263, at *6 (S.D.N.Y. July 7, 2015) ....................16

*Rattigan v. Commodore Int'l Ltd.,*
  739 F. Supp. 167 (S.D.N.Y. 1990) ..................................................................17

*Rodriguez v. Almighty Cleaning, Inc.,*
  784 F. Supp. 2d 114, 122 (E.D.N.Y.2011) ......................................................19

*Ruggles v. Wellpoint, Inc.,*
  253 FRD 61, 68 (N.D.N.Y. 2008) ...................................................................20

*Salazar-Martinez v. Fowler Bros.,*
  781 F. Supp. 2d 183, 195 (W.D.N.Y. 2011) ......................................................9

*Sheppard v. Beerman,*
  18 F.3d 147, 150 (2d Cir.1994) .....................................................................15

*Sikiotis v. Vitesse Worldwide Chaufeeured Servs., Inc.,*
  147 F. Supp. 3d 39, 45 (D. Conn. 2015) .........................................................13

*Tenn. C. v. Muscoda,*
  321 U.S. 590, 598 (1944) ...............................................................................4

*Urista v. Ohman,*
  2012 WL 7849882 (Minn. Dist. Ct. Nov. 15, 2012) ...........................................17

*Vysovsky v. Glassman,*
No. 01-cv-2531, 2007 WL 3130562, at *15 (S.D.N.Y. Oct. 23, 2007), *vacated and remanded sub nom. Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93 (2d Cir. 2014) ......................................................................................................17

*Walling v. Portland Terminal Co.,*
 61 F. Supp. 345, 346 (D. Me. 1945), *aff'd*, 155 F.2d 215 (1st Cir. 1946), *aff'd*, 330 U.S. 148 (1947) .....................................................................................................6, 7

## STATUTES

Fed. R. Civ. P. 9(b) ..............................................................................................19

Fed. R. Civ. P. 12(b)(6) ................................................................................. passim

28 U.S.C. § 2201(a) ..............................................................................................15

29 U.S.C. § 203(e), (d) & (g)...................................................................................4

29 U.S.C. § 206(a)(1)(c) ..........................................................................................8

29 U.S.C. § 255(a) ................................................................................................19

29 C.F.R. § 531.32(c)...........................................................................................8, 9

29 C.F.R. § 531.35 ..................................................................................................8

29 C.F.R. § 785.27 ..................................................................................................7

12 N.Y. Lab. Law § 193 ................................................................................. passim

12 N.Y. Lab. Law § 195 ........................................................................................18

12 N.Y. Comp. Codes R. & Regs. §195–2.1 .........................................................15

12 N.Y. Comp. Codes R. & Regs. § 195-4.4 .........................................................16

Plaintiff Grace Park ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, the Law Office of Christopher Q. Davis, hereby submits this Memorandum of Law in Opposition to the Motion to Dismiss submitted by Defendant FDM Group, Inc. ("FDM" or "Defendant").[1]

## PRELIMINARY STATEMENT

Plaintiff's First Amended Class Action Complaint for Damages, Restitution and Injunctive Relief ("FAC" or "Amended Complaint") [Dkt. No. 20], sufficiently alleges that she and all putative class and collective class members were subject to, under both federal and state law, Defendant's improper wage practices.  Defendant, in their Motion to Dismiss Plaintiff's Amended Complaint, choses volume over substance in a "kitchen sink" approach, arguing any perceived basis for dismissal, no matter how flimsy.  Despite the volume of arguments made, Defendant is unable to articulate a sufficient legal or factual basis for dismissal of Plaintiff's wage claims that are subject to fact dispute and fundamentally incapable of resolution on a motion to dismiss.

Plaintiff's claims are divided between claims relating to wage violations during Plaintiff's training period and wage violations after Plaintiff became an FDM Consultant. Plaintiff's training period claims involve minimum wage violations related to Defendant's failure to pay any wages for post-hire training.  Specifically, Plaintiff has alleged that the training period occurred post-hire and that an employment relationship exists such the Plaintiff's are "employees" under the relevant minimum wage statutes.  In fact, Plaintiff was required to sign an employment contract as a condition of her employment and entrance into Defendant's training

---

[1] The Parties have entered into a stipulation – the Notice of Voluntary Dismissal of FDM Group Holdings Plc, Without Prejudice and Stipulation Regarding Tolling, which has been submitted to the Court clerk per Local Rule 18.3.  As such, throughout this memorandum of law, Plaintiff refers to only Defendant FDM Group Inc.

program.  Plaintiff has sufficiently alleged that the training period begins only after trainees are

selected and hired by FDM as FDM Consultants, that trainees are obligated to complete training

in exchange for future compensation as Consultants for a minimum of two years, that trainings

were subject to an unlawful liquidated penalty if they did not complete training, and that without

Trainees, FDM has no billable Consultants, and thus no revenue.  Plaintiff has also alleged that

the sole purpose of the training is to prepare Trainees for their roles as FDM Consultants at their

eventual placements, and to increase their marketability to FDM's clients – all of which

primarily benefit FDM and not the trainees.  This and other evidence is more than sufficient to

establish the existence of an employment relationship as a matter of law, let alone establish a

prima facie case sufficient to defeat a motion to dismiss.

Plaintiff has also demonstrated a prima facie case regarding her entitlement to unpaid

overtime and minimum wage compensation stemming from her period as an FDM Consultant.

Notably, the aforementioned employment contract contains a "liquidated penalty" provision,

which requires employee signatories to "kick back" a monetary penalty to Defendant if they do

not work for the company for at least two-years following their training.  Defendant has an actual

practice of enforcing this liquidated penalty, which is an improper deduction from wages under

federal and state law sufficient to defeat the "salary basis" test required to assert relevant

exemption defenses.  The Consultant minimum wage claims are also sufficiently alleged.

Federal and state minimum wage laws require that Plaintiff and putative class and collective

class members earn wages unconditionally and "free and clear" from improper deductions, such

as those "separate transaction deductions caused by the liquidated penalty provision, which bring

Plaintiff's wages below the minimum wage.  Given Plaintiff's factual pleadings in the Amended

Complaint attesting to this practice, and in light of other factual pleadings, Plaintiff has

established a prima facie case relating to her Consultant overtime, minimum wage, and unpaid wage claims.

For the reasons addressed below, the Defendant's Motion is without merit and must be denied in full.

## STATEMENT OF FACTS

For a full recitation of the relevant facts, Plaintiff hereby refers to and incorporates the Statement of Facts set forth in Plaintiff's Conditional Certification Memorandum of Law, at pages 2-8.

## ARGUMENT

### I.   Legal Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The complaint should not be dismissed merely because the district court believes it unlikely that the plaintiff will prevail in the action on the merits."  *Beaulieu v. Vermont*, No. 2:10-cv-00032, 2010 WL 3632460, at *2 (D. Vt. Aug. 5, 2010) (citing *Twombley*, 550 U.S. at 1965) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.")  "A complaint under the FLSA adequately meets the minimal pleading standard if it: (1) denotes an employer-employee relationship; (2) establishes that employees were 'engaged in commerce;' and (3) approximately alleges the hours worked, for which wages were not received." *Id.* (citations omitted).  At the preliminary motions stage, it is unreasonable to expect a plaintiff in a FLSA case to allege with specificity the exact overtime hours worked, especially when she has not had a chance to undertake discovery.  *See id.* at *4 (citing *Connolly v.*

*Smugglers' Notch Mgmt. Co.*, No. 2:09-cv-131, 2009 WL 3734123, at *3 (D. Vt. Nov. 5, 2009).

A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ketner v. Branch Banking and

Trust Co.*, 143 F. Supp. 3d 370, 376 (M.D.N.C. 2015) (quoting *Iqbal*, 556 U.S. at 678) (denying

motion to dismiss where there existed a case or controversy regarding alleged minimum wage

and overtime violations).

## II.     **Plaintiff's Amended Complaint Sufficiently Alleges the Existence of an Employment Relationship Between FDM and its Trainees for Purposes of Minimum Wage Compensation.[2]**

Under the FLSA an "employee" is "any individual employed by an employer."  29

U.S.C. § 203(e), and an "employer" is defined as "any person acting directly or indirectly in the

interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[3]  An entity "employs"

an individual if it "suffer[s] or permit[s]" that individual to work.  29 U.S.C. § 203(g).  The type

of "work" covered by the FLSA is defined as "physical or mental exertion (whether burdensome

or not) controlled or required by the employer and pursued necessarily for the benefit of the

employer and his business."  *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 546 (S.D.N.Y. 2009)

citing *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 522 (2d Cir. 1998) (quoting *Tenn. C. v.

Muscoda*, 321 U.S. 590, 598 (1944)).  The Second Circuit has recognized that "in the context of

a motion to dismiss, district courts in this Circuit have…found that complaints sufficiently allege

employment when they state where the plaintiffs worked, outline their positions, and provide

---

[2] The Minimum Wage Claims for the Trainee Collective Class under the FLSA is the Third Cause of Action and the Minimum Wage Claims for the Trainee Class under the NYLL is the Fourth Cause of Action.

[3] "Neither the New York Court of Appeals nor the Second Circuit has decided whether the tests for 'employer' status are the same under the FLSA and the NYLL…[h]owever, district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."  *See Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (citations omitted).

4

their dates of employment." *Marshall v. UBS Fin. Servs., Inc.*, No. 14 CV. 4384 JGK, 2015 WL

4095232, at *3 (S.D.N.Y. July 7, 2015) (quoting *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 91

(2d Cir. 2013)).

Here, Plaintiff alleges sufficient facts that she was an employee of FDM during her

unpaid training period. *See* Amend. Compl.*, at ¶¶ 38-39.  Plaintiff alleges that FDM classified

her and putative class members as trainees, and required them to attend a lengthy post-hire

training period that included performing various tasks necessary to the operation, maintenance,

and profitability of FDM. *Id.,* at ¶ 27.   The training was post-hire since it was after a full

interview and assessment and after Plaintiff and all putative class members signed a contract

outlining the terms of their employment with FDM, which included (i) compensation promises;

(ii) an obligation to complete the training; (iii) an obligation to seek placement at an FDM client;

and (iv) a commitment to work for FDM for a period of at least 2 years. *Id.,* at ¶¶ 25, 27.

Notably, the primary purpose of the training period was to prepare trainees for their roles as

FDM Consultants and to successfully obtain placements for trainees with FDM's clients so FDM

could realize billable revenue. *Id.,* at ¶¶ 25, 27.  FDM is not an academic institution and did not

provide academic or vocational training to Plaintiff and members of the putative class. *Id.,* at ¶

23.  Instead, the training involved productive work, directly geared towards generating revenue

for FDM, mainly developing the skills needed to perform as FDM Consultants. *Id.,* at ¶ 21, 25,

27.  During the training period, Plaintiff worked approximately eight hours a day, Monday

through Friday. *Id.,* at ¶¶ 36-38.  Most importantly, Plaintiff alleges that she did not receive any

compensation for the work she performed on behalf of FDM during her training, and that FDM

maintained a policy and practice of not paying trainees minimum wages despite the fact that they

were employees and were required to perform work for FDM. *Id.,* at ¶¶ 38-40.

In their motion, FDM ignores the proper legal standard under Rule 12(b)(6), and instead urges this Court to make factual findings – absent any discovery – that the trainees were not employees under federal or state law.  Specifically, Defendant relies almost exclusively on *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016), although that case expressly stated that the standard it created applies only to **internships** and not other training programs. The instant case is not an internship case; thus *Glatt* explicitly does not apply.  *See id.* at 536-37 ("The approach we adopt also reflects a central feature of the modern internship – the relationship between the internship and the intern's formal education – and is confined to internships and **does not apply to training programs in other contexts**.") (emphasis added).

Defendant's reliance on *Glatt* is further misplaced because *Glatt* was at the summary judgment stage, whereas the instant case is only at the 12(b)(6) stage.  In *Glatt*, the court vacated the district court's order granting partial summary judgment and remanded for further proceedings, instructing that "[o]n remand, the district court may, in its discretion, permit the parties to submit **additional evidence** relevant to the plaintiffs' employment status, such as evidence on Glatt's and Footman's formal education."  *Id.* at 538 (emphasis added).  In the instant matter, no discovery has been conducted.  The Court is thus in no position to assess the types of factors *Glatt* suggests as relevant in determining whether interns are employees.  Indeed, in *Walling v. Portland Terminal Co.,* 61 F. Supp. 345, 346 (D. Me. 1945), *aff'd*, 155 F.2d 215 (1st Cir. 1946), *aff'd*, 330 U.S. 148 (1947), a case cited by the Second Circuit in *Glatt*, the district court had also made findings of fact before reaching any legal conclusion about the employment status of unpaid railroad brakemen trainees.  Nor would *Glatt's* holding apply even if it was relevant to the instant matter – the *Glatt* holding emphasized the question of an interns' relationship to formal education as being dispositive on employment status.  Plaintiffs in the

instant matter do not perform services for Defendant pursuant to any formal educational mandate or relationship.

As set forth above, the standard governing whether FDM had to pay Plaintiff and the putative class for the time spent in training turns on whether they were employees or trainees. *See Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09 C 3633, 2013 WL 1337158, at *4 (N.D. Ill. Mar. 28, 2013) (distinguishing between the two tests for determining the compensability of training time for employees versus trainees).  Whether an individual is more appropriately classified as an employee versus a trainee is a factual question.  *Id.*   As such, in *Hawkins*, the factual issue of whether plaintiff was a trainee or an employee was left for trial.  *Id.* at *7.  There, the court denied summary judgment because fact questions remained as to whether plaintiff was an employee during the "post-hire" classroom training period.  In declining to make factual determinations, the court in *Hawkins* considered both the six-part test for the compensability of training periods for pre-employment training from *Walling* and the following four-part test as to the compensability of post-employment training:

> (a) Attendance is outside of the employee's regular working hours;
> (b) Attendance is in fact voluntary;
> (c) The course, lecture, or meeting is not directly related to the employee's job; and
> (d) The employee does not perform any productive work during such attendance.

*Id.* at *4-5 (citing 29 C.F.R. § 785.27).  The court denied summary judgment concluding that the evidence made "it impossible to say for purposes… [whether] Hawkins indisputably was a trainee and not an employee at the time she took the introduction class."  *Id.*

Therefore, construing Plaintiff's Amended Complaint liberally, accepting all factual allegations in the Amended Complaint as true, and drawing all reasonable inferences in Plaintiff's favor, the facts alleged in the Amended Complaint substantially support a finding that

FDM's training period was post-employment, that FDM "suffered or permitted" Plaintiff and the putative trainee class to work, and that they were actually unpaid employees. Thus, Plaintiff has sufficiently met the pleading standard for alleging the existence of an employment relationship.[4]

### III.   Plaintiff's Amended Complaint Contains Well-Pled Factual Allegations That Defendant Has Unlawfully Denied Plaintiff and Similarly Situated FDM Consultants Minimum Wages, Gap-Time Wages and Overtime Premiums.

####    A.    Plaintiff has Stated a Claim for Minimum Wage Violations.[5]

Defendant argues that Plaintiff's allegations fail to establish a plausible claim that Defendant violated the FLSA and NYLL minimum wage requirement. *See* Defendant's Memorandum of Law in Support of their Motion to Dismiss ("Def's MOL") at 12-13. Defendant is wrong.

The FLSA requires employers to pay their employees no less than the minimum wage. 29 U.S.C. § 206(a)(1)(c). These wages must be paid finally and unconditionally or "free and clear" of improper deductions, at a rate no lower than $7.25 per hour (FLSA) or $8.75 per hour (NYLL). *See* 29 C.F.R. § 531.35; *see e.g. He v. Home on 8th Corp.*, No. 09-cv-5630 GBD, 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014) ("Under federal regulations, an employee's wages must be 'free and clear' of all 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit . . .  [that] cut[ ] into the minimum or overtime wages required to be paid.") (citing 29 C.F.R. § 531.35 (2014)).   "The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. §

---

[4] Indeed, according to information provided by Defendant, FDM trainees began to receive wages as of September, 2015.  Plaintiffs are entitled to the benefit of discovery regarding why Defendants instituted this change in pay.

[5] The Minimum Wage Claims for the Consultant Collective Class under the FLSA is the Fifth Cause of Action and the Minimum Wage Claims for the Consultant Class under the NYLL is the Sixth Cause of Action.

531.32(c).

Discovery will reveal that the training received by FDM Consultants was done for Defendant's benefit only, was nothing more than an ordinary business expense, and FDM's attempt to recoup this ordinary business expense is an improper kickback of its employees' wages. *See Salazar-Martinez v. Fowler Bros.*, 781 F. Supp. 2d 183, 195 (W.D.N.Y. 2011) (finding any expenses which "are created by the employer because of the nature of the employer's business, or expenses which the employer brings upon himself by the way he chooses to conduct his business, are primarily for the benefit of the employer" and could not be deducted under the FLSA if it drives wages below the minimum wage).  Notably, in *Ketner*, a case involving nearly identical facts, the defendants had a training program requiring the plaintiff participants to repay training costs if they did not complete a specified term of employment.  143 F. Supp. 3d at 375-76.  Mindful of the 12(b)(6) standard, the court noted that "[u]ltimately, **factual development of this case** will determine whether the costs of training" was an unlawful kick-back of salary.  *Id.* at 384 (declining to make factual findings on a motion to dismiss where plaintiff's allegations were sufficient to allege minimum wage violations) (emphasis added).  To the extent that this kick-back reduces Plaintiff's wages below the minimum wage, it is illegal.

Defendant, in arguing that Plaintiff did not state a minimum wage violation as to Counts 5 and 6, completely overlooks the retroactive wage reduction and/or kickback imposed when an employee, such as Park, does not complete her employment term.  Such a wage reduction and/or kickback is actionable as a minimum wage violation.  *See, e.g., Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 259–60 (S.D.N.Y. 1997) (the court reserved judgment on the question of whether plaintiffs out–of–pocket reimbursements were kickbacks *of base pay* and therefore should be deemed 'compensation.').

The Amended Complaint alleges that during her employment, Plaintiff Park earned a monthly base pay of $1,916.67 and daily attendance bonuses.  Amend. Compl. ¶¶ 47-50.  The Complaint also alleges that Defendant sought, and Plaintiff paid, $20,000 back to Defendants. *Id.* ¶ 60.  Pursuant to FDM's policy, in the event of early termination, deductions are taken from final wages, in order to "partially settle liability" and then payment of the remaining balance is collected by separate transaction.  *Id.* ¶ 57.  Forcing Plaintiff to kick back $20,000 to Defendant resulted in Plaintiff earning, based on Defendant's own assumptions, somewhere between $3,750 and $26,000 for approximately twelve months of full-time employment with Defendant.  *See* Def's MOL at 12.  It is therefore more than plausible that Plaintiff, who has claimed she also worked significant unpaid overtime hours, was not paid at least $7.25 per hour as the FLSA minimum wage provision requires or $8.75 per hour as the NYLL minimum wage provision requires.  Also, the deduction from her final paycheck, to "partially settle liability" would undoubtedly result in failure to pay the minimum wage in her final weeks of employment.  *See Perez v. Westchester Foreign Autos, Inc.*, No. 11 CIV. 6091 ER, 2013 WL 749497, at *10 (S.D.N.Y. Feb. 28, 2013) (denying defendants motion to dismiss because "[r]egardless of the total pay received by an employee, the [FLSA] requires that each employee receive, each week, an amount equal to the minimum wage times the number of hours worked.").

As such, Plaintiff has stated claims for minimum wage violations based on a retroactive wage reduction and/or kickback and deductions from final pay, such that her pleading is sufficient to survive a motion to dismiss.

## B.    Plaintiff has Stated a Claim for Gap Time Wages.[6]

Park's claim for "gap time" wages under the NYLL is sufficient under Rule 12(b)(6).

---

[6] The Gap Time Claims for the Consultant Class is the Eighth Cause of Action.

"[A] gap-time claim requires no predicate showing of minimum hours worked; rather, an allegation of hours worked without compensation may give rise to a gap-time claim."). *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). Plaintiff's gap time claims seek payment at her regular hourly rate for previously uncompensated time. *See Almanzar v. C & I Associates, Inc.*, No. 14-CV-1810 (SHS), 2016 WL 1268271, at *6 (S.D.N.Y. Mar. 31, 2016). Gap time claims can be brought even in an employee's average hourly pay is greater than the minimum wage. *Id.*

Here, Plaintiff alleges a pattern of uncompensated work (including during her lunchtime and on weekends), which is sufficient to meet the pleading standard. *See* Amend. Compl. ¶ 45; *see also, e.g., Gregory v. Stewart's Shops Corp.*, No. 7:14-cv-00033, 2015 WL 893058, at *4 (N.D.N.Y. Mar. 2, 2015) ("the allegations that each Plaintiff performed a specific amount of off-the-books work on a regular basis and that was tied to specific, identifiable events (such as a nightly store closing or a shift change) is sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Defendant is able to defend against such claims as it is able to review its records and determine the dates that each Plaintiff closed a store or was involved in a shift change. Thus, the Court finds that Plaintiffs have asserted facially plausible NYLL 'gap time' claims for these times.") (internal citations omitted). Despite Defendant's contention, the amount of damages, including the hourly rate calculation, to which Plaintiff and the putative class members are entitled, is an issue for trial and not appropriate at a motion to dismiss. *See Almanzar,* 2016 WL 1268271, at *7.

## C.    Plaintiff has Stated a Claim for Overtime Wages.[7]

Defendants wrongfully contend that Plaintiff's overtime wage claims are insufficient in

---

[7] The Overtime Claims for the Consultant Collective Class under the FLSA is the First Cause of Action and the Overtime Claims for the Consultant Class under the NYLL is the Second Cause of Action.

alleging more than forty hours worked per week.  Plaintiff provides sufficient detail in her

allegations as follows:

> According to the US Staff Handbook, standard Employment Agreement, and Mountie
> Schedule, all FDM Consultants were compensated for normal hours of work of 40 hours
> per week. More specifically, according to standard placement letters and the US Staff
> Handbook, "unless FDM is able to agree [to] [SIC] an additional fee with the client
> [FDM Consultants] will not receive any additional payments for hours worked beyond
> the standard hours on any day. . . this includes occasions where the client specifically
> requests that you remain at work later to carry out further work."[8]
>
> Plaintiff and the Collective Class and Class Members regularly worked over 40
> hours per week.
>
> During her employment, Plaintiff informed her FDM supervisor that she was
> regularly working over forty hours per week and inquired about receiving
> overtime pay.  Plaintiff was informed that unless her placement manager
> approved it, she was not eligible for overtime pay.
>
> Specifically, Plaintiff emailed her account manager Pippa Susskind that she
> arrives at work 'by 8:30am' and gets out 'around 6:45-7:15pm.'  Plaintiff further
> stated she 'quite frequently' had to work on weekends and that she was not 'able
> to even have a one hour lunch break (which [she was] not even paid for).
>
> Upon information and belief, all other Collective Class and Class Members were
> similarly required to work beyond their standard 40-hour workweek without any
> overtime compensation.

Amend. Compl. ¶¶ 42-46.

Here, Park alleged that she "regularly" worked over 40 hours per week.  *See* Amend.

Compl. ¶ 43.  Provides the exactly hours she was working, during her normal Monday through

Friday schedule:  8:30 through 6:45-7:15pm, including missed lunch hours and frequent

weekend work.  *Id.* at ¶ 45.  Plaintiff also alleged that Defendant knew that she was working

overtime hours because she explicitly told her account manager such via email.  *Id.*  These

---

[8] Defendant has submitted extrinsic evidence which is referenced in Plaintiff's Amended Complaint. While
Plaintiff's Amended Complaint sufficiently alleges this fact without extrinsic evidence, Plaintiff nonetheless refers
Your Honor to the exact reference to Plaintiff's "normal hours of work" which are 40 hours per week, Monday
through Friday. *See* Def.'s Ex. B.

allegations are sufficient at the 12(b)(6), pre-discovery stage.  *See, e.g., Beaulieu,* 2010 WL

3632460, at *4 (at the preliminary motions stage, it is unreasonable to expect a plaintiff in a

FLSA case to allege with specificity the exact overtime hours worked, especially when she has

not had a chance to undertake discovery).

Moreover, Plaintiff's allegations are not threadbare recitals of uncompensated overtime;

rather, they contain actual details from her memory and experience.  *See, e.g., Perkins v. 199*

*SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) (plaintiff "is

reasonably expected to recall basic facts about his own work experience," including facts such as

"whether he came to work early, stayed late, or took on additional shifts"); *Sikiotis v. Vitesse*

*Worldwide Chaufeeured Servs., Inc.*, 147 F. Supp. 3d 39, 45 (D. Conn. 2015) (plausible overtime

claim stated where plaintiff alleged that he "routinely" worked longer than forty hours per week,

and he offered a three-week snapshot as "typical").

Despite these detailed factual allegations, Defendant argues that Plaintiff has failed to

allege a plausible claim that she worked more than 40 in any given week. This argument should

be rejected.  First, Defendant actually acknowledges that Plaintiff alleged she "regularly worked

over 40 hours per week" and that she alleged her approximate hours each week.  *See* Def.'s

MOL at 14.  Defendant, however, argues that "Plaintiff does not allege that she *always* worked

these hours."  *Id.* (emphasis in original). Plaintiff does not need to allege that she always worked

overtime, just that she worked overtime hours without overtime premium compensation, which

she clearly does.

Defendants rely upon Second Circuit cases to argue that these factual allegations are

insufficient and somehow impose a heightened standard of pleading, such that plaintiffs who

allege violations of the FLSA must plead specific details as to their weekly schedule which

amounted to more than 40 hours.  This sort of detail, however, simply is not required by these cases.  In *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 109 (2d Cir. 2013) the Second Circuit held that "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." 711 F.3d at 114.  This is precisely what Plaintiff has alleged.  The plaintiffs in *Lundy* failed to meet that standard because the hours that they alleged that they worked simply did not add up to a claim that they ever worked over forty hours in a week.  Further, as noted by the court in *DeJesus v. HF Mgmt Servs., LLC*, 726 F.3d 85 (2d Cir. 2013) *cert. denied*, 134 S.Ct. 918 (2014), which Defendant relies upon, "[t]he allegations in *Lundy* failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim of overtime." *DeJesus*, 726 F.3d at 88-89.  Similar to *Lundy*, *DeJesus* is distinguishable here because the plaintiff in that case vaguely alleged that she worked more than forty hours "in some or all weeks." *Id.* at 87.

In order to support their argument that Plaintiff has not alleged sufficient facts to state a claim, Defendant takes issue with Plaintiff's alleged failure to "provide any estimate of unpaid hours worked" or that "compensation was based on an hourly rate." *See* Def.'s MOL at 15.  First, Defendant's contention that Plaintiff is required to plead the hourly basis and rate of her compensation to support a claim for overtime violations is inaccurate.  Second, while nothing in the Federal Rules of Civil Procedure requires such granular detail into unpaid hours, Plaintiff has nonetheless alleged a factual basis for her unpaid hours.  Plaintiff has alleged *facts* supporting her overtime hours worked, namely, that she actually worked at least 50-60 hours a week (8:30 AM to 7:15 Monday through Friday, without lunch, and some weekend hours).  *See* Amend. Compl. ¶¶ 42-45.  At the motion to dismiss stage, the Court is required to accept these factual

allegations as true.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

> **D.      Park has Stated a Claim for Declaratory Judgment.**[9]

Plaintiff's claim for a declaratory judgment that the Early Termination Fee is a "kick-back" that reduced her salary beyond that required by the minimum wage, gap time, and overtime law is a valid claim.  "In cases where there is an actual controversy between the parties, the Federal Declaratory Judgment Act allows federal courts to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *Ketner*, 143 F. Supp. 3d at 384–85 (internal quotation marks omitted) (citing 28 U.S.C. § 2201(a) (2012)) (further citation omitted).  In *Ketner*, for example, the court allowed a declaratory judgment claim to proceed alongside other labor law claims nearly identical to those here.  This court should likewise permit the declaratory judgment claim to proceed.

**IV.      Plaintiff's Amended Complaint Contains Sufficiently Alleges That the Early Termination Fee Constitutes an Unlawful Deduction From Wages in Violation of Section 193 of the NYLL.**[10]

Defendant's argument that the NYLL wage deduction claim should be dismissed because the early termination fee is a valid liquidated damages provision is entirely without merit.  Section 193 of the NYLL ("Section 193") expressly prohibits an employer from making unauthorized deductions from employees' wages.  The statute is clear that any such deductions may occur only if (1) expressly authorized by **and** for the benefit of the employee; and (2) limited to the enumerated categories of permissible deductions.  N.Y. Lab. Law § 193(1)(a)-(b); 12 N.Y. Comp. Codes R. & Regs. §195–2.1.  Further, employers are prohibited from using separate transactions to achieve a result that would not be allowed as a direct wage deduction from the employee's wages pursuant to section 193(a).  *Koljenovic v. Marx*, 999 F. Supp. 2d 396,

---

[9] The claim for Declaratory Judgment is the Eleventh Cause of Action.

[10] The claim for Unlawful Deductions in Violation of Section 193 is the Seventh Cause of Action.

403 (E.D.N.Y. 2014); *see also* 12 N.Y. Lab. Law §§ 193(1) & (3)(a) (previously codified at § 193(2)).  Deductions from wages are only allowed if they are specifically listed in Section 193(1)(b) or are "similar" to those listed in Section 193 and fall within one of the categories listed in §195-4.4.  *See* 12 N.Y. Lab. Law §§ 193(1)(b); *see also* 12 N.Y.C.R.R. § 195-4.4.  Neither the list of expressly authorized deductions nor the categories of "similar" deductions includes anything resembling the Termination Fee in this matter, which is expressly for the purposes of recouping costs associated with training FDM's Consultants.

Here, Plaintiff adequately alleges that the Termination Fee was a specific deduction of salary, both by wage deduction from her final paycheck and by separate transaction, which was not authorized by statute and that benefits the Defendant, but not her.  *See* Amend. Compl. ¶¶ 54, 56-61.  As such, Plaintiff has alleged sufficient facts to support that the Termination Fee was a deduction in violation of Section 193.  *See, e.g., Hart v. Rick's NY Cabaret Int'l, Inc.*, No. 09-cv-3043, 2013 WL 11272536, at *10 (S.D.N.Y. Nov. 18, 2013) (Section 193 prohibits defendant from requiring plaintiffs to pay fees, fines, and tip outs); *Quinones v. PRC Mgmt. Co. LLC*, No. 14-cv-9064, 2015 WL 4095263, at *6 (S.D.N.Y. July 7, 2015) (Section 193 claim stated where defendant allegedly reduced the days available in Plaintiff's "leave bank," and reduced her pay as a fine for excessive leave); *Koljenovic*, 999 F. Supp. 2d at 403 (monetary losses caused by another employee is not specifically authorized by law or regulation); *Agerbrink v. Model Serv. LLC*, 1:14-cv-07841-JPO-JCF, Dkt. No. 25 (S.D.N.Y.) (denying motion to dismiss as to wage claims, including section 193 claims for illegal deductions [the fifth cause of action], concerning a contractual penalty provision in modeling contract).

Defendant cites numerous irrelevant cases, none of which have anything to do with the

NYLL[11] and the few cases Defendant cites that actually do deal with Section 193 are clearly distinguishable on both the facts and the law.  First, Defendant cites a case were the plaintiff-manager agreed to accept a pay-cut due to the company's financial distress and then attempted to portray such pay-cut as a deduction from wages.  *See Goldberg v. Jacquet*, No. 15-3104, 2016 WL 3569930 (2d Cir. June 30, 2016).  Defendant then attempts to support their position with a case were the plaintiff had not alleged any wage "deductions," but rather a total withholding of wages – which was "the essence of the breach of contract claim" that formed the basis for his complaint.  *See Gold v. American Medical Alert Corp.*, No. 14-cv-5485 JFK, 2015 WL 4887525 (S.D.N.Y. Aug. 17, 2015).  In another factually distinguishable case, *Vysovsky v. Glassman*, No. 01-cv-2531, 2007 WL 3130562, at *15 (S.D.N.Y. Oct. 23, 2007), *vacated and remanded sub nom. Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93 (2d Cir. 2014) the deduction at issues was for the purpose of making a franchise feasible for employees who could not finance the purchase of the franchise in a single payment.  Finally, Defendant cites a case were deductions at issue actually "qualif[ied] as 'payments for the benefit of the employee,' which are 'similar' to the types of wage withholdings specifically authorized by [Section 193]."  *See Marsh v. Prudential Sec. Inc.*, 1 N.Y.3d 146, 154-57, 802 N.E.2d 610 (2003).

In contrast, here Plaintiff has adequately alleged that the Termination Fee was not of the kind allowed under the law and was solely for the benefit of the Defendant; thus, her Section 193 claim must not be dismissed.

---

[11]*See* Defendants' MOL at pages 16-17, citing *Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167 (S.D.N.Y. 1990); *Milwaukee Area Joint App'ship Train'g Comm. v. Howell*, 67 F.3d 1333 (7th Cir. 1995); *Urista v. Ohman*, 2012 WL 7849882 (Minn. Dist. Ct. Nov. 15, 2012); *Era Helicopters, LLC v. Amegin*, 181 So. 3d 241 (La. App. Ct. 2015); *Kold, LLC v. Croman*, No. CV N13C-05-249 MMJ, 2014 WL 7008431, at *1 (Del. Super. Nov. 25, 2014); and *Heartland Sec. Corp. v. Gerstenblatt*, No. 99-cv- 3694, 2000 WL 303274, at *1 (S.D.N.Y. Mar. 22, 2000).

Case 1:16-cv-01520-LTS   Document 40   Filed 09/01/16   Page 24 of 27

**V.      Plaintiff's Amended Complaint Sufficiently Alleges Violations NYLL's
        Recordkeeping Requirements and Wage Statement Provisions.**[12]

Defendant's position that Plaintiff's allegations regarding record-keeping and wage

statement violations are insufficient is wholly without merit.  Section 195(1) of the New York

Labor Law requires the following Notice and Record-Keeping Requirements, in relevant part:

Every employer shall:

1.  (a) provide his or her employees…at the time of hiring, a notice containing the
following information: the rate or rates of pay and basis thereof, whether paid by
the hour, shift, day, week, salary, piece, commission, or other; allowances, if any,
claimed as part of the minimum wage, including tip, meal, or lodging allowances;
the  regular pay day designated by the employer in accordance with section one
hundred ninety-one of this article; the name of the employer; any 'doing business
as' names used by the employer; the physical address of the employer's  main
office or principal place of business, and a mailing address if different; the
telephone number of the employer; plus such other  information as the
commissioner deems material and necessary.  Each time the employer provides
such notice to an employee, the employer shall obtain from the employee a signed
and dated written acknowledgement... of receipt of this notice, which the
employer shall preserve and maintain for six years…For all employees who are
not exempt from overtime compensation as established in the commissioner's
minimum wage orders or otherwise provided by New York state law or
regulation, the notice must state the regular hourly rate and overtime rate of pay.

*Id.*  Defendants contend that the Employment Agreement "clearly lays out information regarding

Park's rate of pay," *see* Def's MOL at 21, yet the statute requires more than the mere rate of pay.

As Plaintiff has properly alleged Defendant's have failed to comply, in full, with this statute.  *See*

Amend. Compl. ¶ 142.  As such, this cause of action should not be dismissed.

Section 195(3) of the New York Labor Law requires, in relevant part:

Every employer shall:

3. furnish each employee with a statement with every payment of wages, listing
the following:  the dates of work covered by that payment of wages; name of
employee; name of employer; address and phone number of employer; rate or
rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary,

---

[12] The claim for violations of the NYLL Record-keeping regulations is the Ninth Cause of Action and the
claim for violations of the Wage Statement provisions is the Tenth Cause of Action.

piece, commission, or other; gross wages; deductions; allowances, if any, claimed
as part of the minimum wage; and net wages.  For all employees who are not
exempt from overtime compensation as established in the commissioner's
minimum wage orders or otherwise provided by New York state law or
regulation, the statement shall include the regular hourly rate or rates of pay; the
overtime rate or rates of pay; the number of regular hours worked, and the number
of overtime hours worked.  For all employees paid a piece rate, the statement shall
include the applicable piece rate or rates of pay and number of pieces completed
at each piece rate. Upon the request of an employee, an employer shall furnish an
explanation in writing of how such wages were computed.

*Id.*  Defendants contend that Plaintiff "does not identify any ways in which her paycheck, for

example, was deficient."  *See* Def's MOL at 21.  Again, Plaintiff has adequately alleged that

Defendants have not met this statutory requirement.  *See* Amend. Compl. ¶ 146.  Thus, this cause

of action should not be dismissed.

## VI.   Plaintiff's Allegation of Willfulness Sufficiently States a Claim to Extend the Statute of Limitations Under FLSA to Three-Years.

The two-year statute of limitations provided under the FLSA is extended to a three-year

limitations period when the violating employer's conduct was "willful." *See* 29 U.S.C. § 255(a).

"A violation is willful within the meaning of the FLSA if the employer knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the statute." *Frasier v. General*

*Electric Co.*, 930 F.2d 1004, 1008 (2d Cir. 1991).

Willfulness is a condition of the mind and is thus governed by the pleading requirements

of Rule 9(b).  *See Pfister v. Allied Corp.*, 539 F. Supp. 224, 228 (S.D.N.Y. 1982); *see* Fed. R.

Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be alleged

generally").  As such, general allegations that a defendant willfully violated the FLSA are

sufficient at this stage of litigation. *See e.g., Janus v. Regalis Const., Inc.*, No. 11-CV-5788 ARR

VVP, 2012 WL 3878113, at *6 (E.D.N.Y. July 23, 2012), *report and recommendation adopted,*

No. 11-CV-5788 ARR, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012); *Rodriguez v. Almighty*

*Cleaning, Inc.*,784 F. Supp. 2d 114, 122 (E.D.N.Y.2011) (Plaintiffs adequately pled a willful violation of FLSA and New York Labor Law by alleging "Defendants willfully violated plaintiffs' rights by failing to pay plaintiffs the minimum wage for all hours of work performed each week."); *Ruggles v. Wellpoint, Inc.*, 253 FRD 61, 68 (N.D.N.Y. 2008) (The Court found that "[b]y alleging that [the employer] repeatedly failed to pay overtime wages, misclassified [employees] under the FLSA, and engaged in record keeping violations that thwart the ability to determine [employees'] 'wages, hours, and other conditions' of employment, [a plaintiff] allege[s] sufficient facts to maintain [a] claim that [the employer] willfully violated the FLSA."); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (willful violation properly alleged where the Complaint alleged that defendant "knew that nonpayment of minimum wage, nonpayment of overtime, and/or improperly retaining [Plaintiff's] tips would . . . violate federal and state laws").

> As the district court summarized in *Chime v. Peak Sec. Plus, Inc.*:
>
> The court in *Goodman v. Port Auth. of New York & New Jersey,* 850 F.Supp.2d 363 (S.D.N.Y.2012), for example, wrote that '[w]hether or not a violation of the FLSA is 'willful' is a fact-intensive inquiry not appropriately resolved on a motion to dismiss,' and accordingly denied a motion to dismiss claims occurring between two and three years before the filing of the complaint. *See id.* at 381; *see also Alvarez v. IBM Restaurants Inc.,* 839 F.Supp.2d 580, 587–88 (E.D.N.Y.2012) ('Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage.') (citing *McBeth v. Gabrielli Truck \*192 Sales, Ltd.,* 768 F.Supp.2d 396, 399 (E.D.N.Y.2011)).

*Id.*, 137 F. Supp. 3d 183, 191–92 (E.D.N.Y. 2015).  Thus, "plaintiffs may allege willfulness in general terms and nonetheless meet their burden of demonstrating a willful violation of the FLSA in order to avail themselves of the three-year statute of limitations." *Id.* (citing *Neil v. Sidney W. Barbanel Consulting Eng'r LLC,* No. 12 Civ. 4061, 2014 WL 3907909, at *2 (E.D.N.Y. Aug. 11, 2014)) (holding that, at motion to dismiss stage, general assertion of

willfulness is satisfactory for purposes of invoking the three-year statute of limitations).[13]

In this case, Plaintiff alleges that FDM's "conduct, as alleged, constitutes a willful violation of the FLSA."  Amend. Compl. ¶ 87; *see also* Amend. Compl. ¶¶ 85-86.  Plaintiff also alleges that she informed her supervisor that she was regularly working over forty hours per week, and that she had inquired about receiving overtime pay, but was denied such pursuant to FDM's no overtime policy.  *Id.* at ¶¶ 42-45.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.


Dated: September 1, 2016
       New York, New York

                                          Respectfully submitted,

                                  By:     __/s/_____
                                  Christopher Q. Davis (CD-7282)
                                  Rachel M. Haskell (RH-8248)
                                  **The Law Office of Christopher Q. Davis**
                                  225 Broadway, Suite 1803
                                  New York, New York 10007
                                  Telephone: (646) 430-7930

                                  *Attorneys for Plaintiff and the Proposed*
                                  *Collective Class*

---

[13] Because Plaintiff has properly pled willfulness, the Court need not assess equitable tolling on the basis of notice.