```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GRACE PARK, individually and on behalf of
all others similarly situated,

            Plaintiffs,

      -v-                                            No.  16 CV 1520-LTS

FDM GROUP (HOLDINGS) PLC and FDM
GROUP, INC.

            Defendants.

-------------------------------------------------------x
```

<u>M<small>EMORANDUM</small> O<small>RDER AND</small> O<small>PINION</small></u>

        Plaintiff Grace Park ("Plaintiff") brings this collective and class action against FDM Group (Holdings) PLC and FDM Group, Inc. (collectively, "FDM" or "Defendants") both individually and collectively, on behalf of putative members who were "FDM Trainees" or "FDM Consultants."  Plaintiff asserts claims for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA") and claims for minimum wage, overtime, gap time and record-keeping violations under the New York Labor Law ("NYLL").

        Defendants have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the First Amended Complaint ("FAC"), which was filed after Plaintiff had an opportunity to consider Defendants' arguments for dismissal, for failure to state a claim.  The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.  The Court has reviewed thoroughly the submissions of all parties with respect to the motion to dismiss.  For reasons stated below, Defendants' motion to dismiss is granted.

<u>BACKGROUND</u>

The following facts are taken from the FAC, or from documents relied upon by the FAC, and are assumed to be true for the purposes of this motion practice.

FDM's main business activities involve recruiting and training individuals ("Trainees") in information technology related skills, and placing the individuals with FDM's institutional clients ("FDM Consultants") across a range of technical and business disciplines. (<u>See</u> FAC ¶¶ 7, 18, 21, 23.)  Plaintiff was a Trainee from August 2014 to around October 2014, and signed a Training Agreement on June 30, 2014, which set forth the terms of her relationship with FDM during her training period.  (<u>See</u> <u>id.</u> ¶ 5; Ascher Decl. Ex. A, "Training Agmt," docket entry no. 29-1.)  The Agreement provides that "nothing in this Agreement shall give rise to a relationship of employee and employer between you and FDM, or between you and an FDM client with whom you may be on Placement.  To the extent that we choose to offer any work to you for a Placement, such matters will be set out in an employment contract and separate documentation."  (<u>Id.</u> at 4.)  Although the value of the training program as specified in the Training Agreement is up to $30,000, the Trainee is not responsible for paying for any of the training unless he or she breaches the trainees' obligations laid out by the Training Agreement, principally the successful completion of the training program and cooperation with placement efforts by FDM.  (<u>See</u> <u>id.</u>)  The Training Agreement permits termination by the Trainee, with no obligation to pay any costs, within 14 days of the date of the Training Agreement or if the Trainee is not placed with an FDM client for the first 90 days after "sign-off" of completion of the training.  (<u>Id.</u>)  The training itself lasts between two and six months, and "consists of foundation training followed by a specialized training program," and teaches Trainees to "perform professional business and IT consultancy" for FDM's clients.  (FAC ¶¶ 25-27.)  During

her training period, Plaintiff participated in classroom and practical skill development training, as did all of the other trainees.  (Id. ¶ 34.)

Following the completion of her training, Plaintiff was placed as an FDM Consultant at a financial institution for a two-year placement term.  (Id. ¶ 22.)  Plaintiff signed an "Employment Agreement," dated October 20, 2014, between herself and FDM Group.  (Id. ¶¶ 16, 42; Ascher Decl. Ex. B, "Employment Agmt," docket entry no. 29-2.)  All FDM Consultants were classified as W2 employees of FDM.  (FAC ¶ 41.)  As an FDM Consultant, Plaintiff was paid according to a hybrid compensation structure, which included a base pay of $23,000 for the first year (or $1916.67 per month) and a daily bonus of $88.00 if she worked a full 8-hour day, and a half-day bonus of $44.00 if she worked at least four hours.  (Id. ¶¶ 47-48, 50.)  The FAC does not proffer any information as to whether and to what extent Plaintiff was paid daily bonus compensation.  Plaintiff's Employee Agreement provides that, if an FDM Consultant does not complete the minimum two-year commitment, the Consultant must pay a Termination Fee of $30,000 if the Consultant leaves employment within the first year, and $20,000 in the event the Consultant leaves employment in the second year.  (See Employment Agmt.)  Plaintiff resigned from her FDM Consultant position shortly before the start of her second year, and paid a Termination Fee of $20,000 shortly after resigning.  (FAC ¶ 60.)

Plaintiff also alleges that, "[d]uring her employment," she informed her "FDM supervisor" that she was regularly working over forty hours per week and was informed that, unless her placement manager approved, she was ineligble for overtime pay.  (Id. ¶ 44.)  Plaintiff had emailed her account manager that she "arrives at work 'by 8:30 am' and gets out 'around 6:45-7:15 pm'" and further stated that she "'quite frequently' had to work on weekends and that she was not "able to even have a one hour lunch break [unpaid]. . . ."  (Id. ¶ 45.)  The FAC offers

no other specific allegations regarding the hours Plaintiff worked or her work schedule.  The quoted email, dated February 7, 2015, and in the record as an exhibit in connection with collective action certification motion practice, indicates that the arrival/departure schedule described applied "4 out of 5 days a week."  (Docket entry no. 22-11 at 3.)

DISCUSSION

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)) (internal quotation marks omitted).

Claims for Wages During Training Period

Defendants move to dismiss Counts 3 and 4 (failure to pay minimum wage as to Trainees) on the basis that Plaintiff was not an "employee" subject to the requirements of the FLSA (or the NYLL) while she was a trainee with the FDM Training Academy.  It almost goes without saying that the requirements of the FLSA, including payment of minimum wages, apply only to employees.  See Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 533-34 (2d Cir. 2016).  The Second Circuit has instructed courts to use a "primary beneficiary test," derived from precedents involving trainees and interns, that considers a number of "non-exhaustive" factors, to determine whether an individual, such as an intern, is an employee.  See id. at 536-

38.¹  Any such inquiry is "high context-specific" and requires consideration of the "totality of circumstances," to determine, given the economic reality of the relationship, who was "the primary beneficiary of the relationship."  Id. at 535-36.  In the trainee context specifically, in applying the Glatt test, courts have considered, among other factors, whether: (1) the trainees replace regular employees, (2) the trainees have an expectation of compensation, (3) the training sessions are similar to ones offered in vocational school, and (4) whether the employer received an immediate advantage from the trainees' work.  Warman v. Am. Nat'l Standards Inst., No. 15 CV 5486, 2016 WL 3647604, at *4 (S.D.N.Y. Jun. 27, 2016) (citing Glatt, 811 F.3d at 536).

        The Court reviews Plaintiff's allegations concerning her Trainee status in light of these factors in determining whether she has pleaded plausibly that she was an employee entitled to minimum wages during her Trainee period.  Plaintiff's relationship as a trainee with FDM was governed by the Training Agreement she signed.  (Ascher Decl. Ex. A.)  The Training Agreement explicitly provides that "nothing in this Agreement shall give rise to a relationship of employee and employer between you and FDM, or between you and an FDM client with whom you may be on Placement.  To the extent that we choose to offer any work to you for a

---

¹    The Glatt Court enumerated the following non-exhaustive factors as relevant to the evaluation of unpaid internships: (1) the extent to which the intern and the employer clearly understand that there is no expectation of compensation; (2) the extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions; (3) the extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit; (4) the extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar; (5) the extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning; (6) the extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern; and (7) the extent to which the intern and the employer understands that the internship is conducted without entitlement to a paid job at the conclusion of the internship.  811 F.3d at 536-37.

Placement, such matters will be set out in an employment contract and separate documentation."
(Id. at 4.) Plaintiff has not alleged that she received compensation, nor that she had an expectation of compensation during her training. The Agreement thus dispels any inference of an expectation on Plaintiff's part that she would receive compensation as a Trainee. Nor does the FAC plead facts indicating that FDM Trainees replace paid employees. To the contrary, the Agreement makes it clear that they are trained for placement at a separate client site after the training is complete. (See FAC ¶¶ 28, 31.) Although the stated value of the training program is up to $30,000 ($75 per unit), the Trainee is not responsible for paying any training cost unless he or she breaches the trainees' obligations laid out by the Agreement, principally the successful completion of the training program and cooperation with placement efforts thereafter. (Id.) The Agreement permits termination by the Trainee, with no obligation to pay any costs, within 14 days of the date of the Training Agreement or if the Trainee is not placed with an FDM client for the first 90 days after "sign-off" of completion of the training. (Id.) The training, which consisted of classroom and practical skill development training, was designed to teach the Trainees to perform professional, business and IT consultancy work. (Id. ¶¶ 27, 34.) The training, as described in the Complaint, resembles what would be offered at a vocational school, "including the clinical and other hands-on training provided by educational institutions," Glatt, 811 F.3d at 537, providing skills that are marketable beyond any particular FDM client. None of these factors is indicative of employee status; Plaintiff has not pleaded facts that would support a reasonable inference that she was an FDM employee during the training period. All point to the Trainee as the primary beneficiary of the training period agreement.

      Plaintiff alleges, in a conclusory manner, that she was "required to agree to the terms of both a Training Agreement and an Employment Agreement as a condition of her

employment with FDM" and contends that her training period was "post-hire" because it was done after a full interview and assessment and after a signed "contract outlining the terms of [her] employment with FDM." (See FAC ¶ 16; Pl. Opp. at 5.)  The employment-related aspects of these allegations are inconsistent with the plain terms of the relevant documents and thus are not plausible.  The Training Agreement explicitly stated that it was not an employment agreement, and that it did not guarantee actual job placement.  (See Training Agmt at 4.)  Plaintiff did not sign an Employment Agreement until October 2014, after she had completed her training.  (FAC ¶ 5; Employment Agmt.)  Plaintiff has not pleaded plausibly that she was an employee within the meaning of the FLSA or the NYLL during the training period.  Her causes of action for minimum wage during that period therefore fail to state claims upon which relief may be granted.  Accordingly, Counts 3 and 4 are dismissed.

Claims Related to Compensation as an FDM Consultant

1.        Minimum Wage Claims (Counts 5 and 6)

Defendants move to dismiss Plaintiff's minimum wage claim, arguing that her hourly pay[2] was actually above minimum wage.  Plaintiff was allegedly paid $1,916.67 per month (or roughly $23,000 per year) in basic pay, plus various bonuses.  Even without taking into account the bonuses, the base rate of pay provides more than $11 per hour, exceeding the federal minimum wage of $7.25 per hour and the New York minimum wage of $8.75 per hour.

---

[2]  Defendants treated the consultants as exempt employees, but recognize in the context of this motion practice that, since the "claim of exemption under the FLSA is an affirmative defense," Plaintiff is not required at this stage to support her position that she was non-exempt employee. Dejesus v. HF Mgmt. Servs., LLC, 726 F. 3d 85, 91 n.7 (2d Cir. 2013).  "The employer bears the burden of proof in making such a claim" that the plaintiff was exempt. Id.  The Court assumes, for purposes of this motion practice that Plaintiff was a non-exempt employee.

(See FAC ¶¶ 47-48, 50.) Plaintiff, however, claims that the $20,000 termination fee she was required to pay back to FDM pursuant to the Employment Agreement amounted to an illegal "kick-back," 29 C.F.R. ¶ 531.32(2), the deduction of which would reduce her net wages below the required minimum wage. (Pl. Opp. 8-9.)

Under the FLSA, "wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or free and clear. The wage requirements of [the FLSA] will not be met where the employee kicks-back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35 (internal quotation marks omitted). Therefore, "if an expense is deducted from an employees paycheck . . . or the employee is required to purchase [an] item at [her] own expense, and the cost of the item reduces the employee's wage in any workweek below the minimum wage, the expense will be considered a 'kickback,' and the employer will have violated the FLSA." Salazar Martinez v. Fowler Bros., 781 F. Supp. 2d 183, 191 n.5 (W.D.N.Y. 2011); see also Guan Ming Lin v. Benihana Nat'L Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA].") Courts have generally found deductions for "tools of the trade" such as uniforms, vehicles and other costs that are specific business expenses of the employer, and that are primarily for the benefit of the employer, to be "kickbacks." See He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014).

As an initial matter, the Court notes that Plaintiff has not alleged that she was subjected to any deduction from her paychecks for the Termination Fee. She merely alleges that she paid the fee after her employment terminated. Moreover, even assuming that the amount of the Termination Fee, when subtracted from the compensation Plaintiff earned as a consultant, would result in a net figure below the aggregate minimum wage for the consulting period, Plaintiff has not alleged facts that would support a finding that the fee constituted an illegal kickback. The Termination Fee is characterized in the Employment Agreement as liquidated damages approximating the damages FDM suffered by reason of breach of the Employment Agreement prior to the completion of the two-year contracted period. The Employment Agreement includes the consultant's acknowledgment that the Company incurred significant costs in training the employees and that the two-year term was contracted in consideration of such costs. (Ascher Decl. Ex. B.) The $30,000 maximum fee corresponds to the maximum value of the training, as set forth in the Course Description schedule to the Training Agreement. (Ascher Decl. Ex. A at 10.) It is not a deduction for tools used or costs incurred in the course of Plaintiff's performance of her job as a consultant. Indeed, if Plaintiff had performed the full two years of her contract, she would not have had to pay anything back at all. Such liquidated damages provisions in employment agreements are not unusual, and even those that are explicitly tied to repayment of the costs of a training program have been upheld as akin to loan repayment provisions. See Gordon v. City of Oakland, 627 F.3d 1092, 1096 (9th Cir. 2010) (finding City was free to seek repayment of training debt for police training when officer left before five-year time period specified for loan forgiveness); Heder v. City of Two Rivers, Wisconsin, 627 F.3d 777, 783 (7th Cir. 2002) (finding repayment provision to be valid). Accordingly, Plaintiff's consultancy minimum wage claims (Counts 5 and 6) are dismissed.

2.        Overtime Wage Claims (Counts One and Two)

Plaintiff also asserts claims for unpaid overtime wages for the consultancy period under the FLSA (Count 1) and NYLL (Count 2), the latter of which parallels FLSA requirements. DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89 n.5 (2d Cir. 2013).

In order to state a plausible FLSA overtime claim, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," which would then entitle the employee to time-and-a-half for excess hours over forty in a particular week. See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1).) "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013). In Lundy, for instance, one plaintiff brought a claim for overtime wages, alleging that she worked "five to six shifts" totaling between 37.5 and 45 hours per week, instead of a typical four shifts per week totaling 30 hours. Id. at 114. She also alleged that she was uncompensated for 30-minute meal breaks that were "typically" missed or interrupted and that she worked uncompensated time before scheduled shifts of "typically" 30 minutes. See id. The Second Circuit concluded that the plaintiff failed to plead plausibly her claim for overtime pay under the FLSA because "she [did] not allege that she was denied overtime pay in a week where she worked [the] additional shifts" and her allegations concerning uncompensated time "invited speculation." Id.; see also Nakahata, 723 F.3d at 201 (allegations that plaintiffs were uncompensated for work during meal breaks, during trainings, and before/after shifts failed to plausibly state a claim that plaintiffs worked more than 40 hours in a given week).

Plaintiff's general allegations here fail to plead sufficiently that she worked more than 40 hours in any given week. She alleges in a conclusory fashion that she "regularly" worked over 40 hours and notes that she once "emailed her account manager . . . that she arrives at work 'by 8:30am' and gets out 'around 6:45-7:15pm,' . . . 'quite frequently" had to work on weekends and that she was not "able to even have a one hour lunch break . . . ." (FAC ¶¶ 44-45.) Plaintiff's general allegations merely invite speculation. She does not allege that she was actually working during all of the hours she allegedly spent at the job site and, as noted above, the email message stated that the schedule described applied "4 out of 5 days a week." (Docket entry no. 22-11 at 3.) Such scant and imprecise information is insufficient to permit the Court to make a calculation demonstrating that Plaintiff worked more than forty hours in any week of her FDM employment. Accordingly, Plaintiff's claims for overtime wages under the FLSA and NYLL (Counts 1 and 2) are dismissed.

Additional State Law Claims

In light of the dismissal of all of Plaintiff's federal claims the Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction of any remaining state claims. Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). Furthermore, Plaintiff's "declaratory judgment" claim (Count 11), is dismissed to the extent it is predicated on Plaintiff's federal claims, as she has not pleaded any facts plausibly supporting any substantive federal claim.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the FAC is granted. In

light of the dismissal of the case, Plaintiff's motion for conditional certification and notice is deemed moot.  This Memorandum Opinion and Order resolves docket entry numbers 21 and 27. The Clerk of the Court is requested to enter judgment accordingly and close this case.

       SO ORDERED.

Dated: New York, New York
      March 9, 2017

                                           /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          United States District Judge