UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GRACE PARK, individually and on behalf of
all others similarly situated,

        Plaintiff,

  -v-                                            No. 16-CV-1520-LTS

FDM GROUP, INC.,

        Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        On March 9, 2017, this Court issued a Memorandum Order and Opinion (the "March Order"), 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017), granting the motion of defendants FDM Group (Holdings) PLC and FDM Group, Inc. (collectively, "FDM" or "Defendants") to dismiss the First Amended Complaint ("FAC") of Grace Park ("Plaintiff"), which asserted claims for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA") and claims for minimum wage, overtime, gap time and record-keeping violations under the New York Labor Law ("NYLL"). Plaintiff now moves for reconsideration of and relief from the March Order, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and S.D.N.Y. Local Civil Rule 6.3 and, alternatively, for leave to amend her complaint. (Docket Entry No. 56.) The Court has considered the submissions of the parties carefully and, for the following reasons, Plaintiff's motion for relief from the judgment is granted to the extent that Plaintiff's motion for leave to amend is granted in part.

DISCUSSION

The factual allegations underlying this case are set forth in the March Order, familiarity with which is presumed. See March Order, 2017 WL 946298, at *1-*2.

Motion for Reconsideration

Federal Rule of Civil Procedure 59(e)[1] allows parties to submit a motion to "alter or amend a judgment" no later than "28 days after the entry of the judgment." Rule 59(e) motions are granted to "correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). Similarly, Rules 60(b)(1), (2), and (6) allow a court to relieve a party "from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," and "any other reason that justifies relief," respectively. Fed. R. Civ. P. 60(b)(1), (2), (6); see Kotlicky v. U.S. Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987).

Both Rule 59(e) and Rule 60(b) permit the Court to reconsider a prior judgment, but impose a high burden. Reconsideration under Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted) (denying Rule 59(e) motion for reconsideration for failure to point to any additional

---

[1] Plaintiff also seeks relief under S.D.N.Y. Local Civil Rule 6.3. Plaintiff's Local Rule 6.3 motion, filed on April 6, 2017, was untimely, as a motion for reconsideration filed under that Rule must be filed "within fourteen (14) days after the entry of the judgment." S.D.N.Y. Local Civil Rule 6.3.

facts that would alter the court's opinion). A motion for reconsideration, moreover, is not intended to be a vehicle for parties to relitigate cases or advance new theories that they failed to raise in their underlying motion practice. Melnitzky v. Rose, 305 F. Supp. 2d 349, 352 (S.D.N.Y. 2004) (rejecting a Rule 59(e) motion for reconsideration because Plaintiff failed to point to "any controlling law or a factual matter before the Court on the underlying motion that the Court overlooked"). Similarly, a Rule 60(b) motion is "generally not favored and is properly granted only upon a showing of exceptional circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting United States v. International Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)). The decision as to whether to grant a party's Rule 60(b) motion for reconsideration sits "within the court's broad discretion." Badian v. Brandaid Communications Corp., No. 03 CV 2424 (DC), 2005 WL 1083807, at *2 (S.D.N.Y. 2005) (internal citation omitted).

Here, with respect to Rule 59(e), Plaintiff has pointed to no overlooked or new evidence or factual allegations previously unavailable to Plaintiff, and simply reiterates her previous arguments that she plausibly plead minimum wage and overtime compensation claims under the FLSA.[2] Nor does Plaintiff cite any overlooked binding precedent as a basis for reconsideration.[3] Likewise, Plaintiff has failed to satisfy the Rule 60(b) standard; she does not

---

[2] Plaintiff now alleges in her proposed Second Amended Complaint that her training stream has a maximum cost of $18,000 while she ultimately paid a Termination Fee of $20,000, and that this difference serves to bolster the conclusion that the fee is an illegal kickback. This alleged 10% difference between the costs associated with Plaintiff's training stream and the Termination Fee fails to support plausibly the proposition that the Fee was an illegal kickback rather than a valid "approximat[ion of] the damages FDM suffered by reason of breach of the Employment Agreement prior to the completion of the two-year contracted period." 2017 WL 946298, at *4.

[3] In her motion for reconsideration, Plaintiff reiterates her arguments against applying the Glatt test to these circumstances. (Docket Entry No. 57, at 8-11.) See Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir. 2016). The Court finds that Plaintiff has

argue surprise or excusable neglect and fails to demonstrate that the Court mistakenly or inadvertently misinterpreted the FAC in concluding that Plaintiff failed to state a claim under FLSA. Plaintiff also failed to highlight any newly discovered evidence or facts in her motion.

In the alternative, Plaintiff contends that the Court erred when it dismissed the FAC with prejudice and consequently denied leave to amend, and now moves to vacate the judgment and file a second amended complaint.

"Once judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Federal Rule of Civil Procedure 59(e) or 60(b)." National Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991). When considering a post-judgment motion for leave to amend, the Second Circuit has stated that the motion "must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011). The Court may "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." Id. (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

---

failed to present any basis to reconsider its use of this legal standard at the motion to dismiss stage, and notes that courts in this circuit have applied the Glatt test specifically in the trainee context. Plaintiff presents no controlling case law requiring that the Court apply another test in the context of trainees. See Warman v. Am. Nat'l Standards Inst., No. 15 CV 5486, 2016 WL 3647604, at *4 (S.D.N.Y. Jun. 27, 2016). Furthermore, Plaintiff's argument that the Court erred in applying Glatt at the pleading stage (Docket Entry No. 57, at 11) is unfounded, as this argument confuses the substantive test with the procedural standard applied. The Court employed the Glatt factors to determine whether the facts in the FAC plausibly plead a FLSA minimum wage claim, and therefore faithfully applied the pleading standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

The Court finds no undue delay, prejudice, or repeated failure to cure the complaint's deficiencies here. Plaintiff amended her complaint before any dispositive motions were filed and the Court entered judgment on the same day that the Defendant's motion to dismiss was granted, precluding any opportunity to act prior to judgment. The fact that Plaintiff amended her complaint only once before the judgment was entered, and that this amended complaint was filed before its deficiencies were identified by Defendant and the Court, tends to weigh in favor of "freely" giving leave to amend here. The Second Circuit has observed that, often, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015). Moreover, granting leave to amend here would not improperly force the parties to "expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute," as there has only been a single motion and no discovery has been conducted in this case. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). Accordingly, the Court finds that Plaintiff is not barred from seeking leave to amend.

In light of the "liberal spirit of Rule 15," the Court will consider Plaintiff's request to amend her pleadings, carefully balancing the value of finality and our court system's "strong preference for resolving disputes on the merits." Loreley Financing (Jersey) No. 3 Ltd, 797 F.3d at 190-91 (quoting Williams, 659 F.3d at 212-13). While the Second Circuit has found that a district court may forgo consideration of a motion for leave to amend when the party fails to proffer adequate grounds to set aside or vacate the judgment pursuant to Rule 59(e) or 60(b), the

plaintiffs in the cases upon which Defendants rely failed to make any showing to the district courts that the underlying complaints' deficiencies could be cured and therefore proffered no justification for setting aside the judgments. See e.g. Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (finding that "in the absence of any indication that Gallop could . . . provide additional allegations that might lead to a different result, the District Court did not err in dismissing her claim with prejudice); see also Janese v. Fay, 692 F.3d 221, 229 (2d Cir. 2012) (finding that the district court properly denied Plaintiffs' motion to amend when they failed to make any showing that would justify vacating the judgment to allow the reassertion of untimely claims). Here, Plaintiff has attached a Proposed Second Amended Complaint ("PSAC") to her Memorandum of Law in Support of her Motion for Reconsideration, which the Court will consider to assess whether her proposed amendments would be futile. Plaintiff's motion to modify the judgment is therefore granted to the extent necessary to permit consideration of her instant motion for leave to amend the FAC.

Motion for Leave to Amend

"The party opposing a motion to amend bears the burden of establishing that an amendment would be futile . . . . A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)" of the Federal Rules of Civil Procedure. Ballard v. Parkstone Energy, LLC, 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court previously concluded that the allegations of the FAC were insufficient to state a claim under Rule 12(b)(6) and the standard set forth in Twombly and Iqbal. In the PSAC, Plaintiff has added new alleged facts to support her minimum wage and overtime claims under the FLSA.

Minimum Wage Compensation During Training Period

With respect to Plaintiff's claim that she was not paid the minimum wage during her training period, the Court adopted the "primary beneficiary test" set forth by the Second Circuit in Glatt v. Fox Searchlight Pictures, Inc., to determine whether Park was an employee or trainee during that time. 811 F.3d 528, 536-38 (2d Cir. 2016). Applying several of the "non-exhaustive" factors identified in the Glatt opinion,[4] the Court found that "Plaintiff ha[d] not pleaded facts that would support a reasonable inference that she was an FDM employee during the training period." March Order, 2017 WL 946298, at *3. Given that the Training Agreement negated any expectation of compensation on the Plaintiff's part, and Plaintiff's allegations

---

4   The Glatt Court enumerated the following non-exhaustive factors as relevant to the evaluation of unpaid internships: (1) the extent to which the intern and the employer clearly understand that there is no expectation of compensation; (2) the extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions; (3) the extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit; (4) the extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar; (5) the extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning; (6) the extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern; and (7) the extent to which the intern and the employer understands that the internship is conducted without entitlement to a paid job at the conclusion of the internship. 811 F.3d at 536-37.

concerning the nature of the training activities and the benefits they offered to her demonstrated that those benefits outweighed the employment-related aspects of the alleged facts, the complaint did not substantiate the Plaintiff's conclusory assertions that she was an employee during the training period with facts depicting an "economic reality" of an employment relationship during the training period.  Id.

The PSAC alleges new facts related to the interview process for the training program, FDM's Code of Conduct for Trainees, Plaintiff's weekly training schedule, and other aspects of her training. (See PSAC ¶¶ 21-62.)  In particular, Plaintiff contends that the required background check and interview rounds preceding placement in the training program, the 40-hour weekly training schedule, FDM's "rules and regulations" pertaining to trainee conduct, and FDM's ability to hire and fire trainees plausibly show that Plaintiff was an employee during this period.  Id.  The Court finds that these proposed allegations are insufficient to state plausibly a claim that Plaintiff was entitled to be paid during her training period.  The PSAC does not plead facts tending to show that the training sessions here differed substantially from those offered in vocational schools or other educational environments, or that Plaintiff displaced the work of any paid FDM employees; her sole responsibility was to build skills, not to create work product.  See March Order, 2017 WL 946298, at *3; (PSAC ¶¶ 47-50).  Moreover, the allegations contradict the explicit stipulation in the Training Agreement that "nothing in this Agreement shall give rise to a relationship of employee and employer between you and FDM," negating any reasonable expectation that Plaintiff would be compensated before she signed an employer agreement with an FDM client upon completion of the training. (Ascher Decl. Ex. A, Docket Entry No. 29-1.)  Accordingly, the PSAC's factual elements, taken as true and considered in light of the substantive standard framed by the Glatt factors, do not plausibly allege that FDM was the

primary beneficiary of the training program and that Plaintiff was an employee under FLSA during the training period.

### Minimum Wage Compensation as an FDM Consultant

In the March Order, the Court found that the FAC and integral documents, read in the light most favorable to Plaintiff, did not state plausibly a claim that the Termination Fee imposed by the Employment Agreement was "a deduction [from Plaintiff's paychecks] for tools used or costs incurred in the course of Plaintiff's performance of her job as a consultant." 2017 WL 946298, at *4. Rather the pleading, including the agreement, showed a liquidated damages arrangement and did not support plausibly an inference that the fee constituted an illegal kickback under 29 C.F.R. § 531.35. In dismissing Plaintiff's claim concerning the repayment provision in Plaintiff's Employment Agreement, the Court relied primarily on Gordon v. City of Oakland, 627 F.3d 1092 (9th Cir. 2010), a case involving a training cost repayment provision enforceable upon the employee's termination of employment. 2017 WL 946298, at *4.

In conjunction with argumention in her reconsideration motion that the Court should have viewed Ketner v. Branch Banking and Trust Co., 143 F. Supp. 3d 370 (M.D.N.C. 2015) as authority more persuasive than Gordon, Plaintiff makes further factual proffers and arguments that are arguably consistent with Ketner's analytical approach. The Court is not persuaded that reconsideration of its March Order conclusions concerning the proper standard for analysis of the Termination Fee is warranted. Plaintiff's request to amend further her complaint

in connection with the claim that the Termination Fee constituted an illegal kickback is therefore denied as futile.

Overtime Compensation as an FDM Consultant

Finally, with respect to the overtime claims pertaining to Plaintiff's employment as a consultant, the Court adopted the test established by Lundy v. Catholic Health Sys. of Long Island Inc., which requires Plaintiff to "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours" in order to state a proper FLSA claim. 711 F.3d 106, 114 (2d Cir. 2013). In the March Order, the Court found that Plaintiff's "conclusory" allegations that she "regularly worked over 40 hours [in any given week,] arrives at work by 8:30am and gets out around 6:45-7:15pm, . . . quite frequently had to work on weekends and . . . was not able to even have a one hour lunch break" "merely invite[d] speculation" and therefore were "insufficient to permit the Court to make a calculation demonstrating that Plaintiff worked more than forty hours in any week of her FDM employment." 2017 WL 946298, at *4 (citing FAC ¶¶ 44-45) (internal quotation marks omitted).

The additional allegations proffered in the PSAC, however, are sufficient to show that Plaintiff worked some unpaid overtime during her employment as a consultant. Plaintiff alleges that her regular hours, set forth by a "Mountie Schedule," established a minimum of "8 hours per day and 5 days per week" of work. (PSAC ¶¶ 89-91.) Plaintiff also alleges that, from December 2014 to October 2015, she worked from "8:30 a.m. until 6:45-7:15 p.m. Monday through Thursday and from 8:30 a.m. until 5 p.m. on Fridays [most weeks] . . . except for the rare occasions when she could take a lunch break . . ." (Id. at ¶ 104.) Moreover, she alleges that she "occasionally" worked from home during the workweek and "quite frequently" worked from

home on the weekends. (Id. at ¶ 101.) Finally, she alleges that "she was not eligible for overtime pay . . . unless her placement manager approved overtime pay." (Id. at ¶ 105.)

Accepting as true the allegations that Plaintiff worked during the hours alleged in the FAC most weeks from December 2014 to October 2015, and was not eligible for overtime compensation, Plaintiff has "provide[d] sufficient detail about the length and frequency of [her] unpaid work to support a reasonable inference that [she] worked more than forty hours in a given week." Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013). The PSAC alleges that Plaintiff worked at least 9 hours and 15 minutes daily from Monday through Thursday, and 7 hours and 30 minutes on Fridays, or a total of 44.5 hours, in any given week during this time period, even assuming that Plaintiff took an hour-long lunch break and did not work from home during a given week. Therefore, the Court finds that the PSAC cures the pleading defects previously identified by the Court with respect to the overtime wage claim under FLSA, and that granting leave to amend to reassert this claim would not be futile.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration and Relief under Federal Rules of Civil Procedure 59 and 60 is granted insofar as the Court permits Plaintiff to move to amend her complaint, and Plaintiff's motion for leave to amend her pleading is granted with respect to Plaintiff's overtime claim, but denied with respect to Plaintiff's minimum wage claims. The dismissal with prejudice of Plaintiff's other claims stands, but the judgment will be vacated to permit continuation of the litigation with respect to the overtime pay claims.

This Memorandum Order resolves Docket Entry No. 56. The Clerk of the Court is directed to vacate the judgment and reopen the case.

SO ORDERED.

Dated: New York, New York
      August 28, 2018

      /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      United States District Judge