**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GRACE PARK, individually and on behalf of all
others similarly situated,

Plaintiffs,

vs.

FDM GROUP, INC.,

Defendant.

Civil Action No. 16-CV-1520 (LTS)

**Hon. Judge Laura T. Swain**

**<u>DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE
PURSUANT TO SECTION 216(B) OF THE FLSA AND FOR EXPEDITED DISCOVERY</u>**

2719828.2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 3

    The Second Amended Complaint and Motion for Conditional Certification .......................3

    FDM's Business Model........................................................................................................4

    FDM Training Academy .....................................................................................................5

    FDM Consultants ................................................................................................................5

LEGAL STANDARD.................................................................................................................... 9

ARGUMENT ............................................................................................................................... 11

I.     PLAINTIFFS FAIL TO MAKE THE REQUIRED FACTUAL SHOWING TO
      SUPPORT CONDITIONAL CERTIFICATION............................................................... 11

    A.   The Purported Class Is Not Similarly Situated as to Duties ......................................11

    B.   No Common Policy Regarding Denial of Overtime Exists .........................................15

    C.   The Plaintiffs Have Not Alleged Commonality as to FDM's Compensation
        Practices .....................................................................................................................166

        1.   Consultants Were Paid More Than the Salary Basis Threshold .......................... 16

        2.   The Daily Bonus Does Not Violate the FLSA Regulations and Is Not
            Common Among the Purported Class ................................................................. 17

        3.   The Liquidated Damage Provision Is Neither Ripe Nor Common to the
            Class.................................................................................................................... 19

II.    IF THE COURT CERTIFIES A CLASS, NOTICE SHOULD BE ISSUED
      THROUGH THE US MAIL ONLY FOR A THREE-YEAR CLASS PERIOD ............... 20

    A.   Notice Should Be Limited To a Three-Year Period....................................................20

    B.   Notice Should Be Issued Once By First Class Mail Only ..........................................22

    C.   Notice Must Be Accurate and Limited to a 60-Day Opt-In Period.............................23

    D.   Notice Discovery Should be Limited to Names and Addresses ..................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. IBM Rest., Inc.*,
    839 F. Supp. 2d 580 (E.D.N.Y. 2012) ..................................................................................20

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10-cv-4825 (PKC), 2011 WL 2207586 (S.D.N.Y. June 2, 2011)....................................21

*Baba v. Grant Central Partnership, Inc.*,
    No. 99-cv-5818 (TPG), 2000 WL 1808971 (S.D.N.Y. Dec. 8, 2000)....................................21

*Chakir v. BA Research Int'l, LP*,
    No 10-cv-2850, 2011 WL 13248862 (S.D. Tex. July 15, 2011) ......................................17, 18

*Chen v. Oceanica Chinese Rest., Inc.*,
    No. 13-cv-4623, 2014 WL 1338315 (E.D.N.Y. April 2, 2014).............................................23

*Chen v. Street Beat Sportswear, Inc.*,
    364 F. Supp. 2d 269 (E.D.N.Y. 2005) ..................................................................................18

*Clarke v. JP Morgan Chase Bank, N.A.*,
    No. 08-cv-2400, 2010 WL 1379778 (S.D.N.Y. March 26, 2010) ..........................................13

*Davis v. J.P. Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009).................................................................................................12

*Desmond v. PNGI Charles Town Gaming, LLC*,
    564 F.3d 688 (4th Cir. 2009) ...............................................................................................12

*Diaz v. Elecs. Boutique of Am., Inc.*,
    No. 04-cv-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) .................................15

*Fraticelli v. MSG Holdings, LP*,
    No. 13-cv-6518 JMF, 2014 WL 1807105 (S.D.N.Y. May 7, 2014)............................9, 10, 14

*Garcia v. Spectrum of Creations, Inc.*,
    102 F. Supp. 3d 541, 548 (S.D.N.Y 2015)..................................................................9, 20, 24

*Gonzalez v. Scalinatella, Inc.*,
    No. 13-cv-3629 (PKC), 2013 WL 6171311 (S.D.N.Y. Nov. 25, 2013) .................................21

*Guaman v. 5 M Corp.*,
    No. 13 Civ. 3820 LGS, 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013)...................................22

*Guo v. Tommy's Sushi Inc.*,
No. 14 Civ. 3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) ...............................23

*Guzelgurgenli v. Prime Time Specials Inc.*,
883 F. Supp. 2d 340 (E.D.N.Y. 2012) ............................................................................22, 23

*Haas v. Verizon N.Y., Inc.*,
No. 13-cv-830, 2015 WL 4884858 (S.D.N.Y. Aug. 13, 2015)................................................12

*Hamadou v. Hess Corp.*,
915 F. Supp. 2d 651 (S.D.N.Y. 2013)...................................................................................20

*Hoffman v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997).........................................................................................19

*In re AT&T Mobility Wireless Data Services Sales Litigation*,
270 F.R.D. 330 (N.D. Ill. 2010)............................................................................................22

*Iriarte v. Café 71, Inc.*,
No. 15-cv-3217 (CM), 2015 WL 8900875 (S.D.N.Y. Dec. 11, 2015) ...................................24

*Kadden v. VisuaLex, LLC*,
910 F. Supp. 2d 523 (S.D.N.Y. 2012)...................................................................................12

*Korenblum v. Citigroup, Inc.*,
195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016)...........................................................................10

*Lin v. Benihana Nat'l Corp.*,
275 F.R.D. 165 (S.D.N.Y. 2011) ..........................................................................................24

*Litz v. Saint Consulting Grp., Inc.*,
No. 11-cv-10693, 2013 WL 5205868 (D. Mass. Sept. 13, 2013)....................................17, 18

*Lloyd v. J.P. Morgan Chase & Co.*,
No. 11 Civ. 9305 LTS, 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013)....................................22

*Martinez v. Midtown Cleaner, Inc.*,
2013 WL 5807178 at *3 (S.D.N.Y. Oct. 29, 2013) ...............................................................20

*Martinez v. Zero Otto Nove Inc.*,
No. 15-cv-899 (ER), 2016 WL 3554992 (S.D.N.Y. June 23, 2016) ........................................9

*Mata v. Foodbridge LLC*,
No. 14-cv-8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015) ........................................9

*McCoy v. RP, Inc.*,
No. 14-cv-3171-PMD, 2015 WL 6157306 (D.S.C. Oct. 19, 2015)........................................22

*McKinzie v. Westlake Hardware, Inc.*,
No. 09-cv-796-W-FJG, 2010 WL 2426310 (W.D. Mo. June 11, 2010)................................22

*Michael v. Bloomberg LP*,
No. 14-cv-2657 (TPG), 2015 WL 1810157 (S.D.N.Y. April 17, 2015)...........................22, 24

*Morales v. Plantworks, Inc.*,
No. 05-cv-2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) .........................................9

*Morris v. Lettire Const., Corp.*,
896 F. Supp. 2d 265 (S.D.N.Y. 2012).....................................................................................22

*Puglisi v. TD Bank, N.A.*,
998 F. Supp. 2d 95 (E.D.N.Y. 2014) ......................................................................................22

*Ramos v. Platt*,
No. 13-cv-8957-GHW, 2014 WL 3639194 (S.D.N.Y. July 23, 2014)....................................21

*Rappaport v. Embarq Mgmt. Co.*,
No. 07-cv-468-Orl-19DAB, 2007 WL 4482581 (M.D. Fla. Dec. 18, 2007)...........................10

*Reich v. State of N.Y.*,
3 F.3d 581 (2d Cir. 1993) .......................................................................................................12

*Relyea v. Carman, Callahan & Ingham, LLP*,
No. 03-cv-5580, 2006 WL 2577829 (E.D.N.Y. Sept. 6, 2006) ..............................................12

*Reyes v. NY F&B Servs., LLC*,
No. 15-cv-2882-LTS-DCF, 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016)....................9, 10, 20

*Rivera v. Anjost Corp.*,
645 Fed. App'x 30 (2d Cir. 2016)...........................................................................................16

*Romero v. H.B. Auto. Grp., Inc.*,
No. 11-cv-0386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ......................................14

*Rubery v. Buth-Na-Bodhaige, Inc.*,
569 F. Supp. 2d 334 (W.D.N.Y. 2008)...................................................................................22

*Sanchez v. El Rancho Sports Bar Corp.*,
No. 13-cv-5119 (RA), 2014 WL 1998236 (S.D.N.Y. May 13, 2014)....................................20

*Sanchez v. JMP Ventures, LLC*,
No. 13-cv-7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)......................................10

*Seltzer v. Dresder Kleiniwort Wasserstein, Inc.*,
365 F. Supp. 2d 288 (S.D.N.Y. 2005).....................................................................................16

*Sethi v. Narod*,
   974 F. Supp. 2d 162 (E.D.N.Y. 2013) ...................................................................................11

*Sharma v. Burberry Ltd.*,
   52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014) .......................................................................22, 24

*Smallwood v. Ill. Bell Tele. Co.*,
   710 F. Supp. 2d 746 (N.D. Ill. 2010) ...................................................................................22

*Summa v. Hofstra Univ.*,
   No. CV 07-3307 (DRH) (ARL), 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008) .............21, 24

*Sutton-Price v. Daugherty Sys., Inc.*,
   No. 11-cv-1943 (CEJ), 2013 WL 3324364 (E.D. Mo. July 1, 2013) ......................................13

*Trinidad v. Pret A Manger (USA) Ltd.*,
   962 F. Supp. 2d 545 (S.D.N.Y. 2013)..............................................................................20, 22

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
   No. 10-cv-8820 (LTS) (THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011) .......................10

*Villarreal v. St. Luke's Episcopal Hosp.*,
   751 F. Supp. 2d 902 (S.D. Tex. 2010) ...................................................................................13

*Warman v. Am. Nat'l Standards Inst.*,
   193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016)............................................................................10

*Winfield v. Citibank, N.A.*,
   843 F. Supp. 2d 397 (S.D.N.Y. 2012).....................................................................................20

*Yap v. Mooncake Foods, Inc.*,
   146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ......................................................................23

**STATUTES**

29 U.S.C. § 213(a)(17)....................................................................................................................11

29 U.S.C. § 255(a) .........................................................................................................................20

47 U.S.C. § 227...............................................................................................................................22

**OTHER AUTHORITIES**

29 C.F.R. § 541.400 .......................................................................................................................13

29 C.F.R. § 541.604 ...........................................................................................................16, 17, 18

## PRELIMINARY STATEMENT

The Plaintiffs seek Court approval to invite literally every person that Defendant FDM Group, Inc. ("FDM") has trained or employed over the past nine years – more than 1,450 individuals – to join this putative collective action challenging FDM's practices with respect to overtime. But the Plaintiffs fail to meet even the relatively lenient standard for conditional certification under Section 216(b) of the Fair Labor Standards Act ("FLSA").

*First*, the Plaintiffs cannot allege that FDM had a uniform practice or policy with respect to overtime, because FDM's Consultants worked at more than 60 clients, each of which had its own separate policies and procedures. Thus, the Court should reject the Plaintiffs' conclusory reliance on a purported "no overtime, period" policy, which they claim provided that "any hours worked by FDM Consultants beyond forty were **presumed to be non-compensable** unless agreed to in writing by FDM's clients." (Pl. Br. at 2.) This description of FDM's policy is simply inaccurate. FDM's policy expressly provides that additional compensation can be paid on a case-by-case basis depending on FDM's contract with the particular client to which the Consultant was assigned. Thus, the experience of the Named Plaintiff who worked for Client A cannot possibly purport to be typical of unnamed Consultants who worked for Clients B or C.

*Second*, the Plaintiffs cannot allege a uniform treatment of each purported class member's eligibility for exemption from the overtime laws – the threshold issue for the Plaintiffs' sole remaining claim. In reality, that question turns on individualized factors such as the information technology ("IT") content area in which they trained, the client to whom they were assigned, and the department within the client where they worked. Thus, individualized proof will be necessary to demonstrate or defeat exempt status.

Notwithstanding the numerous individualized factors involved, the Plaintiffs claim to have pleaded "**three independently unlawful compensation policies**, resulting in uniform violations of

the FLSA's salary basis test for relevant white-collar exemptions." (Pl. Br. at 1 (emphasis in original).) This conclusory allegation is counter-factual on its face, and does not support the application for conditional certification.

*First*, the Plaintiffs claim that all FDM Consultants were paid pursuant to a compensation scheme that made them ineligible for the computer professional exemption, because the scheme did not satisfy the salary-basis test component of that exemption. Here, the Plaintiffs are misconstruing FDM's payment scheme as all purported class members were in fact paid more than the salary basis threshold minimum.

*Second*, the Plaintiffs claim that the compensation scheme compensated Consultants for logging billable time on a non-salary basis. However, the FLSA regulations permit additional compensation, such as FDM paid its Consultants for days worked on site with a client, without destroying exempt status because they are not hourly-based bonuses. And even if they were considered hourly-based bonuses, the payments are nonetheless permitted under the FLSA regulations because they bear a reasonable relationship to the compensation each Consultant received. Although protected under either avenue of the regulations, the analysis of the applicability of the FLSA exemption is not compatible with class-wide treatment because it would require individualized proof as it relates to each purported class member.

*Third*, the Plaintiffs point to the liquidated damages provision in their employment agreements as a purported commonality. But the Court has already ruled that the provision was not an improper deduction or kickback such that it destroyed any exemption status; the Plaintiffs cannot revive this claim through the back door of the overtime claim. Moreover, even if the liquidated damages provision were somehow relevant to the remaining overtime claim, it is not a commonality; of the fourteen Named and Opt-In Plaintiffs, only five prematurely terminated their

contracts, potentially subjecting them to the liquidated damage provision.  And only one of those five paid some or all of the fee.

At bottom, the Plaintiffs are simply claiming, without explanation, that all Consultants necessarily perform non-exempt duties.  Once again, that conclusory allegation should be rejected.

Because the Plaintiffs' overtime claim plainly raises distinct issues depending on the precise work that each purported class member performed for each of more than 60 clients, conditional class certification should be denied.

## FACTUAL BACKGROUND

### The Second Amended Complaint and Motion for Conditional Certification

On February 26, 2016, Named Plaintiff Grace Park filed her initial complaint against FDM and amended on June 17, 2016 to assert eleven claims under state and federal law.  (Dkts. 1, 20.)  On March 9, 2017, the District Court dismissed the federal minimum wage and overtime claims with prejudice.  (Dkt. 54.)  The Court held that Consultants were in fact paid more than minimum wage, and therefore failed to state a claim.  (*Id*. at 7-8.)  It further heldthat the early termination fee was not an improper deduction because there were no allegations the fee was in fact deducted from Consultants' compensation.  (*Id*. at 9.)  Moreover, "[s]uch liquidated damages provisions in employment agreements are not unusual, and even those that are explicitly tied to repayment of the costs of a training program have been upheld as akin to loan repayment provisions."  (*Id*.)  The Court also dismissed the Consultant overtime claim because the Named Plaintiff failed to adequately plead that she in fact worked more than forty hours in a given week.  (*Id*. at 11.)  The Court declined to exercise supplemental jurisdiction over the state law claims.  (*Id*.)

The Named Plaintiff moved the Court to reconsider, and alternatively requested leave to file a second amended complaint.  (Dkt. 57.)  On August 28, 2018, the Court affirmed its decision in all respects, but granted the Named Plaintiff's request to amend her complaint as it related to

the Consultant overtime claim.  (Dkt. 65 at 10-11.)  The Second Amended Complaint was filed on

September 21, 2018.  (Dkt. 68, hereinafter "SAC.")  In addition to the Named Plaintiff, thirteen

other individuals have submitted consents opting into the litigation as plaintiffs.  (Dkts. 42, 43, 45-

48, 50-53, 69, 70, 73.)

On October 12, 2018, the Plaintiffs moved the Court to "conditionally" certify a collective

action under Count 1, the overtime claim arising under the Fair Labor Standards Act ("FLSA").

(Dkt. 82.)  The Plaintiffs request conditional certification of a class including:

> All persons who were employed by Defendants at any time from February 26, 2010
> through the date this Court grants preliminary certification as 'FDM Consultants'
> and who signed an Employment Contract with a template Termination Fee
> triggered in the event of early resignation, were paid a conditional bonus in the form
> of basic and daily bonus pay and not a predetermined and guaranteed salary of at
> least $455 per week or an hourly rate of not less than $27.63 per hour for each hour
> worked, and who were denied lawful overtime compensation pursuant to
> Defendants' uniform 'no overtime, period' policies.

(SAC ¶ 12.B1; Pl. Br. at 4.)  As defined, the purported class includes more than 1,450 potential

members.  (Gates Dec. at ¶ 2, attached hereto as Exhibit 1.)

**FDM's Business Model**

FDM is a multinational company that provides IT staffing to clients.  (Dkt. 35-1 at ¶ 2.)

FDM's business model is unique, in that it undertakes substantial cost and effort to train each

Consultant who is placed with a client.  (*Id.* at ¶ 3.)  In that way, FDM can ensure that each

employee has the requisite technical proficiency, skills, and knowhow to be a useful asset to

FDM's clients.

FDM provides IT staffing services to more than sixty individual client companies.  (Dkt.

35-1 at ¶ 7; Gates Dec. at ¶ 4.)  FDM separately negotiates staffing contracts with each client, and

each of those contracts has different pricing structures, working hours, compensation for additional

hours worked, and job duties.  (Dkt. 35-1 at ¶ 8.)  Most relevant here, under those agreements,

some clients agree to pay additional amounts for hours worked beyond a certain threshold. (*Id.*) In such cases, FDM then passes along additional compensation to Consultants assigned to those clients who work the additional hours specified in the client's agreement. (*Id.*)

**FDM Training Academy**

The lack of commonality among the purported class members is apparent from the outset of the FDM Training Academy. Contrary to the Plaintiffs' suggestion that FDM operates a single monolithic "training program," FDM's training programs consist of numerous different training streams that correspond to distinct IT content areas, including: Data and Operational Analysis, Project Management, Application Support, Java Developer, Business Analysis, Testing, and Development and Information Security. (Dkt. 81-10 at 10-11.) Each training stream has different courses, known as modules, that train participants in the various skills needed for positions within their chosen content area. (Dkts. 81-10 at 10-11, 35-1 at ¶ 3.) The training streams themselves are combinations of various training courses (called modules) that involve highly differentiated skills. (*Id.* at ¶ 4.) Some of these modules give trainees an opportunity to obtain third-party certifications in various content areas that are recognized industry-wide and are valuable, and often necessary, to obtain work as an IT professional. (*Id.* at ¶ 5; *see also* Dkt. 22-2 at 20 (depicting training program structure).)

**FDM Consultants**

After successfully completing the FDM Training Academy or otherwise demonstrating their proficiency in their content area, trainees become eligible to work at FDM client sites and provide consulting services for FDM clients as FDM-employed "consultants." (Dkt. 35-1 at ¶ 6.)

**The Exemption**

The facts demonstrate that the putative class members vary significantly with respect to the applicability of the exemption from the FLSA overtime requirements. For example, although

Consultants train in one of the various training streams, after completing training they are assigned to work in one of numerous job roles within the IT content area corresponding to their training stream. (Gates Dec.at ¶ 8.)  The Plaintiffs do not allege what their daily duties were as a Consultant within their particular job role, or as a general matter as to any of the job roles.  Named Plaintiff Park posits only that her "primary job duty was performing consulting services" for FDM's clients. (Dkt. 81-13 at ¶ 38.)  The four other declarations the Plaintiffs submit in support of their motion are equally vague about their daily duties, referring simply to "consulting services."  (Dkt. 81-15 at ¶ 47; Dkt. 81-14 at ¶ 33; Dkt. 81-16 at ¶ 28; Dkt. 81-17 at ¶ 33.)

Consultants receive an annual base salary, which differs depending on whether the Consultant is in his or her first or second year of the agreement.  (SAC ¶¶ 108-109.)  Consultants are paid that base salary regardless of whether they are performing services for an FDM client. For time spent at a client, Consultants are eligible for additional compensation. (*Id*.)

The Plaintiffs are not similarly situated as to each other or the class they seek to represent as it relates to their pay provisions.  For example, the Plaintiffs allege that prior to November 2014, Consultants' first-year compensation was $23,000, less than the salary basis threshold of $23,660. (Pl. Br. at 5-6.)   However, both the Named Plaintiff and Opt-In Plaintiff Suarez received guaranteed signing bonuses of $750 upon executing their employment agreements, meaning they received total compensation of $23,750 during their first year as a Consultant.  (Dkt. 81-2 at 6; Dkt. 81-2 at 1; Dkt. 81-1 at 10.)

Indeed, Plaintiffs' argument that they have not been paid the minimum salary basis threshold applies only to a small subset of the purported nine-year class period.  For instance, former FDM Consultant and Opt-In Plaintiff Louis Caponi attested to receiving a first-year salary of $43,000 in 2015.  (Dkt. 35-3 at ¶ 9.)  Accordingly, as can be seen, there are numerous different

ranges of employment agreements with varying salary level, but all Consultants have been and are paid more than the minimum salary basis threshold of $23,660. Thus, they are not similarly situated.

### FDM's Purported "No Overtime" Policy

Although the Plaintiffs predicate the putative class on a claimed "uniform no overtime, period" policy, in fact FDM separately negotiates terms and conditions with each of its 40 clients that results in different rates, working hours, compensation for additional hours, and job duties for the consultant services. (Dkt. 35-1 at ¶¶ 7-8.) Accordingly, the location, scope, working hours, and details of the services will vary from client to client depending on its requirements and work environment. (*Id.*) For some clients, additional hours are allowed and compensated. (*Id.*)

Moreover, work schedules can vary even within different departments of the same client depending on workloads, which application or software the consultant supports, and other client business unit demands necessitating a particular work schedule. (*Id.*) The hours a consultant is scheduled to work can also change over time in conjunction with the client's needs. (*Id.* at ¶ 9.) For instance, Travis Scavone generally worked a set schedule, but he was sometimes required to work extra hours on weekends. (Dkt. 35-2 at ¶ 9.) If Mr. Scavone works more than 45 hours a week, he is provided with additional pay at a rate of $11 per hour. (*Id.* at ¶ 10.) By contrast, Louis Caponi – who has opted-in as a plaintiff in this case – affirmed that he has never been asked to work, nor has he worked, over 40 hours a week since he began his placement in June 2015. (Dkt. 35-3 at ¶ 8.)

### The Liquidated Damage Provision

The Plaintiffs also cannot allege a uniform applicability of FDM's early termination fee provision. All Consultants execute an employment agreement with FDM. (SAC ¶ 15.) Under

that agreement, Consultants agree to work for FDM for a minimum of two years.  (Dkts. 81-2 and 81-4 at § 1.)  Consultants have the option to terminate the agreement at any time prior to the expiration of the two-year period.  (*Id*. at § 4.2.)  Under certain circumstances, Consultants become obligated to pay FDM liquidated damages in the form of an early termination fee if they do not complete the full period of the agreement.  (*Id*. § 4.3.)  There is no early termination fee for Consultants who work two or more years with an FDM client, and the vast majority of FDM consultants meet the two-year commitment.  (Dkt. 35-1 at ¶ 11.)

Although Named Plaintiff Park alleges that she paid FDM after choosing to voluntarily terminate her agreement early (SAC ¶ 142), her experience is not typical of the thirteen other Opt-In Plaintiffs, let alone of the nearly 1,500 other purported class members.  Park terminated her employment agreement during the first year of the term, and therefore became subject to a $30,000 liquidated damage provision.  (*Id*. at ¶ 139.)  However, FDM agreed to treat her termination as having occurred in the second year, thereby reducing the fee to $20,000.  (*Id*.)  Eight of the other Opt-In Plaintiffs, Lin, Shirvani, Quiroz, Bell, Caponi, Feguson, Herlihy, and Borges, completed the full two-year term of their agreements and were therefore not subject to the liquidated damage provision.  (Gates Dec. at ¶ 15.)  Opt-In Plaintiffs Javed and Suarez prematurely terminated their agreements, but paid no liquidated damages whatsoever.  (*Id*. ¶ 16.)  And Opt-In Plaintiff Ausaw was involuntarily terminated and FDM waived the liquidated damage provision as to him.  (*Id*. ¶ 17.)  The unique experiences even among only the Named Plaintiff and the Opt-In Plaintiff clearly demonstrates obvious differences among the purported class.

### **The Named and Opt-In Plaintiffs**

The Plaintiffs demonstrate the varied nature of the purported collective, but do not remotely support the request for notice to all of FDM's Consultants over the past 6 years.

For example, Named Plaintiff Park and Opt-In Plaintiff Herlihy trained in the Data and Operational Analysis Stream; Opt-In Plaintiffs Lin, Ausaw, and Coupet trained in the Project Management Stream; Opt-In Plaintiffs Shirvani, Quiroz, Bell, Javed, Suarez, and Borges trained in the Application Support Stream; and Opt-In Plaintiffs Alvarez, Caponi, and Ferguson trained in the Java Developer Stream. (Dkts. 35-3 at ¶ 4, 81-3 at ¶ 15, 81-14 at ¶ 6, 81-15 at ¶ 21, 81-16 at ¶ 5, 81-17 at 6; Gates Dec. at ¶ 12.) No individuals have opted in, and the Plaintiffs have not submitted declarations from anyone, who trained in other three training streams such as Business Analysis, Testing, and Development and Information Security.

Moreover, despite the fact that this case has been pending for nearly three years, the Plaintiffs have been unable to find similarly situated class members, even as to the clients to which they were assigned, beyond the following 14 plaintiffs: Alvarez (Raymond James); Ausaw (HSBC); Bell (UBS, Citigroup); Borges (UBS); Caponi (Raymond James); Coupet (Barclays); Ferguson (RBC Capital Markets); Herlihy (Fannie Mae); Javed (Macquarie, Fannie Mae); Lin (National Grid); Park (Bank of America); Quiroz (Bank of America); Shirvani (Citigroup); and Suarez (BNP Paribas). (Gates Dec. at ¶ 13.)

## LEGAL STANDARD

In seeking conditional certification, the Plaintiffs have the burden to demonstrate "that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Fraticelli v. MSG Holdings, LP*, No. 13-cv-6518 JMF, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014). The Plaintiffs must "make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' and . . .that there is a 'factual nexus between the named plaintiff's situation and the situation of other[s]." *Reyes v. NY F&B Servs., LLC*, No. 15-cv-2882-LTS-DCF, 2016 WL 796859, at *2 (S.D.N.Y. Feb. 22, 2016). While the "Plaintiff's burden of

proof is low, it is not non-existent – certification is not automatic." *Id.* at *3.  The Plaintiffs must convince the Court that "circumstances exist to warrant the exercise [of its] discretion" in favor of conditional certification.  *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006).

The showing must "be based on some substance." *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 548 (S.D.N.Y 2015).  "Plaintiff must offer actual evidence of a factual nexus . . . rather than mere conclusory allegations." *Mata v. Foodbridge LLC*, No. 14-cv-8754 (ER), 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015).  "[T]he 'consensus' in this district is that 'where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide *a minimum level of detail*." *Martinez v. Zero Otto Nove Inc.*, No. 15-cv-899 (ER), 2016 WL 3554992, at *4 (S.D.N.Y. June 23, 2016) (emphasis in original).

The Plaintiffs allege that FDM violated the FLSA by misclassifying Consultants as exempt and failing to pay them for hours worked beyond 40 in a workweek.  (Pl. Br. at 1, 18-20.) Determining "whether a compensation policy is unlawful frequently turns on the duties, pay rates, and working schedules of the employees it covers," and plaintiffs must "make some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, and who are classified as exempt pursuant to the complained-of policy." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016).  Although similarly situated is not defined in the FLSA, "courts require that there be a factual nexus between the claims of the named plaintiff and those who have chosen or might potentially choose to opt-in to the action." *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016).

Court-authorized notice should not be authorized if the Plaintiffs fail to demonstrate that similarly situated individuals exist across the proposed classes, as notice would otherwise function

as "little more than a fishing expedition." *Rappaport v. Embarq Mgmt. Co.*, No. 07-cv-468-Orl-19DAB, 2007 WL 4482581, at *5 (M.D. Fla. Dec. 18, 2007). "The notice and opt-in process outlined by the FLSA is not a discovery device to determine whether conditional certification is appropriate. More is required under the law, even at the first stage of the conditional certification process." *Sanchez v. JMP Ventures, LLC*, No. 13-cv-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014). Indeed, a court "must . . . take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs." *Reyes*, 2016 WL 796859 at *3; *Fraticelli*, 2014 WL 1807105, at *1. Further, it is "within the district court's power to limit the scope of the proposed class." *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-cv-8820 (LTS) (THK), 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011).

## ARGUMENT

I.    **PLAINTIFFS FAIL TO MAKE THE REQUIRED FACTUAL SHOWING TO SUPPORT CONDITIONAL CERTIFICATION**

The Plaintiffs – seeking to conditionally certify a class consisting of nearly 1,500 potential class members across numerous different job roles across distinct information technology content areas and who were assigned to one or more of more than sixty different FDM clients – fail to demonstrate that they and the purported class members are similarly situated as to their job duties, their pay provisions, or FDM's purported overtime policy, and therefore conditional certification is inappropriate.

### A.   The Purported Class Is Not Similarly Situated as to Job Duties

The Plaintiffs fail to demonstrate that the nearly 1,500 potential class members are similarly situated as to their daily job duties. FDM Consultants are information technology

professionals and therefore exempt from FLSA overtime requirements under, at a minimum, the

computer professional exemption, which applies to IT employees whose primary duties are:

(A)   The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;

(B)   The design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specification;

(C)   The design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or

(D)   A combination of such duties where the performance of which requires the same level of skills

29 U.S.C. § 213(a)(17).   Determining whether the exemption applies requires "fact-intensive

analyses of the duties of the employees in order to evaluate whether their computer-related

responsibilities rose to the level required by the exemption."  *Sethi v. Narod*, 974 F. Supp. 2d 162,

179 (E.D.N.Y. 2013).  Factors considered include the volume of data the employee manages, the

number of users the employee supports, the type and complexity of the problems that the employee

handles, the skill level of the employee, including certifications held, and the level of initiative,

creativity and strategy the employee uses.  *Id.* (denying summary judgment where there were

"disputed issues regarding how Plaintiff spent his working hours").

The Plaintiffs argue, conclusorily, that they are similarly situated "because they perform

non-exempt duties."  (Pl. Br. at 2.)[1]  Yet, they provide no explanation whatsoever of what those

---

[1] The Plaintiffs' contentions regarding the purported non-exempt "production duties" (Pl. Br. at 18-19) appear to be an attempt to demonstrate the inapplicability of a wholly different exemption, one for administrative employees.  All of the authority cited by the Plaintiffs as supporting their contention found, as a matter of law, that production duties destroyed the potential applicability of the administrative exemption.  Moreover, none held that a class should be conditionally certified based on purported "production" duties.  *Reich v. State of N.Y.*, 3 F.3d 581, 587 (2d Cir. 1993) (whether employees were properly classified as exempt administrative professionals turned, "in large part, of whether the [employees] perform the 'administrative' activities of the [employer], as distinguished from its 'production' activities"); *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 540-41 (S.D.N.Y. 2012) (finding employee not exempt under administrative exemption because of the performance of "production" duties); *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 694 (4th Cir. 2009) (affirming summary judgment against employer where employees were not exempt administrative employees when performing production duties); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) (reversing grant of summary judgment to employer where plaintiffs were not exempt under the administrative exemption based on production duties); *Haas v. Verizon N.Y., Inc.*, No. 13-cv-830, 2015 WL 4884858, at *14 (S.D.N.Y. Aug. 13, 2015) (on summary judgment, report and recommendation analyzing whether

duties were, instead simply describing them as "consulting services." Indeed, the Plaintiffs submit five declarations in support of their Motion, but those declarations provide a near identical, bare bones description of their duties as "consulting." (Dkt. 81-13 ¶ 38 and Dkt. 81-15 at ¶ 47 ("primary job duty was performing consulting services"); Dkt. 81-16 at ¶ 28 and Dkt. 81-17 at ¶ 33 ("primary job duty was performing IT Consulting services"); Dkt. 81-14 at ¶ 33 ("primary job duty was performing Project Management Consulting services").) Those descriptions are likely deliberately vague in an attempt to mask the fact that each Consultant's duties varied widely depending on a host of factors, not the least of which is the IT field each trained in, their particular job role, and the needs of the client to which they were assigned. (Gates Dec. at ¶¶ 8-9.)

The applicability of the computer professional exemption will vary across the different training streams or content areas Consultants worked in. As described above, each of the training streams corresponds to a different IT content area, and positions within each field require unique skills and certifications applicable to their area of focus. Courts have rejected similar attempts to certify a broad class across multiple different IT fields and recognized the lack of common skills and duties across differing fields. *Sutton-Price v. Daugherty Sys., Inc.*, No. 11-cv-1943 (CEJ), 2013 WL 3324364, at \*4 (E.D. Mo. July 1, 2013) (refusing to conditionally certify class consisting of all employees with "consultant" title where the proposed class covered sixteen different IT job roles); *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 919 (S.D. Tex. 2010) (refusing to certify class of all "IT Services employees" where purported class included job roles across four different IT content areas that each required its own level of expertise).

---

plaintiff-employees were exempt under administrative exemption); *Relyea v. Carman, Callahan & Ingham, LLP*, No. 03-cv-5580, 2006 WL 2577829, at \*5 (E.D.N.Y. Sept. 6, 2006) (In sum, because Plaintiffs' duties are not directly related to the management or general business operations of the firm, Plaintiffs are not exempt employees as a matter of law"). The Plaintiffs do not cite any authority for the proposition that so-called "production" duties have any bearing on the computer professional exemption.

The Plaintiffs attempt to gloss over those differences by arguing that all the purported class members had the title of FDM Consultant.  (Pl. Br. at 3, 4, 14.)  But both the Department of Labor regulations and courts expressly reject the notion that employees across different IT fields are similarly situated simply because they have a common job title.  29 C.F.R. § 541.400 ("Because job titles vary widely and change quickly in the computer industry, job titles are not determinative of the applicability of [the computer employee] exemption"); *Clarke v. JP Morgan Chase Bank, N.A.*, No. 08-cv-2400, 2010 WL 1379778, at * 16 (S.D.N.Y. March 26, 2010) (under the computer professional exemption, it is "an employee's job *duties*, not his job *title*, [that] determine[s] whether the exemption applies").

Even among Consultants who trained and worked in the same stream or content area, their individual experiences differed greatly based on the client to which they were assigned.  While at a client site, Consultants daily tasks are directed by the client.  Thus, the primary duties of a project manager at one client will be different than that of a project manager at a different client.  For instance, one client may task an FDM project manager with managing the roll out of a new software tool, whereas another project manager at a different client may be responsible for analyzing resources and costs of a particular department.  (Gates Dec. at ¶ 9.)

These factual differences in the work performed by purported class members will necessarily result in the need for individualized proof as it relates to the applicability of any potential overtime exemption, and therefore the Plaintiffs' overtime claims are not susceptible to class-wide treatment.  Although the merits of any potential overtime exemption is not appropriate for determination on a motion for conditional certification, "the possible *existence* of exemptions may be relevant to an analysis of whether employees are similarly situated to one another." *Romero v. H.B. Auto. Grp., Inc.*, No. 11-cv-0386 (CM), 2012 WL 1514810, at *6 (S.D.N.Y. May

14

1, 2012) (emphasis in original).   For instance, in *Fraticelli*, the court denied conditional certification to a class of interns whom the plaintiffs claimed were misclassified as interns rather than employees where an individualized analysis of each purported intern's daily duties would be required to determine the appropriate classification.  2014 WL 1807105.  The court explained that the proposed class involved individuals who worked "one hundred different departments, and their experiences appear to vary greatly from one department to the next, in ways that are highly relevant to the DOL [exemption] factors."  *Id*. at *2.  Because of the widely varying duties each Consultant and purported class member performed on a daily basis, the applicability of exemptions would require individualized proof as to issues such as the job role held and the particular client to which each purported class member was assigned.  Thus, conditional certification of the purported class is inappropriate based on a lack of common duties.

### B.   No Common Policy Regarding Denial of Overtime Exists

The Plaintiffs attempt to distract from the lack of commonality among the purported class by claiming that they were all subjected to a "no overtime, period" policy.  (*See* SAC ¶¶ 2, 3, 12, 153.)  But the policy itself on which they rely plainly rebuts the Plaintiffs' mischaracterization. The policy expressly states that additional compensation *was* available for hours worked beyond the standard schedule on a case-by-case basis depending on FDM's contract with the client.  (Dkt. 81-1 at 10-11 (available where "it has been previously agreed in writing with your [Account] Manager or with the Client as part of your placement"); Dkt. 81-7 (available where "FDM is able to agree [to] an additional fee with the client").)  And FDM's policy operated pursuant to its terms in practice.  Certain clients paid FDM additional amounts for hours worked beyond the standard schedule, and Consultants assigned to those clients received additional compensation when working such hours.  (Dkt. 35-1 at ¶ 8.)  Indeed, former FDM Consultant Travis Scavone confirmed that he was paid an additional $11 per hour for hours worked beyond 45 per week.

(Dkt. 35-2 at ¶ 10.)  *See Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-cv-0840E (SR), 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (plaintiffs' contention that purported class members' "overtime work must be approved and, thus, [the employer] had a policy of not paying for overtime work" was "insufficient to suggest that all [purported class members in two separate jobs] were subject to a policy of requiring but not compensating employees for overtime work").

### C. The Plaintiffs Have Not Alleged Commonality as to FDM's Compensation Practices

#### 1. Consultants Were Paid More Than the Salary Basis Threshold

The Plaintiffs' argument that some class members may have been paid less than the salary basis test threshold during their first year as a Consultant (Pl. Br. at 15) is both factually wrong and also demonstrates that the purported class members are not similarly situated or subject to a common plan or scheme.  The Plaintiffs contend that Consultants who completed training prior to November 2014 were paid less than the salary basis threshold of $23,660 during only their first year as a Consultant.  (*Id.* at 5-6.)  On its face, the Plaintiffs' argument demonstrates that this purported failure was <u>not</u> common to the class, but instead applied to only a small subset of purported class members, and even as to those members, applied only as to their first year as a Consultant and not any further employment by FDM.  Indeed, the Plaintiffs themselves recognize that their argument applies for only "part of the Collective Period."  (*Id.* at 1, 6, 15.)

Further demonstrating the predominance of individualized issues, most – if not all – purported class members who completed training prior to November 2014 received a one-time signing bonus upon signing their employment agreements, and therefore their first year total salary earnings, based only on their base salary and signing bonus – and not including any additional compensation received for each day worked at client sites – was above the salary basis threshold.  Indeed, Named Plaintiff Park and Opt-In Plaintiff Suarez both completed their training prior to

November 2014 and received $750 signing bonuses.  (Dkts. 81-2 at 6, 81-3 at 1.)  Such bonuses

are considered part of an employee's salary for purposes of determining FLSA exemption status.

*Seltzer v. Dresder Kleiniwort Wasserstein, Inc.*, 365 F. Supp. 2d 288, 301 (S.D.N.Y. 2005).

### 2.  The Daily Bonus Does Not Violate the FLSA Regulations and Is Not Common Among the Purported Class

The fact that Consultants received additional daily compensation when working at a client

site does not support conditional certification.  The Plaintiffs contend those payments destroy

exemption status and therefore the class is similarly situated.  (Pl. Br. at 1, 15-16.)  However,

FLSA regulations expressly permit an employer to provide "additional compensation without

losing the exemption or violating the salary basis requirement."  29 C.F.R. § 541.604(a); *Rivera v.*

*Anjost Corp.*, 645 Fed. App'x 30, 31 (2d Cir. 2016) (employee exempt even though paid additional

compensation when working a sixth day per week).  Where "the employment arrangement also

includes a guarantee of at least the minimum weekly-required amount paid on a salary basis[,]"

the regulation permits a wide array of additional compensation possibilities above the guaranteed

weekly salary, allowing "[s]uch additional compensation [to] be paid on any basis (e.g., flat sum,

bonus payment, straight-time hourly amount, time and one-half or any other basis), and []

include[ing] paid time off."  29 C.F.R. § 541.604(a).  This broad protection to the exemption

applies where employees are guaranteed a weekly base salary and have the opportunity to earn

additional compensation for billing time to clients, as this arrangement is akin to a commission.

*Litz v. Saint Consulting Grp., Inc.*, No. 11-cv-10693, 2013 WL 5205868, at *1 (D. Mass. Sept. 13,

2013) (regulation satisfied where employees' guaranteed a weekly base salary "floor" even if they

billed no time to clients, but received significantly more pay for hours billed to clients); *see also*

*Chakir v. BA Research Int'l, LP*, No 10-cv-2850, 2011 WL 13248862, at *3 (S.D. Tex. July 15,

2011) (regulation satisfied where employees guaranteed a weekly base salary but received

significantly more pay for additional work completed, whether or not the employee took fewer or greater than forty hours to complete the work).  This paragraph plainly applies here, as the purported daily bonuses were paid to Consultants for days when they worked more than a certain number of hours at a client site.  (SAC ¶¶ 108-109.)  Consultants who were between assignments and not working at a client site did not receive the daily bonuses but nonetheless continued to receive their guaranteed base salary.  (Dkt. 81-1 at 17-18.)

The Plaintiffs incorrectly assert that the reasonable relationship test of 29 C.F.R. § 541.604(b) applies here.  As discussed above, 29 C.F.R. § 541.604(a) expressly preserves the exempt status of employees – like the FDM Consultants – whose "employment arrangement [] includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."  The paragraph upon which the Plaintiffs rely, in contrast, provides an avenue for employers to maintain the exempt status of employees, like nurses, employed in "industries that customarily pay their employees by the hour, shift, or day even though they meet the duties of the learned exemption[,]" if the employees' guaranteed amount bears a reasonable relationship to the amount actually earned.  *Chakir*, 2011 WL 13248862, at *3.  "The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis."  29 C.F.R. § 541.604(b); *see also Litz*, 2013 WL 5205868, at *2 (holding the reasonable relationship test did not apply where "plaintiffs' pay was not computed on the basis of hours worked, but rather of hours billed [to clients].  It was thus more like a commission than an hourly wage"); *Chakir*, 2011 WL 13248862, at *4 (holding the reasonable relationship test did not apply where "additional compensation is tied to distinct, clearly-enunciated accomplishments. Week-in and week-out, each earns a fixed salary, but by supplemental exertions, each earns supplemental compensation that may double or triple his salary").  The reasonable relationship test is thus not applicable for the Consultants who receive

their guaranteed weekly pay – which is not computed on an hourly, shift, or daily basis – with additional bonuses for work performed at a client site.

Moreover, the payment of additional compensation does not demonstrate that the purported class members are similarly situated because it again would necessarily require individualized proof.  Even if this Court were to conclude that 29 C.F.R. § 541.604(b)'s reasonable relationship test may apply to some or even all Consultants, determining whether the additional compensation paid to Consultants destroys exemption status necessarily requires an individualized assessment of each Consultant's experience, including for example, whether and for how long they were beached while waiting for another client, to assess whether the relationship between each individual Consultant's guaranteed and actual earnings was reasonable.

### 3. The Liquidated Damage Provision Does Not Provide a Basis for Certification

The Plaintiffs' argument related to the liquidated damage provision fares no better.  (Pl. Br. at 16-17.)  The Court has already ruled that the liquidated damage provision was not a deduction from wages and therefore cannot be considered a kickback such that it destroys exemption status under the FLSA (Dkt. 54 at 9), a decision that should be respected as law of the case, *Chen v. Street Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 294 (E.D.N.Y. 2005).  The Plaintiffs cannot attempt to revive the issue through the back door of an overtime claim.

And even if this contention were still somehow applicable to the remaining overtime claim, here again the liquidated damage provision merely serves to highlight the lack of common factual nexus among the purported class.  Only a small fraction of FDM's current and former Consultants prematurely terminated their employment agreements so as to even potentially be subject to the provision.  (Dkt. 35-1 at ¶ 11.)  Indeed, of the fourteen Named and Opt-In Plaintiffs, only five terminated their agreements early, and of those, only one paid some or all of the provision.  (Gates

Dec. at ¶¶ 14-17.)  These differences in experiences, even among the fourteen Named and Opt-In Plaintiffs, demonstrates the nearly 1,500 purported class members are not similarly situated.

The Plaintiffs' reliance on *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997), is misplaced.  In *Hoffman*, the defendant-employer admitted that not only did it have a policy that allowed it to deduct cash shortages and other losses from employees' wages, the employer in fact made such deductions.  The policy together with evidence that deductions were made created a substantial likelihood of improper deductions in violation of the salary basis test.  Here, there are no allegations whatsoever – in the complaint or from the five declarations the Plaintiffs submit in support of their motion – that the liquidated damage provision was in fact deducted from any purported class member's wages.  Indeed, in dismissing the Plaintiffs' prior claims, the Court expressly stated that, "[a]s an initial matter, the Court notes that the Plaintiff has not alleged that she was subjected to any deductions from her paychecks for the Termination Fee."  (Dkt. 54 at 9.)

## II.   IF THE COURT CERTIFIES A CLASS, NOTICE SHOULD BE ISSUED THROUGH THE US MAIL ONLY FOR A THREE-YEAR CLASS PERIOD

As described above, there are significant differences among the purported class based on the IT content area, or stream, they trained and worked in, and the client to which they were assigned.  Thus, should a class be conditionally certified, it should be limited to only the training streams and clients to which the Named and Opt-In Plaintiffs were assigned, as they are not representative of other purported members who worked in different fields and for different clients.

### A.   Notice Should Be Limited To a Three-Year Period

Notice should be limited to a three-year period, which is consistent with the maximum FLSA statute of limitations.  29 U.S.C. § 255(a).  The Plaintiffs argue a six-year notice period should be used because the state law overtime claims are subject to a six-year statute of limitations (P. Br. at 24-25), but courts are clear that it will "be confusing to employees who are ineligible for

the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims."
*Garcia*, 102 F. Supp. 3d at 551; *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564
(S.D.N.Y. 2013).   Neither will judicial economy – a primary purpose of the conditional
certification process – be served by issuing notice to those with time-barred claims, which would
invite motions to dismiss the facially defective claims.   *Reyes*, 2016 WL 796859, at *4 n. 6.
Further, courts routinely deny requests for six-year notice where the plaintiff has not moved for
certification of the state law claims, as the Plaintiffs have not done here.   *See id.*; *Hamadou v. Hess
Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013); *Alvarez v. IBM Rest., Inc.*, 839 F. Supp. 2d 580,
587 (E.D.N.Y. 2012).[2]

Nor does the Plaintiffs' conclusory allegation that employee rights notices were not posted
(Pl. Br. at 24) warrant equitable tolling.   That allegation is insufficient on its own.   *Ramos v. Platt*,
No. 13-cv-8957-GHW, 2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014) (rejecting request where
there was no allegation the plaintiff was not otherwise aware of his rights); *Summa v. Hofstra
Univ.*, No. CV 07-3307 (DRH) (ARL), 2008 WL 3852160, at *6 (E.D.N.Y. Aug. 14, 2008)
(rejecting six-year notice "[g]iven th[e] factual dispute [as to whether employees were aware of
their rights], and in consideration of the burden to the defendant in identifying thousands of
putative class members").   Nowhere in the complaint or the declarations submitted in support of
the motion do the Plaintiffs allege they were unaware of their rights – in fact, just the opposite:

---

[2] The Plaintiffs' authority is inapposite.   (*See* Pl. Br. at 24-25.)   In *Martinez v. Midtown Cleaner, Inc.*, "the evidence
proffered…suggests that potential similarly situated employees may have timely claims under the NYLL," No. 13-
cv-2644 (LGS), 2013 WL 5807178, at *3 (S.D.N.Y. Oct. 29, 2013), but the Plaintiffs made no such showing under
the NYLL.   In *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012), the plaintiff clearly delineated
between the FLSA claims and the NYLL claims in the proposed notice – something the Plaintiffs do not do here,
which underscores the rationale for courts that reject *Winfield*: issuing notice to ineligible individuals would cause
confusion.   *Garcia*, 102 F. Supp. 3d at 551; *Trinidad*, 962 F. Supp. 2d at 564.   Notably, courts since 2012 have noted
the "more recent trend . . . to approve three-year notice periods" to avoid confusion.   *Sanchez v. El Rancho Sports Bar
Corp.*, No. 13-cv-5119 (RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (collecting cases).   Lastly, *Baba v.
Grant Central Partnership, Inc.*, No. 99-cv-5818 (TPG), 2000 WL 1808971 (S.D.N.Y. Dec. 8, 2000), did not even
address the issue of conditional notice.

they admit they complained about their alleged right to overtime compensation.  (SAC ¶ 102; Dkt. 81-13 at ¶¶ 34-35; Dkt. 81-8; Dkt. 81-15 at ¶ 44.)  The credible evidence indicates that notices were posted, and have been posted, in the employee break room located on the 31st floor of FDM's Wall Street office since at least 2011.  (Dkt. 35-1 at ¶ 2.)

### B.  Notice Should Be Issued Once By First Class Mail Only

"First Class Mail is sufficient to provide potential class members with notice . . . ." *Gonzalez v. Scalinatella, Inc.*, No. 13-cv-3629 (PKC), 2013 WL 6171311, at *5 (S.D.N.Y. Nov. 25, 2013); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-cv-4825 (PKC), 2011 WL 2207586, at *7 (S.D.N.Y. June 2, 2011).  It is premature to order notice through other methods until the Plaintiffs establish that specific mailings were returned as undeliverable.  Posting notice at FDM's office would not reach the vast majority of purported class members as most are former employees and those who are currently Consultants work out of client, not FDM, offices.  *See Michael v. Bloomberg LP*, No. 14-cv-2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. April 17, 2015).  Courts routinely refuse to order email notice.[3]  *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 338 (W.D.N.Y. 2008).  The proposed informational text message simply requests that potential class members call the Plaintiffs' counsel (Pl. Br. at 23), thereby depriving the Court of its necessary oversight function.  *See Trinidad*, 962 F. Supp. 2d at 564-65 (rejecting similar request).  The Plaintiffs' baseless speculation that cell phones "are by far the most accessible communication tool for many workers" and that potential members are "more likely to check a text" (Pl. Br. at 21-22),

---

[3] The Plaintiffs cite only one case where notice through email was ordered.  The remainder of the cases in the long string cite ordered discovery of email addresses, but none discussed nor ordered notice by email.  (Pl. Br. at 21; compare *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 LTS, 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013), with *Guaman v. 5 M Corp.*, No. 13 Civ. 3820 LGS, 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013), and *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265 (S.D.N.Y. 2012).)

does not warrant such notice. [4]  *McCoy v. RP, Inc.*, No. 14-cv-3171-PMD, 2015 WL 6157306, at

*5 (D.S.C. Oct. 19, 2015) (denying request).  Text messaging is intrusive, potentially violative of

the law (*see, e.g.*, TCPA, 47 U.S.C. § 227; CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.*), and can

subject the recipient to unwanted messaging charges.

Lastly, a reminder notice "could be interpreted as encouragement by the court to join the

lawsuit," and therefore should not be authorized.  *Guzelgurgenli v. Prime Time Specials Inc.*, 883

F. Supp. 2d 340, 357 (E.D.N.Y. 2012); *see also Smallwood v. Ill. Bell Tele. Co.*, 710 F. Supp. 2d

746, 753-54 (N.D. Ill. 2010).[5]

### C.   Notice Must Be Accurate and Limited to a 60-Day Opt-In Period

Notice must be accurate and informative so potential opt-in class members can "make a

reasoned decision about whether to opt-in."  *Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964 (PAE),

2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014).  The proposed notice (Dkt. No. 81-11), fails

to meet this standard in several ways.  It fails to:

- Accurately describe the action (*i.e.* repeatedly refers to multiple "claims" and "lawsuits," rather than one pending action; fails to note FDM's exemption defense);

- Advise recipients that they may be required to "appear for a deposition and/or testify in court;"

- Provide FDM counsel's contact information;

- Explain in lay language (rather than legalese) that the Plaintiffs' counsel will take a portion of any settlement or money judgment the class receives;

- Improperly advises recipients that they need not retain their own lawyer because the Plaintiffs' counsel will represent them, rather than indicating in a neutral way that recipients may consult or retain any attorney;

---

[4] *McKinzie v. Westlake Hardware, Inc.* did not consider, let alone order, text message notice.  No. 09-cv-796-W-FJG, 2010 WL 2426310 (W.D. Mo. June 11, 2010).  In *In re AT&T Mobility Wireless Data Services Sales Litigation*, the court required AT&T to text its *current* wireless customers information about a Rule 23 settlement regarding charges on their AT&T wireless account.  270 F.R.D. 330, 351 (N.D. Ill. 2010).
[5] The Plaintiffs' cited authority is inapposite.  (Pl. Br. at 23.)  In *Puglisi v. TD Bank, N.A.*, both parties had agreed to the use of reminder notices. 998 F. Supp. 2d 95, 101 (E.D.N.Y. 2014).

- Directs opt-in forms to be sent to an unidentified claims administrator, not the clerk of court.

Inclusion of such information is routine, so the proposed notice should be corrected. *See Guo*, 2014 WL 5314822, at *4-5.

In addition, courts "routinely restrict the opt-in period to sixty days," so the proposed notice should provide for a 60, rather than a 90, day opt-in period. *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015); *see also Guzelgurgenli*, 883 F. Supp. 2d at 357.

### D.   Notice Discovery Should be Limited to Names and Addresses

The Plaintiffs' request for discovery beyond names and addresses is an impermissible "fishing expedition." *See Guzelgurgenli*, 883 F. Supp. 2d at 356.  Courts are "reluctant to authorize the disclosure of private information, such as social security numbers, without good cause." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-cv-4623, 2014 WL 1338315, at *7 (E.D.N.Y. April 2, 2014) (declining to order production of social security numbers where plaintiffs failed to demonstrate that names and contact information are insufficient to effect notice).  They claim that Social Security numbers are needed to "perform a skip trace for all notices returned as undeliverable."  (Pl. Br. at 24 n.7.)  However, the Plaintiffs have not attempted to contact class members by mail to determine if they are undeliverable, so that request is premature. *Garcia*, 102 F. Supp. 3d at 551.  Privacy and security concerns also warrant denial of the Plaintiffs' request. *Michael*, 2015 WL 1810157, at *4; *Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 179 (S.D.N.Y. 2011); *Sharma*, 52 F. Supp. 3d at 465.  Further, detailed information about each potential member's employment dates, title, compensation rate, and number of hours worked each week is wholly irrelevant to make contact with purported class members. *Iriarte v. Café 71, Inc.*, No. 15-cv-3217 (CM), 2015 WL 8900875, at *6 (S.D.N.Y. Dec. 11, 2015) (finding "no reason why [plaintiff] requires" employee titles, compensation rates, hours worked per week, period of employment,

Social Security numbers, email addresses, and phone numbers to "send § 216(b) notice").

Moreover, the Plaintiffs' demand for nine different categories of information on thousands of

potential class members, many of whom do not even have claims under federal law, is unduly

burdensome.  *Summa*, 2008 WL 3852160, at *7 (finding "no justification" for requested email

addresses, Social Security numbers, and dates of employment).

Dated:  November 16, 2018                                   Respectfully Submitted,

                                                            **FDM Group, Inc.**

                                                            By: *Stephen L. Ascher*
                                                            One of its attorneys

                                                            Stephen L. Ascher
                                                            Christine M. Bowman
                                                            JENNER & BLOCK LLP
                                                            919 3rd Ave.
                                                            New York, NY 10022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant's Memorandum in Opposition to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery was served on the 16th day of November, 2018 upon the following via operation of the ECF system:

Christopher Q. Davis
Rachel Haskell
THE LAW OFFICE OF CHRISTOPHER Q. DAVIS

*Attorneys for Plaintiff Grace Park*

*Christine M. Bowman*

*Counsel for Defendant FDM Group, Inc.*

2719828.2