UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACE PARK, ORONDE I. BELL, LOUIS CAPONI, DANIEL FERGUSON, VICTOR QUIROZ, SIDRA JAVED, PABLO ALVAREZ, CHRISTOPHER HERLIHY, PING LIN, RAMIN SHIRVANI, ROBERT SUAREZ, ALEXANDER BORGES, ADAM AUSAW, STEVE COUPET, AND DAVID STRIMAS, individually and on behalf of all others similarly situated, | Civil Action No. 1:16-cv-01520-LTS-SN<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMAND** |
| Plaintiffs, | |
| vs. | |
| FDM GROUP, INC., | |
| Defendant. | |

Plaintiff Grace Park (the "Named Plaintiff") and Lead Plaintiffs Oronde I. Bell, Louis

Caponi, Daniel Ferguson, Victor Quiroz, Sidra Javed, Pablo Alvarez, Christopher Herlihy, Ping

Lin, Ramin Shirvani, Robert Suarez, Alexander Borges, Adam Ausaw, Steve Coupet, and David

Strimas (collectively, the "Lead Plaintiffs" and collectively with the Named Plaintiff Park,

"Plaintiffs") individually and on behalf of all others similarly situated, by their attorneys, The

Law Office of Christopher Q. Davis, allege, upon personal knowledge and upon information and

belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1.      This is a collective and class action brought by Plaintiffs, on their own behalf and

on behalf of the Proposed Collectives and Classes identified below.[1]  Plaintiffs and the putative

---

[1]      In order to preserve the right to appeal the dismissal of any or all of Plaintiffs claims, and to avoid any potential arguments at a later date that Plaintiffs waived any such claims, Plaintiffs' Second Amended Complaint ("SAC") includes (i) all minimum wage claims, both under the FLSA and NYLL (Counts 3, 4, 5 and 6), which were dismissed by the Court without leave to amend; (ii) the state law claims under the NYLL for unlawful deductions

collective and class members were or are employed by Defendant FDM Group, Inc. ("FDM" or "Defendant") in the United States (collective claims) and New York (class claims) during the relevant Class and Collective Periods as either post-hire "Trainees" and/or "FDM Consultants" providing professional IT and business services to FDM's institutional clients.  FDM Trainees were unlawfully denied the minimum wage for all hours worked and FDM Consultants were unlawfully denied minimum wage, gap time and overtime compensation, subjected to unlawful deductions and/or "kickbacks" of their earned wages.  Both the Trainees and FDM Consultants were deprived of the benefit of lawful recordkeeping practices in violation of federal and/or state wage and hour laws.  All of these violations were pursuant to uniform policies and practices, including a uniform Training Agreement (the "Training Agreement"), Contract of Employment ("Employment Agreement") and FDM US Staff Handbook ("FDM Handbook") and extended to all members of the Collectives and Classes.  All of these employees are similarly situated under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

     2.     The Collectives are made of all persons who are or have been employed by Defendant as post-hire Trainees and/or FDM Consultants in the United States within the period of six years (equitably tolled from three years) prior to this action's filing date through the date

---

(Count 7), failure to pay gap time wages (Count 8), failure to provide wage notices (Count 9), and failure to provide accurate wage statements (Count 10), which the Court declined to exercise supplemental jurisdiction over pursuant to 28 U.S.C. § 1367(c) in the March 9, 2017 Order but stated in the August 28, 2018 Order that the "dismissal with prejudice of Plaintiff's other claims stands"; and (iii) the declaratory judgement claim (Count 11), which the Court dismissed in the March 9, 2017 Order to the extent it was predicated on Plaintiff's dismissed federal claims, but now may move forward to the extent it is predicated on the federal overtime claims revived in the August 28, 2018 Order.  Since Plaintiffs are including all such claims in the SAC to preserve the right to appeal, the SAC also includes all supporting allegations that relate to such claims.  Additionally, in a cover letter, submitted as an attachment to this SAC, Plaintiffs seek clarity from the Court as to which claims specifically the Court is referring to when it says the "dismissal with prejudice of Plaintiff's other claims stands…".  Plaintiffs' state law claims (besides the state law minimum wage claims and overtime claims) were not dismissed with prejudice in the March 9, 2017 Order; rather, the Court declined supplemental jurisdiction over "any remaining state claims" and the declaratory judgment claim was only dismissed to the extent it was predicated on federal claims, which the August 28, 2018 Order revived as to the federal overtime claims.

of the final disposition of this action (the "Collective Period") and who were subject to

Defendant's unlawful and uniform practice of: (i) misclassifying the Trainee Collective as

exempt from the FLSA's minimum wage requirements and failing to pay those wages, and (ii)

failing to pay the FDM Consultant Collective a predetermined and fixed salary, free and clear,

and irrespective of the quality and quantity of work, of at least $455 per week or at a rate of not

less than $27.63 per hour, and failing to pay the minimum wage for each hour worked and

overtime premiums for all hours worked over 40 pursuant to a "no overtime, period" policy

during the Collective Period.

       3.     The Classes are made up of all persons who are or have been employed by

Defendant's as Trainees and/or FDM Consultants having agreed to NY choice of law and forum

selection clauses within the period of six years prior to the filing date of this Complaint ("the

Class Period") and who were subject to Defendant's unlawful and uniform practices of: (i)

misclassifying the Trainee Class as nonemployees and thus exempt from the NYLL's minimum

wage requirements and failing to pay those wages; (ii) failing to pay the FDM Consultant Class a

predetermined and fixed salary, free and clear, and irrespective of the quality and quantity of

work, of at least $675 per week (increased to $825 per week on and after December 31, 2016,

increased to $975 per week on and after December 31, 2017) or not less than $27.63 per hour,

(iii) failing to pay FSM Consultant Class minimum wage and gap time compensation for each

hour worked and overtime premiums for all hours worked over 40  pursuant to a "no overtime,

period" policy during the Class Period; (iv) subjecting the FDM Consultant Class to unlawful

deductions from earned wages, whether as a deduction by "separate transaction" or by direct

deduction from earned compensation; (v) failing to provide required wage notices and/or

accurate wage statements as required under NYLL, and (vi) failing to maintain accurate and lawful timekeeping records for both the Trainee Class and FDM Consultant Class.

4.     Plaintiffs seek relief for the Classes pursuant to the applicable provisions of the New York Labor Law ("NYLL") and Collectives under the Fair Labor Standards Act ("FLSA"), to remedy the Defendant's failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief and declaratory relief.

## PARTIES

5.     Individual and representative Plaintiff Grace Park resides in New Jersey.  She was previously employed by Defendant between August 2014 and October 2015.  Plaintiff Park was hired as a Trainee on or about August 2014 and worked as a Trainee through on or about October 2014.  Park was engaged by FDM for her training pursuant to a Training Agreement signed on or about her first day of employment.  After completing training, Plaintiff Park was placed with one of FDM's institutional clients and was than engaged with FDM pursuant to an Employment Agreement signed by Plaintiff and Defendant.  In the Employment Agreement, the parties agreed to the jurisdiction of the New York courts for determining any controversy relating to the Employment Agreements, and that substantive New York law would govern.

6.     Defendant FDM Group, Inc. is a Delaware corporation registered to conduct business in New York, and maintaining corporate headquarters at 14 Wall Street, New York, NY, 10005.  Defendant maintains US-based offices in New York, New Jersey, Connecticut, Tennessee, Texas, and Illinois.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

8.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.      Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391 because wage violations giving rise to Plaintiffs' claims occurred in this District and because the Plaintiffs and Defendant consented to the forum in writing.

11.      Defendant is subject to personal jurisdiction in New York.

**COLLECTIVE ACTION ALLEGATIONS**

12.      Plaintiffs bring FSLA claims on behalf of themselves and other employees similarly situated as authorized under 29 U.S.C. § 216(b).  The employees similarly situated are:

**Collective Classes**:   A1.   <u>Trainee Minimum Wage Class</u>: All persons who were employed by Defendant at any time from February 26, 2010 through September 2015 and who participated in FDM's US-based training program for FDM Consultants known as the FDM Training Academy and who were subject to FDM's uniform policy of denying federal minimum wage compensation to Trainees for the entire duration of the training period.

B1.   <u>Consultant Overtime Class</u>: All persons who were employed by Defendant at any time from February 26, 2010 through the date this Court grants preliminary certification as "FDM Consultants" and who signed an Employment Contract with a template Termination Fee triggered in the event of early resignation, were

paid a conditional bonus in the form of basic and daily bonus pay and not a predetermined and guaranteed salary of at least $455 per week or an hourly rate of not less than $27.63 per hour for each hour worked, and who were denied lawful overtime compensation pursuant to Defendant's uniform "no overtime, period" policies.

B2. <u>Consultant Minimum Wage Class:</u> All persons who were employed by Defendant at any time from February 26, 2010 through the date this Court grants preliminary certification as "FDM Consultants", who signed an Employment Contract with a template Termination Fee in the event of early resignation, and who were not paid lawful federal minimum wages during at least one week in their employment after they resigned their employment with FDM and Defendant enforced the Termination Fee set forth in the Training Agreement, Employment Contract and FDM Handbook.

13.     Defendant employed Plaintiff, the Lead Plaintiffs and the Collectives during the Collective Period.

14.     Named Plaintiff Park and the Lead Plaintiffs were required to abide by the terms of the FDM Handbook.  The FDM Handbook, by its own terms, applies to all FDM Trainees and FDM Consultants.

15.     Further, Named Plaintiff Park and the Lead Plaintiffs were required to agree to the terms of both a Training Agreement and an Employment Agreement as a condition of their employment with FDM.

16.     All Trainees are subject to the same form Training Agreements and all FDM Consultants are subject to the same form Employment Agreements.

17.     According to the FDM Handbook, an FDM Consultant is defined as "An Employee who has been through the FDM Academy training program and has been engaged at a client site to work on behalf of FDM Group."

18.     According to the FDM Handbook, a Trainee is defined as "An individual who is engaged by FDM on a FDM Training Agreement."

6

**Minimum Wage Claims[2]**

19.     On information and belief, Defendant has employed more than 300 Trainees and/or FDM Consultants during the Collective Period through its US-based office and client sites.

20.     FDM's main business activities involve recruiting, training and placing their own FDM Consultants with institutional clients (many in the financial and pharmaceutical industries) across a range of technical and business disciplines including Development, Testing, Project Management Office, Data and Operational Analysis, Business Analysis, Business Intelligence, and Production Support called "streams".

21.     Named Plaintiff Park applied to FDM through a third-party website that contained a job placement ad regarding the FDM Training and Consultant position in one singular posting.

22.     Named Plaintiff Park was then selected and interviewed over the phone, during which an FDM representative asked her questions about her resume and discussed her potential career with FDM.

23.     After a successful telephone interview, Named Plaintiff Park was invited for an in-person assessment at FDM's offices in New York City.

24.     During the in-person assessment, Named Plaintiff Park participated in a group interview session.  She was asked, along with interviewees, to complete different tasks and exercises to assess whether she was suitable for a position with FDM.

25.     As is customary before hiring an employee, FDM required that Named Plaintiff Park sign and date a form authorizing FDM to conduct a background check prior to being hired.

---

[2]     *See* FN 1, supra.

26.     After she had completed each of these steps, FDM informed Named Plaintiff Park that she had been selected for a position and hired by FDM.  Specifically, she received an email from FDM's Head of Recruitment "Welcoming [her] to FDM."  The email told Named Plaintiff Park when and where to show up for her first day of work.

27.     As a condition of accepting the position, Named Plaintiff Park was required to attend an eight (8) to sixteen (16) week training period before being placed with any of FDM's institutional clients.

28.     Upon information and belief, all Trainees went through the same or similar hiring process.

29.     When Plaintiffs arrived on their first day, they then received a contract that outlined the terms and conditions of the training (the "Training Agreement").

30.     The Training Agreement stated that after two weeks they were obligated to complete the training, seek placement at an FDM client, and continue working for FDM for a period of 2 years or face financial penalties.  According to the Training Agreement, the financial penalty of $30,000 was assessed whether a Trainee left FDM's employ in the 3rd week of training or if they left FDM's employ 9 months into their two-year contract as an FDM Consultant.

31.     Named Plaintiff Park was required to return with a signed copy of the Training Agreement the following day to continue the training.

32.     FDM's Trainees could not choose to be placed with FDM's clients without completing their training, regardless of whether they were already proficient in the given subject matter through prior courses and/or undergraduate degrees in relevant areas; however, FDM could choose to place FDM Trainees prior to their completion of the training.

33.     Training was conducted for eight (8) hours, Monday through Friday, with schedules of either 8:30am to 4:30 pm or 9:00am to 5:00pm and participation in the training was a pre-condition for placement on a client site.

34.     According to FDM's Code of Conduct, Schedule 1 to the Training Agreement, Plaintiffs and all other FDM Trainees are required to, among other things:

    i.    Abide by FDM's rules and regulations;
    ii.    Dress in accordance with FDM's dress code;
    iii.    Check, read and act upon email regularly;
    iv.    Attend the training center for full-time training;
    v.    Attend training center between 9:00am and 5:30pm (Monday-Friday);
    vi.    Maintain an updated resume;
    vii.    Notify FDM of any medications taken; and
    viii.    Seek medical treatment when necessary and obtain medical certifications if absent for longer than 7 consecutive days.

35.     As a Trainee, Plaintiffs learned about FDM's culture, policies, procedures, practices and were required to pass examinations, attend scheduled classes and participate in training events.

36.     Immediately upon hiring the Trainees, FDM begins marketing Trainee's resumes to FDM's clients, which is why they were required to maintain updated resumes.  For example, upon information and belief, FDM showed Named Plaintiff Park's resume to Bank of America, an FDM client, before she formally finished her training.

37.     In fact, Named Plaintiff Park interviewed with Bank of America before completing the training period.

38.     Additionally, Named Plaintiff Park is aware, from direct conversations with another FDM Consultant who went through the Development stream and was placed with UBS, that FDM did not even require him to complete his training because FDM had showed UBS his resume and UBS selected him for placement.

39.     Despite not completing his training, this FDM Consultant has informed Named Plaintiff Park that he is subject to the same contract provisions that she was.  Specifically, he is subject to the same $30,000 Termination Fee.

40.     Named Plaintiff Park personally witnessed other individuals placed at a client site before their training ended.  According to FDM's website, the Training Period "consists of foundation training followed by a specialized training stream, where trainees will learn the skills required to become an FDM Consultant."

41.     Despite its name, "FDM Academy" is not an academic or vocational school. Instead, the post-employment training functions as a marketing tool for FDM, in which Trainees are instructed in how to become FDM-approved consultants.

42.     FDM conducts the training in order to market Trainees to their clients, and Trainees are trained to perform their jobs according to FDM's specifications.

43.     The training lasts between two and six months depending on the stream.

44.     The specific and singular purpose of the training, regardless of stream placement, is to train Plaintiffs on how to perform the functions of their jobs for Defendant's institutional clients and ensure successful placements, which is necessary for Defendant to generate billable revenue.

45.     The costs associated with the training are a business expense that Defendant incurs in order to provide and maintain a "pool" of Consultants for FDM's clients to choose from and to ensure that FDM's clients are satisfied with the services provided such that they continue to pay to utilize FDM's consultancy services.

46.     Named Plaintiff Park's participation in FDM's training program did not provide her with any significant benefits that are recognized within the broader marketplace beyond what any other normal job experience might provide.

47.     Named Plaintiff Park's current employer does not recognize the training she received at FDM as distinguishing her in any meaningful way from other candidates.

48.     As such, Plaintiffs were not the primary beneficiary of the training.

49.     Upon information and belief, FDM primarily benefits from the training because the training program allows FDM to obtain and seek more lucrative placements of its FDM Consultants.

50.     Upon information and belief, FDM's training program is a crucial element of its business model because it allows FDM to market its consultants at a higher rate based on "training."

51.     Prior to approximately September 2015, FDM did not pay Trainees any wages for the hours worked during the training period.  Upon information and belief, FDM began paying Trainees the minimum wage for all hours worked during the training period.

52.     Upon information and belief, prior to September 2015, FDM's US Staff Handbook and promotional materials stated that Trainees were unpaid during their training period.

53.     FDM was Plaintiffs "employer", as defined by the FLSA, during the training period because, as set herein, the economic reality was that FDM possessed the power to control the Plaintiffs during the training period.

54.     Specifically, FDM had the power to hire and fire Trainees at any time.  A Trainee could not simply enroll in "FDM Academy."   Instead, they were vetted by a typical interview process, similar to any other comparable employment position.

55.     Similarly, FDM could discontinue a Trainee's training at any time if the Trainee's performance was unsatisfactory.

56.     However, after a two-week probationary period, Trainees could not simply discontinue training without incurring significant monetary penalties.

57.     Trainees were contractually obligated to complete their training and accept a two-year placement with an FDM client upon completion of their training or upon FDM's request.

58.     FDM supervised and controlled the Trainees' work schedules as well as the conditions of their employment, including determining the payment Trainees received (i.e., no payment at all).

59.     Upon information and belief, FDM maintained records of all Trainees, including attendance and performance.

60.     Plaintiffs also used FDM's premises and equipment and during the training period worked exclusively or predominately for FDM because the training was Monday through Friday from approximately 9am to 5 pm, leaving little time or possibility for employment elsewhere.

61.     Indeed, Plaintiffs regarded the commencement of their training as the beginning of their employment with FDM, and they signed agreements committing them to continued employment with FDM after their training ended.

62.     Named Plaintiff, the Lead Plaintiffs, and the putative Trainee Collective and Trainee Class Members trained at Defendant's Wall Street office in New York City.

63.     Named Plaintiff Park trained for two months and did not receive any compensation for her training.

64.     Upon information and belief, no Trainees were paid prior to September 2015, all of whom were recruited for placement as FDM Consultants at the conclusion of their training.

65.     During Named Plaintiff Park's training period she participated in classroom and practical skill development training for the purpose of placement with an FDM client, as did all of the other members of her stream who trained at the same time.

66.     Upon information and belief, putative Trainee Collective and Class Members all participated in similar practical skill development and training, regardless of stream.

67.     Named Plaintiff received training for approximately eight hours per day, Monday through Friday, while she was training as did all other members of her stream who trained with her, sometimes longer.

68.     Upon information and belief, all other Trainees, regardless of stream, received training for approximately eight hours per day, Monday through Friday.

69.     Named Plaintiff and the putative members of the Trainee Collective were improperly classified as non-employees during their training period and not paid any wages.

70.     Plaintiffs were "employees" during their training period and not "trainees" as those terms are defined by the FLSA and DOL regulations.

71.     Plaintiff and the Trainee Minimum Wage Collective were deprived of lawful minimum wage compensation during the training period.

**Overtime Violations**

72.     Only after completing the training period, and being placed at client sites for their two-year commitment, does an FDM Consultant begin to receive compensation in the form of conditional basic pay and the daily bonus pay.

73.     Following training, Plaintiff Park was placed as an FDM Consultant at an FDM Client in or around Delaware for her two-year placement term.

74.     Following training, Lead Plaintiff Quiroz was placed as an FDM Consultant an FDM Client in or around New York for his two-year placement term.

75.     Following training, Lead Plaintiff Shirvani was placed as an FDM Consultant an FDM Client in or around New York for his two-year placement term.

76.     Following training, Lead Plaintiff Bell was placed as an FDM Consultant at an FDM Client in or around New Jersey for his two-year placement term.

77.     Following training, Lead Plaintiff Caponi was placed as an FDM Consultant at an FDM Client in or around Florida for his two-year placement term.

78.     Following training, Lead Plaintiff Javed was placed as an FDM Consultant at an FDM Client for her two-year placement term.

79.     Following training, Lead Plaintiff Alvarez was placed as an FDM Consultant at an FDM Client in or around Florida for his two-year placement term.

80.     Following training, Lead Plaintiff Herlihy was placed as an FDM Consultant at an FDM Client in or around Washington D.C. for his two-year placement term.

81.     Following training, Lead Plaintiff Lin was placed as an FDM Consultant at an FDM Client in or around New York for his two-year placement term.

82.     Following training, Lead Plaintiff Suarez was placed as an FDM Consultant at an FDM Client in or around New York for his two-year placement term.

14

83.     Following training, Lead Plaintiff Borges was placed as an FDM Consultant at an FDM Client in or around New York for his two-year placement term.

84.     Following training, Lead Plaintiff Ausaw was placed as an FDM Consultant at an FDM Client in or around New York for his two-year placement term.

85.     Following training, Lead Plaintiff Coupet was placed as an FDM Consultant at an FDM Client in or around New York for his two-year placement term.

86.     Following training, Lead Plaintiff Strimas was placed as an FDM Consultant at an FDM Client in or around New York for his two-year placement term.

87.     After completing the training period, all FDM Consultants were and are classified as W2 employees of FDM.

88.     According to the FDM Handbook, standard Employment Agreement, and Mountie Schedule, all FDM Consultants were compensated for normal hours of work of 40 hours per week.

89.     More specifically, according to standard placement letters and the FDM Handbook, "unless FDM is able to agree [to] [SIC] an additional fee with the client [FDM Consultants] will not receive any additional payments for hours worked beyond the standard hours on any day. . . this includes occasions where the client specifically requests that you remain at work later to carry out further work." [emphasis added].

90.     Despite this, Plaintiffs and the Collective and Class Members regularly worked over 40 hours per week.

91.     Named Plaintiff Park's regular schedule was Monday through Friday, 9am to 6pm with a 1-hour unpaid lunch break, totaling 40 hours a week.  Named Plaintiff regularly worked (albeit an occasional sick day and/or vacation day) her regular 5 day a week schedule.

92.     Named Plaintiff Park's regular schedule was later confirmed, after she had been working at her placement site for nearly year, in a "Mountie Schedule" which was emailed to her by Shaundrea Snell, FDM's Financial Account Manager on or about October 1, 2015.  The Mountie Schedule was sent "[a]s part of the ongoing support FDM provides…new and existing consultants."

93.     The Mountie Schedule was "a reference document" with details about Named Plaintiff Park's placement, including "minimum hours per day [and] days per week."

94.     According to the Mountie Schedule Named Plaintiff Park's standard hours were: 8 hours per day and 5 days per week – which Named Plaintiff worked at a minimum (albeit a sick day or vacation day here or there).

95.     The Mountie Schedule further stated, "[u]nless FDM is able to agree [to] an additional fee with the client you will not receive any additional payments for hours worked beyond the standard hours on any day. This includes occasions where the client specifically requests that you remain at work later to carry out further work."

96.     The same policy outlined in the Mountie Schedule is outlined in the FDM Handbook.

97.     Both policies commit FDM to a refusal to pay overtime for hours worked over 40.

98.     The email with the Mountie Schedule attached was sent to Named Plaintiff Park nearly 8 months after she had complained to her Account Manager, Pippa Susskind about working overtime beginning on or about December 2014 – only two months into her placement, which began on or about October 20, 2014.

16

99.     Specifically, on or about December 2014 Named Plaintiff Park began working approximately 10 to 20 hours of overtime a week.  This continued for most weeks until she left FDM's employ on or around October 2015.

100.     During the above-mentioned time period, Named Plaintiff Park was regularly working through her 1-hour unpaid lunch break resulting in approximately 3-5 hours of overtime worked per week.

101.     Additionally, during the above-mentioned time period, Named Plaintiff Park frequently arrived at work at approximately 8:30 a.m. five days a week. Named Plaintiff begin working immediately upon her arrival at work.

102.     Moreover, during the above-mentioned time period, Named Plaintiff Park left work at approximately 6:45-7:15pm Monday through Thursday and at approximately 5pm on Fridays.

103.     Arriving at work early and leaving work late resulted in Named Plaintiff Park working an additional 5-7 hours of overtime each week during the above-mentioned time period.

104.     Finally, during the above-mentioned time period, Named Plaintiff Park also worked from home.  Occasionally she would have to work when she got home during the workweek and quite frequently she was also working from home on weekends.  This resulted in approximately 2 to 10 hours of overtime most weeks during the above-mentioned time period.

105.     In total, Named Plaintiff Park worked approximately 10-20 overtime hours per week from in or around December 2014 until the termination of her employment with FDM in or around October 2015.

106.     Named Plaintiff Park explicitly complained about working these overtime hours without pay in an email to her account manager Pippa Susskind in which she states that she

arrives at work "by 8:30am" and gets out "around 6:45-7:15pm" four out of five days a week. Named Plaintiff further stated that she "quite frequently" had to work on weekends and that she was not "able to even have a one hour lunch break (which [she was] not even paid for).

107.    While at work, from 8:30 a.m. until 6:45-7:15 p.m. Monday through Thursday and from 8:30 a.m. until 5 p.m. on Fridays, Named Plaintiff Park was working the entire time, except for the rare occasions when she could take a lunch break (albeit almost never the full one-hour break allotted).

108.    Nonetheless, Named Plaintiff Park was informed that unless her placement manager approved overtime pay, she was not eligible for overtime pay.

109.    Upon information and belief, all other Plaintiffs and Collective and Class Members were similarly required to work beyond their standard 40-hour workweek without any overtime compensation.

**FDM Consultants Are Not Paid A Salary Free And Clear**

110.    According to the Handbook and standard Employment Agreement, all FDM Consultants were paid according to a hybrid compensation structure which included conditional bonus compensation known as "basic pay" and a daily pay.

111.    Plaintiffs were paid a daily "bonus" if they worked a full 8-hour day and half that amount if they worked at least 4 hours but less than the full 8-hours.  If Plaintiffs worked less than 4-hours, took vacation day, or a sick day, they would not be paid their daily bonus at all.

112.    According to Schedule 1 to the Employment Agreement, during their first year of employment Plaintiffs were paid a conditional "basic pay" of $23,000 per annum plus a daily bonus, which was $88.00 per full-day if they worked "8 hours or more" and $44.00 per half-day if they worked "4 to <8 hours".

113.    According to Schedule 1 to the Employment Agreement, during their second year of employment[3] Plaintiffs were paid a conditional "basic pay" of $25,000 per annum plus the daily bonus, which was $104.00 per full day if they worked "8 hours or more" and $52.00 per half day if they worked "4 to <8 hours".

114.    The daily bonus was not paid in hourly increments, and no part of FDM Consultants' compensation was based on an hourly rate.

115.    For Named Plaintiff Park's first year of employment, pursuant to the terms of the Employment Agreement she signed with Defendant, she was paid $1,916.67 per month in basic pay.

116.    Upon information and belief, all FDM Consultants were compensated in their first and second years of their contract at the same basic pay and daily bonus rates.

117.    Plaintiffs basic compensation during their first year of employment with FDM, pursuant to the uniform Employment Agreement for all FDM Consultants, was below the baseline required by the salary basis test under the FLSA ($23,660 annual salary, free and clear) and the NYLL ($35,100[4] annual salary, free and clear).

118.    Plaintiffs basic compensation during their second year of employment with FDM, pursuant to the uniform Employment Agreement for all FDM Consultants, was below the baseline required by the salary basis test under the NYLL ($35,100[5]  annual salary, free and clear).

---

[3]     Named Plaintiff Park did not work for Defendant during what would have been her second year of employment; however, pursuant to her contract she would have been paid according to the same pay structure and at the same rates as the Lead Plaintiffs who did work into their second year of employment.
[4]     The threshold requirements for the salary basis test under the NYLL increased to $42,900 annually on and after December 31, 2016 and $50,700 on and after December 31, 2017.
[5]     The threshold requirements for the salary basis test under the NYLL increased to $42,900 annually on and after December 31, 2016 and $50,700 on and after December 31, 2017.

119.     Plaintiffs basic compensation failed the salary basis test under the FLSA and NYLL for another reason – no portion of their compensation was paid free and clear.

120.     Both the daily bonus and the basic pay components of FDM Consultants' compensation were subject to fluctuation based on the quality or quantity of the Consultant's work, or for other reasons, including longevity milestones, availability of work, part-day absences, and disciplinary deductions.

121.     For instance, according to FDM policy uniformly applicable to Plaintiffs and the putative Collective and Class, FDM Consultants would not be paid their daily bonus if they failed to forward a copy of their timesheets approved by the client in a timely manner.  Further, according to uniform FDM policy, in the event a client failed to approve a timesheet due to performance, conduct or absence issues, then the daily bonus would not be paid.

122.     In addition, according to the standard Employment Agreement, standard Training Agreement and FDM Handbook, if an FDM Consultant does not complete the minimum two-year commitment, the FDM Consultant must pay a Termination Fee of $30,000 if the Consultant leaves employment within the first year, and $20,000 in the event the Consultant leaves employment in the second year.  The FDM Consultant must also pay interest and FDM's attorneys' fees if FDM enforces the Termination Fee provision in court.

123.     In essence, the Termination Fee is a retention program, whereby FDM agrees to pay an FDM Consultants basic pay and daily pay and forgo offsetting the training fees (*i.e.* the purported approximate cost of the training), but only if they work for FDM as Consultants for a minimum of two years.

124.     The basic pay and daily pay paid to FDM Consultants is not a bona fide loan or cash advance.

125.     Instead, basic pay and daily pay is a "conditional bonus" subject to recoupment, which was not paid free and clear.

126.     There was no absolute obligation for FDM Consultants to repay, as required with a bona fide loan.

127.     The policy of deductions from final paychecks, whether by separate transaction or direct deduction, if an FDM Consultant failed to remain employed for the two-year time period, violates the salary basis test of the FLSA and NYLL.

128.     Moreover, this uniform policy creates a substantial likelihood of impermissible deductions across the board, for all FDM Consultants, even though not all FDM Consultants would necessarily end up repaying the termination fee.

129.     Thus, the FDM Consultants, because of a uniform policy, would not qualify for exempt status irrespective of whether deductions are actually taken, or if taken, reduce their compensation below the minimum salary basis threshold required under the regulations to meet the salary basis test.  *See* Opinion Letter Fair Labor Standards Act (FLSA), 2001 WL 1558760 (finding that similar repayments were not bona fide loans that could be deducted from pay and that such policy, even if the amount was not actually repaid, violated the salary basis test of the FLSA exemptions.)

130.     According to the FDM Academy Course Description, appended to the Training Agreement, the cost of each training course is set at $75 per hour for each module started, up to a maximum of $30,000.  The Java Training and the Dot Net Training totaled 680 hours, or $51,000; the Application Support Training and PMO Training totaled 400 hours, or $30,000; and the Financial Data Analysis Training totaled 240 hours, or $18,000.

131.    Regardless of the actual costs of the training or the actual hours of training completed, the standard Employment Agreement and FDM Handbook state that the Termination Fee is $30,000, which purported to approximate the cost of training, despite the lack of any objective data provided to FDM Consultants on the actual costs of training.

132.    As such, Named Plaintiff Park's Termination Fee was $30,000 if she left her employment with FDM within the first year, and $20,000 if she left her employment with FDM in the second year.

133.    The standard Training Agreement, Employment Agreement and FDM Handbook commits an FDM Consultant to two years of employment with FDM in acknowledgment of the fact that "the Company has incurred significant costs in training for which there has been no charge to the Employee."  If an FDM Consultant remains with FDM for more than two years, they are not obligated to pay the Termination Fee.

134.    FDM Consultants who complete the 2-year requirement are not attributed any taxable loan forgiveness income when the termination fee obligation is then waived.

135.    Since the repayment obligation is waived under certain circumstance (i.e. completion of 2 years of employment as a Consultant) and no taxable loan forgiveness income is attributable to an FDM Consultant for waiver of the termination fee obligation, or partial waiver, the amount of the termination fee obligation is and was never a bona fide loan under DOL Opinion Letters.

136.    The training was merely a business expense for FDM because and was not primarily for Plaintiffs benefit.

137.    The Termination Fee obligation that certain FDM Consultants actually repaid was an illegal deduction, whether by direct deduction or deduction by sperate transaction, of their

earned compensation (both the basic pay and daily bonus components), which they were required to pay in the event they resigned their employment before the end of their two-year commitment in order to repay training costs.

138.    The Termination Fee did not fix an amount bearing a reasonable relationship to the anticipated loss suffered by FDM; in fact, according to the terms of the Training Agreement, the first year penalty could be assessed at any point during a Consultant's first year in the event of early departure, and the second year penalty could be assessed at any point during the second year, meaning that the purported productivity-related gain offset against the specific first and second year penalties was widely variable while the penalty remained fixed.

139.    As authorized in Section 4.3 of the standard Employment Agreement, unless the FDM Consultant pays the fee by their last day of employment, FDM deducts from their final wages (basic pay, accrued daily bonus compensation and holiday pay) in order to "partially settle liability".  It is the regular practice of FDM to insist on payment of the Termination Fee before the Consultant's final day of employment.  If any balance remains following offset against compensation, FDM Consultants are then responsible for the payment of the balance of the Termination Fee by separate transaction from their earned basic and daily pay.

140.    Basic pay and daily bonus pay, which can be recouped by Defendant based on an FDM Consultants' failure to maintain employment with Defendant beyond two years, amounts to a conditional bonus and not a salary under DOL Opinion Letters.[6]

141.    Under the FLSA, recouping conditional bonuses results in employees not receiving their predetermined wages or salaries when due on a "guaranteed" basis or "free and clear" and produces impermissible reductions in wage or salary compensation because of the

---

[6] Aside from violating the FSLA's "salary basis" requirements under relevant exemptions, the Termination Fee is also an unenforceable penalty according to New York State precedent on the subject.

quality or quantity of the work performed under the terms of the employer's policies, contrary to 29 C.F.R. § 541.602(a).

142.     Further, the Termination Fee and other deductions cannot lawfully be credited against minimum wage or overtime wages under the FLSA because as set forth above, the Termination Fee is an unlawful "kickback" pursuant to 29 C.F.R. § 531.35.   These deductions are separately illegal under the NYLL to the extent they reduce any form of compensation, including "gap time" wages.

143.     Named Plaintiff Park resigned shortly before the start of her second year.  FDM agreed to deem her resignation as having taken place in her second year for the sake of determining the amount of her Termination Fee, and she was allowed to pay a Termination Fee of $20,000 instead of $30,000.

144.     When Named Plaintiff Park explained that she did not have that kind of money, FDM's legal counsel inappropriately suggested she ask her parents for help.

145.     Named Plaintiff Park than asked if FDM would be willing to reduce the Termination Fee or agree to a payment plan; however, FDM refused both requests multiple times.  FDM's General Counsel told Named Plaintiff Park that they would not be able to offer a discount or a payment plan until they knew her future work situation, which Named Plaintiff Park was unwilling to disclose.

146.     As such, on or about October 9, 2015 Named Plaintiff Park wired FDM the full $20,000 Termination Fee.

147.     In fact, Named Plaintiff Park had to take out a cash advance, with an extremely high interest rate, in order to pay the $20,000 Termination Fee.  Named Plaintiff Park

specifically needed to use her last paycheck from FDM in order to secure and arrange payment of the $20,000 amount.

148.    Named Plaintiff Park did not receive her last paycheck until on or about October 31, 2015, which was used to make payment on the cash advance she took out to pay the Termination Fee.

149.    To date Named Plaintiff Park has paid well over $20,000 since she has had to pay both the interest and principal on the cash advance she took out to pay FDM the Termination Fee.

150.    Named Plaintiff Park is aware of at least two other FDM Consultants employed with FDM during the Collective Period who have resigned and paid the Termination Fee.  Upon information and belief, FDM enforces the Termination Fee provision of the Training Agreement and Employment Agreement in every instance of separation before the conclusion of the two-year commitment.[7]

151.    Plaintiffs and the Putative Collective and Class Members were also not paid hourly compensation fixed at a rate of no less than $27.63 per hour since no portion of their compensation was paid on at a fixed hourly basis.  Plaintiffs' daily bonus was not paid on an

---

[7] While Plaintiffs' proposed "Consultant Minimum Wage and Consultant Overtime Collectives and Classes are presently defined based on "salary-basis" failures, Plaintiffs intends to conduct class-related discovery on the duties of collective and class members and determine if common questions of fact exist sufficient to pursue class certification based on common duties as well.  According to the "New York Pay Notice" provided to Plaintiff and all members of the putative Collective Classes and Classes, Plaintiff and all other FDM Consultants were classified as exempt from overtime pay "under the FLSA {SIC} for salaried professionals." No exemption to the overtime pay requirements exists for "salaried professionals" under the FLSA which would apply to Plaintiffs and the putative class.  Notably, under the Opinion Letters issued by the New York State Department of Labor, a "Database Analyst" in the financial industry performing similar duties as Plaintiff was deemed to be a nonexempt employee subject to the FLSA.  According to the reasoning of the Opinion Letter, if an employee's work is "highly dependent upon, or facilitated by the use of computers and computer software programs," the employee would not fall within the exemption.  Upon information and belief, most of the IT-related positions which FDM Consultants assumed following training would fall within this category of nonexempt employment based on non-exempt duties performed.

hourly basis, was not predetermined, and was also subject to reduction by the aforementioned policies.

152.    By enforcing the Termination Fee provision in the Training Agreement and Employment Agreement and requiring FDM Consultants to repay the training costs through reimbursement, Defendant subjected Plaintiffs to an actual practice and clear policy of improper reductions to their basic pay and daily bonus pay demonstrating that Defendant never intended to pay them a bona fide salary as required by the salary-basis test.

153.    Further, since Named Plaintiff Park was required to unlawfully kickback $20,000 of her conditional monthly base pay and daily bonuses, she and other members of the Consultant Minimum Wage Class and Collective suffered minimum wage and "gap time" damages given the fact that the kickbacks meant her pay was conditional and reduced her monthly base pay and daily bonus pay below the minimum wage and/or "gap time" wages.

154.    Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collectives.

155.    Further, Defendant failed to conspicuously post notice in the workplace advising Plaintiffs of their statutorily-protected right to minimum wage and overtime compensation.

156.    Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the Collectives, and as such, notice should be sent to the Collectives.  There are numerous similarly situated current and former employees of Defendant who were subject to the aforementioned policy in violation of the FLSA and who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to the Defendant and are readily identifiable through Defendant's records.

## CLASS ALLEGATIONS

157.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following defined class:

**Proposed Classes**:     A1.   NYLL Trainee Minimum Wage Class: All persons who were
employed by Defendant at any time from February 26, 2010
through the date this Court grants preliminary certification as
"FDM Trainees", who agreed to NY choice of law and forum
selection clauses, and who participated in FDM's US-based
training program for FDM Consultants known as the FDM
Training Academy and who were subject to FDM's uniform policy
of denying state minimum wage compensation to Trainees for the
entire training period.

B1.   NYLL Consultant Overtime Class: All persons who were
employed by Defendant at any time from February 26, 2010
through the date this Court grants preliminary certification as "FDM
Consultants", having agreed to NY choice of law and forum
selection clauses, and who signed an Employment Contract with a
template Termination Fee triggered in the event of early
resignation, were paid a conditional bonus in the form of basic and
daily bonus pay and not a predetermined and guaranteed salary of at
least $543.75 per week prior to December 31, 2015, $600.00 per
week on or after December 31, 2013, $656.25 per week on or after
December 31, 2014, $675.00 per week on or after December 31,
2015, $825 per week on or after December 31, 2016, $975 per week
on or after December 31, 2017 or an hourly rate of not less than
$27.63 per hour for each hour worked, and who were denied lawful
overtime compensation pursuant to Defendant's uniform "no
overtime, period" policies.

B2.   NYLL Consultant Gap Time Class  All persons who were
employed by Defendant at any time from February 26, 2010
through the date this Court grants preliminary certification as
"FDM Consultants", having agreed to NY choice of law and forum
selection clauses, and who signed an Employment Contract with a
template Termination Fee in the event of early resignation, and
who were not paid lawful gap time wages during at least one week
in their employment since, when they resigned their employment
with FDM, Defendant enforced the Termination Fee set forth in
the Training Agreement, Employment Contract and FDM
Handbook.

B3.   <u>NYLL Consultant Minimum Wage Class</u>: All persons who were employed by Defendant at any time from February 26, 2010 through the date this Court grants preliminary certification as "FDM Consultants", having agreed to NY choice of law and forum selection clauses, and who signed an Employment Contract with a template Termination Fee in the event of early resignation, and who were not paid lawful federal minimum wages during at least one week in their employment and a predetermined and guaranteed salary "free and clear" of deductions since, when they resigned their employment with FDM, Defendant enforced the Termination Fee set forth in the Training Agreement, Employment Contract and FDM Handbook.

B4.   <u>NYLL Wage Deduction Class</u>:  All persons who are or have been employed by Defendant as FDM Consultants having agreed to NY choice of law and forum selection clauses time from February 26, 2010 through the date this Court grants preliminary certification and were subjected to unlawful wage deductions by direct deduction from wages or separate transaction.

158.   Plaintiffs incorporate by reference each and every fact alleged in the preceding paragraphs above.

159.   <u>Numerosity</u>:    The Proposed Classes is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the relevant time period, Defendant employed at least 40 people who satisfy the definition of the Proposed Classes.

160.   <u>Typicality</u>:       The Plaintiffs' claims are typical of the members of the Proposed Classes.  Plaintiffs are informed through personal experience and knowledge and by other FDM Consultants that the Putative Members of the sub-Classes were subject to the aforementioned unlawful policies during the Class Period.  Plaintiffs had the similar duties as other Collective and Class Members, and were compensated the same according to a common Training Agreement, Employment Agreement and US Staff Handbook.  All Plaintiffs were subject to Defendant's unlawful policies and practices as alleged more fully above, including failing to pay

for a compensable training period, enforcing a deduction practice amounting to a "kick back" of lawfully earned wages, and otherwise uniformly failing to pay all minimum wages and lawful overtime premiums for all hours worked in excess of 40 during a work week during the training and employment periods.

161.   Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

162.   Adequacy:    Plaintiffs will fairly and adequately protect the interests of the Proposed Collectives and Classes, and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

163.   Commonality:  Common questions of law and fact exist to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

a.   Whether Defendant improperly classified the Proposed Class of Trainees as non-employee trainees under the NYLL;

b.   Whether Defendant unlawfully failed to pay appropriate overtime compensation to members of the Proposed Consultant Classes in violation of NYLL;

c.   Whether Defendant unlawfully failed to pay appropriate minimum wage compensation to members of the Proposed Trainee and Consultant Classes in violation of the NYLL;

d.   Whether Defendant paid the Consultant Class's wages and salaries "free and clear" of any unlawful deductions as required by the FLSA and the NYLL;

e.   Whether Defendant maintained lawful wage and hour records under the NYLL;

    f.   Whether Defendant employed Plaintiff and the Proposed Classes within the meaning of New York law;

    g.   The proper measure of damages sustained by the Proposed Classes; and

    h.   Whether Defendant's actions were "willful."

164.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

165.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Classes predominate over any questions affecting only individual members of the Proposed Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's common and uniform policies and practices denied the Proposed Classes the wages to which they are entitled.  The damages suffered by the individual members of the Proposed Classes are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

166.    Plaintiffs intend to send notice to all members of the Proposed Classes to the extent required by Rule 23.  The names and addresses of the Proposed Classes are available from Defendant.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**
**As to the FDM Consultant Overtime Collective Class**

167.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

168.    Named Plaintiff and the Lead Plaintiffs consented in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  Named Plaintiff and Lead Plaintiffs' written consent form has been filed on the pubic docket for this matter.  Named Plaintiff and Lead Plaintiffs' anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

169.    At all relevant times, Defendant have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

170.    At all relevant times, Defendant has employed and continues to employ, FDM Consultants, including Named Plaintiff, the Lead Plaintiffs, and the putative Consultant Overtime Collective members, as defined above.

171.    At all relevant times, upon information and belief, Defendant have had gross operating revenues in excess of $500,000.00.

172.    The FLSA, 29 U.S.C. § 207, requires each covered employer, such as Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per work week.

173.    During their employment with Defendant, within the applicable statute of limitations, Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Collective

members worked in excess of forty hours per workweek, but did not receive the appropriate overtime compensation from Defendant.

174.   Despite the hours worked by Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Collective members, Defendant willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay overtime compensation.

175.   By failing to accurately record, report, and/or preserve records of hours worked by Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Collective, Defendant have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq.

176.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

177.   As the direct and proximate cause of Defendant's unlawful conduct, Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Collective have suffered a loss of wages and other damages.

178.   Named Plaintiff and the Lead Plaintiffs, on behalf of themselves and the Consultant Overtime Collective seeks recovery of attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Wages)
### As to the FDM Consultant Overtime Class

179.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

180.    At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the putative Consultant Class were employees and Defendant have been an employer within the meaning of the New York Labor Law.

181.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant.

182.    During their employment with Defendant, within the applicable statute of limitations, Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Class members worked in excess of forty hours per workweek, but Defendant failed to pay Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Class the overtime wages to which they were entitled under the New York Labor Law.

183.    By Defendant's failure to pay Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Class members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

184.    Due to Defendant's violations of the New York Labor Law, Named Plaintiff, the Lead Plaintiffs, and the Consultant Overtime Class members are entitled to recover from Defendant their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION[8]
**(Unlawful Failure to Pay Minimum Wage Compensation under the Fair Labor Standards Act)**
**As to the Trainee Minimum Wage Collective Class**

185.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

186.    At all relevant times herein, Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage Collective members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

187.    At all relevant times, Defendant have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

188.    At all relevant times, Defendant have employed and continues to employ, FDM Trainees, including Named Plaintiff, the Lead Plaintiffs, and the putative Consultant Overtime Collective members, as defined above.

189.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, per 29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

190.    Defendant, pursuant to their policies and practices, violated the FLSA by refusing and failing to pay Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage Collective members the federal minimum wage.

191.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories

---

[8]       *See* FN 1, supra.

of employees from minimum wage obligations.  None of the FLSA exemptions apply to Named

Plaintiff, the Lead Plaintiffs, or the Trainee Minimum Wage Collective members.

192.    Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage Collective

members are all victims of Defendant's uniform compensation policy.  Upon information and

belief, this uniform policy, in violation of the FLSA, has been applied to all putative members of

the Trainee Minimum Wage Collective employed by Defendant in the United States.

193.    Defendant have acted neither in good faith nor with reasonable grounds to believe

that its actions and omissions were not a violation of the FLSA, and as a result thereof, Named

Plaintiff, the Lead Plaintiffs, and other similarly situated employees, in addition to payment of

back minimum wages, are entitled to recover an award of liquidated damages in an amount equal

to the amount of unpaid minimum wages described pursuant to Section 16(b) of the FLSA,

codified at 29 U.S.C. § 216(b).

194.    Alternatively, should the Court find Defendant did not act willfully in failing to

pay minimum wage, Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage

Collective members are entitled to an award of prejudgment interest at the applicable legal rate.

**<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>[9]**
**(Failure to Pay Lawful Minimum Wages in**
**Violation of NYLL § 652 and Article 19)**
**As to the Trainee Minimum Wage Class**

195.    Plaintiffs allege and incorporate by reference the allegations in the preceding

paragraphs.

196.    At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the Trainee

Minimum Wage Class members were employees within the meaning of the New York Labor

Law.

---

[9]        *See* FN 1, supra.

197.     The minimum wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant.

198.     Defendant have failed to pay Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage Class members minimum wages to which they were entitled under the New York Labor Law.

199.     By Defendant' failure to pay Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage Class members minimum wages, they have willfully violated the New York Labor Law Article 19, §§ 652 *et seq*., and the supporting New York State Department of Labor Regulations.

200.     Due to Defendant' violations of the New York Labor Law, Named Plaintiff, the Lead Plaintiffs, and the Trainee Minimum Wage Class members are entitled to recover from Defendant their unpaid state minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A FIFTH CAUSE OF ACTION[10]
**(Unlawful Failure to Pay Minimum Wage Compensation under the Fair Labor Standards Act)**
**As to the Consultant Minimum Wage Collective Class**

201.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

202.     At all relevant times herein, Named Plaintiff, the Lead Plaintiffs, and the Consultant Minimum Wage Collective members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

203.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of

---

[10]     *See* FN 1, supra.

goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, per 29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

204.    Defendant, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay Named Plaintiff, the Lead Plaintiffs, and the Consultant Minimum Wage Collective the minimum wage.

205.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations.  None of the FLSA exemptions apply to Named Plaintiff, the Lead Plaintiffs, and the Consultant Minimum Wage Collective.

206.    Defendant required Named Plaintiff, the Lead Plaintiffs, and all those similarly situated to sign the Training Agreements and Employment Agreements.  Under the terms of such, Plaintiffs and the Consultant Minimum Wage Collective's wages were conditionally paid, subject to reductions, and not "free and clear" as required by law. Enforcement of the Training Agreement and/or Employment Agreement violates the FLSA to the extent it has the effect of requiring employees of Defendant to work for wages that are lower than the minimum wage required by 29 U.S.C. § 206.

207.    Defendant have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Named Plaintiff, the Lead Plaintiffs, and other similarly situated employees, in addition to payment of back minimum wages, are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

208.    Alternatively, should the Court find Defendant did not act willfully in failing to

pay minimum wage, Named Plaintiff, the Lead Plaintiffs, and all similarly situated employees

are entitled to an award of prejudgment interest at the applicable legal rate.

### AS AND FOR A SIXTH CAUSE OF ACTION[11]
**(Failure to Pay Lawful Minimum Wages in**
**Violation of NYLL § 652 and Article 19)**
**As to the Consultant Minimum Wage Class**

209.    Plaintiffs allege and incorporate by reference the allegations in the preceding

paragraphs.

210.    At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the Consultant

Minimum Wage Class were employees within the meaning of the New York Labor Law.

211.    The minimum wage provisions of Article 19 of the New York Labor Law and its

supporting regulations apply to Defendant.

212.    Defendant have failed to pay Plaintiffs and the Consultant Minimum Wage Class

members the minimum wages to which they were entitled under the New York Labor Law.

213.    Defendant required Named Plaintiff, the Lead Plaintiffs, and all those similarly

situated to sign the Training Agreements and Employment Agreements.  Under the terms of

such, Plaintiffs and the Consultant Minimum Wage Class's wages were conditionally paid,

subject to reductions, and not "free and clear" as required by law. Enforcement of the Training

Agreement and/or Employment Agreement violates the NYLL to the extent it has the effect of

requiring employees of Defendant to work for wages that are lower than the minimum wage

required by the NYLL.

214.    By Defendant's failure to pay Named Plaintiff, the Lead Plaintiffs, and the

Consultant Minimum Wage Class members wages, they have willfully violated the New York

---

[11]    *See* FN 1, supra.

Labor Law Article 19, §§ 652 *et seq*., and the supporting New York State Department of Labor Regulations.

215.    Due to Defendant's violations of the New York Labor Law, Plaintiffs and the Consultant Minimum Wage Class members are entitled to recover from Defendant their unpaid state minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A SEVENTH CAUSE OF ACTION**[12]
**(Unlawful Deductions from Wages in Violation of NYLL § 193)**
**As to the Deduction Class**

216.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

217.    At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the Deduction Class were employees within the meaning of the New York Labor Law.

218.    Section 193 of the New York Labor Law expressly prohibits an employer from making unauthorized deductions from employees' wages.

219.    Section 193 prohibits deductions from employees' wages unless the deductions are (1) expressly authorized by <u>and</u> for the benefit of the employee and (2) limited to the enumerated categories of permissible deductions.

220.    Defendant made deductions from the wages of the Named Plaintiff, the Lead Plaintiffs, and the Deduction Class for purposes that are not permissible under the statute.

221.    The deductions made by Defendant were not made for the benefit of the Named Plaintiff, the Lead Plaintiffs, and/or the Deduction Class.

---

[12]    *See* FN 1, supra.

222.    By Defendant's practice of making unlawful deductions from Named Plaintiff, the Lead Plaintiffs, and/or the Deduction Class's earned wages, whether by direct payroll deduction or separate transaction, Named Plaintiff, the Lead Plaintiffs, and/or the members of the Deduction Class were damaged in an amount to be proven at trial.

223.    Due to Defendant's violations of the New York Labor Law, Named Plaintiff, the Lead Plaintiffs, and the Deduction Class members are entitled to recover from Defendant all wages unlawfully deducted or charged, and all unlawful payments required by separate transaction, plus reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest

### AS AND FOR A EIGHTH CAUSE OF ACTION[13]
### (Failure to Pay Gap Time/Straight Time Wages in Violation of NYLL § 663 and/or NYLL § 190 *et seq.*)
### As to the Consultant Gap Time Class

224.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

225.    At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the Consultant Gap Time Class members were employees and Defendant have been employers within the meaning of the NYLL.

226.    The provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant.

227.    NYLL § 663(1) states: "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled … he or she shall recover in a civil action the amount of any such underpayments …"

---

[13]    *See* FN 1, supra.

228.    The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendant, and protect Named Plaintiff, Lead Plaintiffs and the Consultant Gap Time Class.

229.    Pursuant to the agreed-upon terms of their employment, Defendant was required to pay Named Plaintiff, Lead Plaintiffs and the Consultant Gap Time Class set pay for all hours worked.

230.    Defendant has failed to pay Named Plaintiff, the Lead Plaintiffs, and the Consultant Gap Time Class members the straight time/gap time wages to which they were entitled under the NYLL and supporting New York State Department of Labor Regulations.

231.    By Defendant's failure to pay Named Plaintiff, Lead Plaintiffs and the Consultant Gap Time Class members straight time/gap time wages, they have willfully violated Article 19 *et seq.* of the NYLL and the supporting New York State Department of Labor Regulations.

232.    Due to Defendant' violations of the New York Labor Law, Named Plaintiff, the Lead Plaintiffs, and the Consultant Gap Time Class members are entitled to recover from Defendant their unpaid gap time wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A NINTH CAUSE OF ACTION[14]
**(New York Notice and Recordkeeping Requirements, NYLL §§ 195, 198)**
**As to All Classes**

233.    Plaintiffs allege and incorporates by reference the allegations in the preceding paragraphs.

234.    At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the Classes were employees and the Defendant have been an employer within the meaning of the New York Labor Law.

---

[14]    *See* FN 1, supra.

235.     Defendant did not provide Named Plaintiff, the Lead Plaintiffs, and the members of the Classes with a written notice of their rate of pay, regular payday, and such other information as required by NYLL § 195(1).

236.     As a result of Defendant's unlawful conduct, Named Plaintiff, the Lead Plaintiffs, and members of the Classes are entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

### AS AND FOR A TENTH CAUSE OF ACTION[15]
**(New York Wage Statement Provisions, NYLL §§ 195, 198)**
**As to All Classes**

237.     Plaintiffs allege and incorporates by reference the allegations in the preceding paragraphs.

238.     At all relevant times, Named Plaintiff, the Lead Plaintiffs, and the Classes were employees and the Defendant have been an employer within the meaning of the New York Labor Law.

239.     Defendant did not provide Named Plaintiff, the Lead Plaintiffs, and the members of the Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

240.     As a result of Defendant's unlawful conduct, Named Plaintiff, the Lead Plaintiffs, and members of the Classes are entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

### AS AND FOR A ELEVENTH CAUSE OF ACTION
**(Declaratory Judgment)**

---

[15]     *See* FN 1, supra.

**As to the Consultant Classes and Consultant Collective Classes**

241.     Plaintiffs allege and incorporates by reference the allegations in the preceding paragraphs.

242.     Named Plaintiff, the Lead Plaintiffs, and others similarly situated were required, as a condition of employment, to sign both a Training Agreement and an Employment Agreement, which contained similarly, if not identical, provisions regarding a Termination Fee.

243.     Defendant have enforced the provisions of the Training Agreement and Employment agreement against its employees.  Defendant have used legal counsel to collect the balance it asserts is due from Named Plaintiff under the Training Agreement and Employment Agreements. The legal counsel has demanded payment and asserted it will take legal action to enforce the Training Agreement and Employment Agreement and seek court costs, interest and attorneys' fees.

244.     Enforcement of the Training Agreement and Employment Agreements violates the FLSA and NYLL to the extent it has the effect of requiring Trainees and/or FDM Consultants to work for wages that violate the minimum wage and overtime laws specified in the FLSA and/or NYLL; thus, Named Plaintiff and the Lead Plaintiffs respectfully request that the Court declare that the Training Agreement and/or Employment Agreements violate the FLSA and/or NYLL.

245.     Defendant has threatened to enforce the Training Agreement and Employment Agreement against Named Plaintiff Park.

246.     Defendant's conduct is willful.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff and the Lead Plaintiffs, on behalf of themselves and all members of the Proposed Classes and Collectives, pray for relief as follows:

A. That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B. That Defendant is found to have violated the provisions of the New York Labor Law as to Named Plaintiff, the Lead Plaintiffs, and the Classes;

C. That Defendant is found to have violated the Federal Fair Labor Standards Act as to Named Plaintiff, the Lead Plaintiffs, and the Collectives;

D. That Defendant's violations as described above are found to be willful;

E. An award to Named Plaintiff, the Lead Plaintiffs, and the Collectives and Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F. That Defendant further be enjoined to cease and desist from unlawful activities in violation of the FLSA and/or the NYLL;

G. An award of reasonable attorney's fees and costs pursuant to the NYLL and/or 29 U.S.C. § 216 and/or other applicable law;

H. Declaratory judgment that Defendant's Training Agreement and Employment Agreements are unenforceable as it violates overtime and/or minimum wage provisions of the FLSA and/or NYLL;

I. Declaratory Judgment that Defendant's conduct, policies and practices are unlawful and violation the FLSA and/or NYLL; and

J. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff demands a trial

by jury as to all issues so triable.

DATED:  May 7, 2019
        New York, New York

                                      The Law Office of Christopher Q. Davis, PLLC

                                      Christopher Q. Davis (CD-7282)
                                      Rachel M. Haskell (RH-8248)
                                      225 Broadway, Suite 1830
                                      New York, New York 10007
                                      Telephone: (646) 430-7930
                                      *Attorneys for Named Plaintiff, Lead Plaintiffs*
                                      *and the Proposed Collectives and Classes*