EXHIBIT 1_SETTLEMENT AGREEMENT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACE PARK, individually and on behalf of all others similarly situated, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FDM GROUP, INC. <br><br> Defendant. | Civil Action No. 16-CV-1520 (SN) <br><br> **Hon. Judge Sarah Netburn** |

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Defendant FDM GROUP, INC. ("FDM," "FDM Group" or "Defendant"), Plaintiff GRACE PARK (the "Named Plaintiff"), and Plaintiffs ORONDE BELL, DANIEL FERGUSON, VICTOR QUIROZ, PABLO ALVAREZ, CHRISTOPHER HERLIHY, RAMIN SHIRVANI, ROBERT SUAREZ, ALEXANDER BORGES, ADAM AUSAW, STEVE COUPET, and DAVID STRIMAS (collectively, the "Lead Plaintiffs" and collectively with the Named Plaintiff, "Plaintiffs"), together with the class of individuals and collective action members they seek to represent (collectively, the "Class") (Plaintiffs and Defendant each a "Party" and collectively, the "Parties").

### RECITALS

**WHEREAS,** on February 26, 2016, Plaintiffs filed a Class and Collective Action against Defendant alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law ("NYLL") for the alleged failure to pay certain wage amounts to Plaintiffs during pre-employment training time ("Training Time Claim"), for alleged unpaid wages related to FDM's enforcement of training fees owed by Plaintiffs to Defendant ("Training Fee Claim"), for alleged impermissible deductions from wages ("Deduction Claim"), for the alleged failure to pay certain gap time and overtime amounts to Plaintiffs while employed as consultants ("Overtime Claim"), and for alleged notice, wage statement, and recordkeeping failures ("Recordkeeping Claims");

**WHEREAS,** Defendant has denied and continues to deny all of the material allegations contained in the complaint and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

1

**WHEREAS,** on July 18, 2016 Defendant filed a motion to dismiss the Litigation, which the Court granted in full on March 9, 2017;

**WHEREAS,** Plaintiffs filed a motion to reconsider, which the Court granted in part and denied in part on August 28, 2018, affirming the dismissal of the Training Time Claim, the Training Fee Claim, and the Deduction Claim, and reinstating the Overtime Claim without directly addressing the Recordkeeping Claims;

**WHEREAS,** the Parties engaged in extensive discovery, including the production of voluminous personnel files and payroll data and the depositions of 22 Plaintiffs and two FDM representatives;

**WHEREAS,** on January 15, 2020, the Parties participated in a mediation conducted by Stephen P. Sonnenberg of JAMS, an experienced mediator with an extensive background in wage and hour matters, which did not immediately result in resolution;

**WHEREAS,** the Parties continued settlement negotiations through the use of Mr. Sonnenberg following the January 15 mediation and, on June 9, 2020, the Parties reached agreement on the total amount of the Gross Settlement Fund;

**WHEREAS,** the purpose of this Agreement is to settle fully and finally the Litigation and all released claims between Plaintiffs and Defendant as set forth in this Agreement;

**WHEREAS,** based upon their analysis and evaluation of the merits of the claims made against Defendant and the impact of this Agreement on Plaintiffs and the Class, and based upon their analysis of a number of factors, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs and the Class;

**WHEREAS,** without admitting or conceding that class and/or collective action certification is warranted, and without acknowledging or conceding any liability or damages whatsoever, Defendant agrees to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**NOW THEREFORE,** in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2

1.1    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

1.2    **Claims Administrator.**  "Claims Administrator" refers to RG/2 Claims Administration, LLC, a third party administrator, who will mail the Notices, administer the allocation, and distribute the payments of the Gross Settlement Fund.

1.3    **Class Counsel.**  "Class Counsel" or "Plaintiffs' Counsel" means The Law Office of Christopher Q. Davis, PLLC, 80 Broad Street, Suite 703, New York, NY 10004.

1.4    **Class Members.**  "Class Members" means the Named Plaintiff and Lead Plaintiffs and all persons employed by Defendant as Consultants from February 26, 2010 through December 31, 2019.  Class Members are treated as a class for the purposes of settlement only.

1.5    **Class List.**  "Class List" refers to a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) dates of employment; (iv) e-mail address; (v) Stream (where available); (vi) social security numbers; and (vii) Premium Pay (if any), as that information exists on file with Defendant, which Defendant shall provide to Class Counsel and the Claims Administrator.  The Class List is to be used by Class Counsel and the Claims Administrator to effectuate settlement, and may not be used for any other purpose.

1.6    **Class Representatives**.  "Class Representatives" means Grace Park and Oronde Bell.

1.7    **Consultant.**  "Consultant" means all persons employed and classified by Defendant as an exempt Consultant pursuant to an employment contract with Defendant which provided for the payment of a base salary and daily bonus payments when working at a Placement.

1.8    **Court.**  "Court" means the United States District Court for the Southern District of New York.

1.9    **Days.**  "Days" means business days if the specified number is less than five (5), and calendar days if the specified number is five (5) or greater.

1.10    **Defendant's Counsel.**  "Defendant's Counsel" means Jenner & Block LLP, 919 Third Avenue, New York, NY 10022.

1.11    **Effective Date.**  "Effective Date" is the last of the following dates: (i) the date 31 days after the entry of an Order by this Court granting final approval of the Settlement, if there are no timely appeals; or (ii) if there is a timely appeal of this Court's decision granting final approval, the day after all appeals are resolved in favor of final approval.

**1.12**   **Error Fund.**  "Error Fund" means the amount of $50,000, which will be set aside to address any errors or omissions related to Defendant's class data and/or mistakes made during settlement administration which are of no fault by the Class Member(s).

**1.13**   **Escrow Account.**  "Escrow Account" means the escrow account established by the Claims Administrator into which Defendant will deposit the Gross Settlement Fund.

**1.14**   **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court on the Motion for Final Approval.

**1.15**   **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement and dismissal of the Litigation with prejudice.

**1.16**   **Opt-In Plaintiff.** "Opt-In Plaintiff" means (1) a Class Member who filed an FLSA opt-in form to join the Litigation and did not later withdraw their participation in the Litigation, and/or (2) a Class Member who endorses their Initial Settlement Distribution Check and/or Subsequent Settlement Distribution Check and is deemed to have opted into the FLSA collective.

**1.17**   **Gross Settlement Fund.**  "Gross Settlement Fund" means up to $4,135,000.00, the maximum amount Defendant has agreed to pay to settle the Litigation as set forth in this Agreement.

**1.18**   **Individual Allotted Points.**  "Individual Allotted Points" means the sum of point value for each Class Member calculated in Section 4.5(A)(2).

**1.19**   **Initial Settlement Distribution Checks.** "Initial Settlement Distribution Checks" means checks issued to Participating Class Members for their initial share of the Net Settlement Fund calculated before the Error Fund has been distributed in accordance with this Agreement.

**1.20**   **Litigation.**  "Litigation" means the above-captioned case.

**1.21**   **Net Settlement Fund.**  "Net Settlement Fund" means the remainder of the Gross Settlement Fund after deductions for: the Error Fund as described in Section 4.1(D), Court-approved attorneys' fees and costs as described in Section 4.2, Court-approved Service Awards to the Class Representatives and certain Lead Plaintiffs and Class Members as described in Section 4.4, and the Claims Administrator's fees as described in Section 4.3.

**1.22**   **Notice or Notices.**  "Notice" or "Notices" means the Court-approved Notices of Proposed Settlement of Class and Collective Action Lawsuit, including but not limited to

4

notice of an opportunity to opt-out or object to the proposed settlement, and/or to appear at the Fairness Hearing, attached hereto as Exhibit A.

**1.23    Objector.**  "Objector" means an individual who timely files an objection to this Agreement, in accordance with the terms and conditions set forth herein and applicable law, and does not include any individual who timely opts-out of this Agreement.

**1.24    Overtime Points.**  "Overtime Points" mean the sum of points calculated as specified under Section 4.5(A)(2)(b).

**1.25    Opt-out Period.** "Opt-out Period" means the period of time Class Members have to opt-out of this Agreement after receiving Notice, which shall end 45 days after the last day on which the Claims Administrator makes a mailing of a Notice to a Class Member, but in any case no later than 7 days before the date of the Fairness Hearing.

**1.26    Opt-out Statement.**  "Opt-out Statement" is a written, dated, and signed statement that an individual Class Member has decided to timely opt-out and not be included in this Agreement.

**1.27    Participating Class Member.**  "Participating Class Member" is a Class Member who does not opt-out of the proposed settlement and thus becomes entitled to receive their Pro Rata Share.

**1.28    Placement.**  "Placement" means the client site or client site locations where the Class Member worked while employed by Defendant as a Consultant during the first two (2) years of employment.

**1.29    Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Class Members.

**1.30    Premium Pay.** "Premium Pay" means additional money paid by FDM to a Consultant for working additional hours beyond their regularly scheduled hours during their first two (2) years of employment.

**1.31    Pro Rata Share.**  "Pro Rata Share" means the amount each Class Member is entitled to receive from the Net Settlement Fund pursuant to Section 4.5(A) of this Agreement, if they do not timely submit an Opt-out Statement.

**1.32    Released Parties.**  "Released Parties" means Defendant, its successors, assigns, parent entities, and each of its and their respective past and present owners, equity holders, general and limited partners, directors, officers, managers, employees, accountants, insurers, and attorneys, each solely in their capacity as such.

5

**1.33**   **Stream.**  "Stream" means the technical and business discipline a Consultant worked in while at a Placement or, if unavailable, the stream the Consultant was trained in by FDM.

**1.34**   **Subsequent Settlement Distribution Checks.**  "Subsequent Settlement Distribution Checks" means any checks issued to Participating Class Members for their share of the amount remaining in the Error Fund after the Error Fund has been distributed in accordance with this Agreement.

**1.35**   **Trainee.**  "Trainee" means all persons employed by Defendant who participated in Defendant's US-based training program for Consultants.

**1.36**   **Week Worked.**  "Week Worked" means any work weeks, prior to January 1, 2020, during the first two (2) years of a Consultant's employment with Defendant.

2. **INITIAL PROCEDURAL ISSUES**

2.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

2.2 **Retention of the Claims Administrator.** Within five (5) days after the filing of a Preliminary Approval Motion, Class Counsel shall retain the Claims Administrator.

2.3 **Responsibilities of Claims Administrator.** The Claims Administrator shall be responsible for: (1) preparing, printing, and disseminating to Class Members the Notice; (2) promptly and simultaneously copying counsel for all Parties on material correspondence and promptly and simultaneously notifying all counsel for the Parties of any material requests or communications made by any Party; (3) promptly and simultaneously furnishing to counsel for the Parties copies of any requests for exclusion, objections, or other written or electronic communications from Class Members that the Claims Administrator receives; (4) receiving and reviewing the Opt-out Statements submitted by Class Members; (5) keeping track of requests for exclusion including but not limited to maintaining the original mailing envelope in which the request was mailed; (6) calculating distribution amounts to Class Members in accordance with this Agreement; (7) mailing the Initial Settlement Distribution Checks and Subsequent Settlement Distribution Checks to Participating Class Members, (8) mailing Court-approved Service Awards, (9) mailing or initiating a wire transfer of Court-approved Attorneys' Fees and Costs, and (10) providing a final report detailing the results of the class mailings and participation to Defendant's Counsel and Class Counsel.

2.4 **Preliminary Approval Motion.**

(A)  On or before August 12, 2020, the Parties shall move for Preliminary Approval of this Agreement for purposes of resolving this matter according to the terms of the Agreement (the "Preliminary Approval Motion").

(B)  The Preliminary Approval Motion also will seek the approval as to form and content of the proposed Notice of settlement of the Litigation, attached here as Exhibit A; and the setting of a date for a Fairness Hearing for final approval of the settlement before the Court.

(C)  If the Court denies the Preliminary Approval Motion, the Parties shall in good faith mutually work cooperatively to provide a supplement or amendment to the Court in due haste. If the Parties' attempt to secure Court approval of a renegotiated settlement is denied, the Litigation will proceed as if no settlement has been attempted, and the Parties agree that neither this Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement shall be admissible or offered or useable in the Litigation or any other action or

7

proceeding for any purpose whatsoever.  Additionally, in that event, Defendant retains all rights, including but not limited to the rights to contest whether this case should be maintained as a class or collective action, to contest the merits of the claims being asserted against it in the Litigation, and to assert its defenses. Plaintiff likewise retains all rights, including but not limited to the right to seek certification of a class action, and the Parties shall have the opportunity to engage in further class and expert discovery in accordance with applicable law.

**2.5**   **Notice to Class Members.**

(A)   Within 15 days of the entry of the Preliminary Approval Order, Defendant's Counsel will provide Class Counsel and the Claims Administrator the Class List in electronic form.  All information provided regarding the Class Members will be treated as confidential information by Class Counsel and the Claims Administrator.  Said information will not be used by Class Counsel or the Claims Administrator for any purpose other than to effectuate the terms of settlement.

(B)   Within 15 days of the entry of the Preliminary Approval Order, Plaintiffs' Counsel, by and through their expert, will provide Defendant's Counsel and the Claims Administrator with the Consultants who received premium pay pursuant to FDM's records provided during discovery, and the approximate number of hours worked for which each such Consultant received such Premium Pay.

(C)   Within 40 days of the entry of the Preliminary Approval Order by the Court, the Claims Administrator will mail the Notice to all Class Members, via First Class United States Mail.  Prior to the initial mailing, the Claims Administrator will run all addresses through the National Change of Address database to obtain any updated addresses.  For any Class Member whose Notice is nonetheless returned by the post office as undeliverable, the Claims Administrator will take all reasonable steps to obtain the correct address and shall attempt one re-mailing to any member of the Class for whom it obtains a more recent address. The Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. In the event a Notice is returned as undeliverable, the Parties will use best efforts to ensure such individual obtains the Notice by, to the extent such information is ascertainable, having Class Counsel call and/or email such Class Member.

**2.6**   **Class Member Opt-outs.**

(A)   Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, a written, signed

8

statement to the Claims Administrator that states they are opting out of the settlement, and include their name, address, and telephone number, and a statement indicating their intention to opt-out such as: "I opt-out of the FDM Group wage and hour settlement" ("Opt-out Statement").

(B)     To be effective, an Opt-out Statement must be post-marked by a date certain, to be specified on the Notice, which will be 45 days after the date on which the Claims Administrator mails the Notice. The 45-day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned as undeliverable, in which case the 45-day period for any such Class Member will run from the date of the second mailing to such Class Member, unless another period is set by the Court (the "Opt-out Period").  Class Members may not opt-out of the settlement after the end of the Opt-out Period.

The Claims Administrator shall stamp the date received on the original of each Opt-out Statement that it receives and shall serve a stamped copy of each Statement on Class Counsel and Defendant's Counsel not later than three (3) days after receipt thereof.  The Claims Administrator shall retain in its files the stamped originals of all Opt-out Statements and the original envelopes containing Opt-out Statements. The Claims Administrator will send a final list of all Opt-out Statements to Defendant's Counsel and Class Counsel within three (3) days of the last Class Members' Opt-out Period. With their Motion for Final Approval, Class Counsel will file with the Clerk of the Court copies of all Opt-out Statements.

(C)     Any Class Member who opts out of the settlement will not be considered a Participating Class Member and will not receive any Settlement Distribution Check. The Pro Rata Share attributable to any Class Member who timely submits an Opt-out-Statement will revert back to Defendant.

(D)     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, including the release provisions as approved or modified by the Court, will be bound by the judgment in this Litigation, and will have any state wage and hour claims that were or could have been asserted in this Litigation released with prejudice, as described in Section 5.1.

**2.7     Right to Revoke.**

If more than 20% of the Class Members timely submit an Opt-out Statement, Defendant shall have the right in its sole discretion, to be exercised prior to the Final Approval Order, to revoke this Agreement and proceed with the Litigation as if no settlement has been attempted, and the Parties agree that neither this Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement shall be admissible or offered or useable in the

9

Litigation or any other action or proceeding for any purpose whatsoever.  In that event, Defendant retains all rights, including but not limited to the rights to contest whether this Litigation should be maintained as a class or collective action, to contest the merits of the claims being asserted by Plaintiffs in the Litigation, and to assert its defenses.  Plaintiffs likewise retain all rights, including but not limited to the right to seek certification of a class action, and the Parties shall have the opportunity to engage in further class and expert discovery in accordance with applicable law.

**2.8**   **Objections to Settlement.**

(A)   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Claims Administrator via First-Class United States Mail post-marked by a date certain, to be specified on the Notice, which will be 45 days after the date on which the Claims Administrator mails the Notice.  The statement must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address, and telephone number(s) for the Class Member making the objection.  The Claims Administrator will stamp the date received on the original and send copies of each date-stamped objection, supporting documents, as well as a copy of the Notice mailed to the Objector, to Class Counsel and Defendant's Counsel by email delivery no later than three (3) days after receipt of the objection.  The Claims Administrator will also file the date-stamped originals of any and all objections with the Court no later than 14 days prior to the Final Fairness Hearing.

(B)   An individual who files an objection to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state their intention to do so in writing on their written objection at the time they submit their written objection.  An Objector may withdraw their objection at any time.  A Class Member who has submitted an Opt-out Statement may not submit an objection to the settlement.

(C)   The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.9**   **Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)   Not later than 14 days prior to the Fairness Hearing, Plaintiffs will submit, subject to Defendant's Counsel's prior approval, a Motion for Judgment and Final Approval ("Motion for Final Approval").

10

At the Fairness Hearing and in the Motion for Final Approval, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) direct the Claims Administrator to distribute Settlement Distribution Checks to the Class Members who do not timely opt-out, including Service Awards, if any, to be paid to the Named Plaintiff and Lead Plaintiffs as described in this Agreement; (3) approve the payment of attorneys' fees and costs to Class Counsel; (4) approve the payment of fees to the Claims Administrator; (5) enter an order permanently barring and enjoining all Participating Class Members from pursuing and/or seeking to reopen any Released State Law Claims or Released FLSA Claims, as defined below, but in no way limiting their ability to seek or enforce their rights under this Agreement; (6) order entry of final judgment in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

11

3.      **Effect of Failure to Grant Final Approval.**

(A)     If the Court denies the Final Approval Motion, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial and to seek appellate review of the ruling or order denying the motion and/or Court approval of a renegotiated settlement (without any change to the amount of the Gross Settlement Fund).  If, despite the Parties' efforts, the Court continues to deny the Final Approval Motion (or otherwise to approve the Settlement), or appellate review is denied, then the Settlement will become null and void.

(B)     If the Settlement becomes null and void, the Litigation will proceed as if no settlement had been attempted, no portion of the Gross Settlement Fund will be distributed, and the entire Gross Settlement Fund will revert to Defendant within five (5) days of the Settlement becoming null and void.  In that event, the class certified for purposes of settlement shall be decertified (either by the Court sua sponte or on a motion by Defendant, which Plaintiffs agree not to oppose), Defendant retains all rights and defenses, including the right to contest whether the Litigation should be certified and maintained as a collective and/or class action and to contest the merits of the claims being asserted in the Litigation, and the Parties agree that neither this Agreement, nor any ancillary documents, actions, statements, or filing in furtherance of settlement shall be admissible or offered or useable in the Litigation or any other action or proceeding for any purpose whatsoever.

(C)     Class Counsel will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice.

(D)     The Parties agree to share jointly the costs of the Claims Administrator fees incurred through the date the Court denies final approval.

4.      **SETTLEMENT TERMS**

4.1     **Settlement Amount.**

(A)     Defendant agrees to pay the Gross Settlement Fund, which shall fully and finally resolve and satisfy any and all claims that were or could have been asserted in this Litigation, including without limitation, for (i) attorneys' fees, expenses, and costs; (ii) fees to the Claims Administrator; (iii) all amounts to be paid to all Participating Class Members for releasing claims as set forth herein; and (iv) any Service Awards; but excluding the employer-side payroll taxes set forth in Section 4.1(B) below.

(B)     Other than any employer-side payroll taxes such as FICA, FUTA, and the like, the maximum total payment by Defendant under this Agreement, including all attorneys' fees, subject to Court approval, and past, present, and future costs, liquidated damages, penalties, interest, and any other payments provided by this Agreement or recoverable in the Litigation is $4,135,000.00.

(C)     Defendant shall fund the Escrow Account established by the Claims Administrator within 10 days after the Effective Date.

(D)     Within 20 days of the Effective Date, the Claims Administrator will set aside the Error Fund to cover any correctable errors or omissions related to Defendant's data and/or mistakes made during administration which are of no fault by the Class Member(s) and satisfy any claims for relief allowed pursuant to Federal Rule of Civil Procedure 60(b)(1) or 60(d).

(E)     Within 21 days of the Effective Date, the Claims Administrator will make each distribution in the follower order.

          (1)     Paying the Claims Administrator's total fees.
          (2)     Paying Class Counsel's Court-approved costs.
          (3)     Paying Class Counsel's Court-approved attorneys' fees.
          (4)     Paying Court-approved Service Awards.
          (5)     Paying Participating Class Members their Pro Rata Shares.

(F)     Class Members will have 90 days from the date of mailing to endorse and cash their Initial Settlement Distribution Checks.

(G)     Any amount of the Net Settlement Fund attributable to Class Members who timely filed an Opt-out Statement and any uncashed Initial Settlement Distribution Checks or Service Awards sent to Participating Class Members shall

13

revert to Defendant after the expiration of 90 days from the date of mailing the Initial Settlement Distribution Checks.

(H)     Within 180 days of the Effective Date, if any funds remain in the Error Fund, the Claims Administrator will make a subsequent distribution to each Participating Class Member using the allocation method set forth in Section 4.5 of this Agreement, and issue Subsequent Settlement Distribution Checks accordingly.

(I)     Class Members will have 90 days from the date of mailing to endorse and cash their Subsequent Settlement Distribution Checks.

(J)     Any amount of the Net Settlement Fund attributable to uncashed Subsequent Settlement Distribution Checks shall revert to Defendant after the expiration of 90 days from the date of mailing.

(K)     All amounts remaining in the Gross Settlement Fund and Net Settlement Fund 100 days after the mailing of the Subsequent Settlement Distribution Checks (or 100 days after the Claims Administrator determines that no Subsequent Settlement Distribution Checks are to be paid) shall revert to Defendant.

**4.2     Settlement Amounts Payable as Attorneys' Fees, Expenses and Costs.**

(A)     At the Fairness Hearing and in separate Motion for Attorneys' Fees and Costs, to be filed with the Court simultaneously with the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of $1,378,333.33, representing one-third of the Gross Settlement Fund, plus additional litigation costs and expenses not to exceed $120,000, all to be paid out of the Gross Settlement Fund. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court. After payment of the Court-approved attorneys' fees award and costs, Defendant shall have no additional liability for Class Counsel's attorneys' fees, expenses and/or costs.

(B)     The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C)     If the Court orders any reduction in attorneys' fees, costs, and/or expenses from those Class Counsel seeks in its petition, the Gross Settlement Fund will

automatically be reduced by the amount of the reduction in attorneys' fees, costs, and/or expenses ordered by the Court.

**4.3    Administration Fees**

(A)    Prior to the Fairness Hearing, in the Motion for Final Approval, Class Counsel shall petition the Court for reimbursement of the reasonable costs and expenses of the Claims Administrator from the Gross Settlement Fund in the amount of $25,188.  Subject to Defendant's review and reasonable approval, Defendant will not oppose such application.  After payment of the Court-approved Claims Administrator's fees and costs, Defendant shall have no additional liability for the Claims Administrator's fees and/or costs.

(B)    The application for administration fees is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for administration fees will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C)    If the Court orders any reduction in the administration fees Class Counsel seeks in its petition, the Gross Settlement Fund will automatically be reduced by the amount of the reduction in administration fees ordered by the Court.

**4.4    Service and General Release Awards**

(A)    In addition to their individualized Pro Rata Share, Class Representatives and the Lead Plaintiffs specified below will each apply to the Court in Plaintiffs' Motion for Final Approval, to receive a Service and General Release Award in the amounts specified below from the Gross Settlement Fund (the "Service Awards"). Defendant will not oppose this application.

(1)    For services rendered on behalf of the Class Members and as consideration for the release set forth below in Section 5.1(C), Class Representative Grace Park will apply for a Service Award of no more than $20,000.

(2)    For services rendered on behalf of the Class Members and as consideration for the release set forth below in Section 5.1(C), Class Representative Oronde Bell will apply for a Service Award of no more than $10,000.

(3)    For services rendered on behalf of the Class Members in sitting for depositions and as consideration for the release set forth below in Section

5.1(C), Plaintiffs Daniel Ferguson, Steve Coupet, Philip Zeiss, Selenny Luna, Rui Lin, Milosz Kowal, Anthony Ross, Elton Dakaj, Joseph Gaglione, Mario Alexandre, Philip Kim, Tia Mosobbir, John Campagna, Choudhury Ahmed, Kishan Patel, Jeremy Moulton, Ramin Shirvani, Matin Babaev, and Lawrence Leo, will each apply for a Service Award of no more than $1,500.

(B)  The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

(C)  The Class Representatives and Plaintiffs receiving a Service Award agree to the general release in Section 5.1(C) in consideration for receipt of the Service Award, if any, and their respective share of the Net Settlement Fund.

(D)  If the Court orders any reduction in the amount of any Service Award, the Gross Settlement Fund will automatically be reduced by the amount of the reduction in the Service Award ordered by the Court.

**4.5    Net Settlement Fund and Allocation to Class Members.**

(A)  A Class Member's proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the following formula (the Pro Rata Share):

(1)  The Net Settlement Fund, less the amounts allocated pursuant to this Section to Class Members who timely submitted Opt-out Statements, shall be paid to all Participating Class Members.

(2)  Each Class Member's Individual Allotted Points will be calculated using point values as follows:

a.  All Class Members shall receive one (1) point for every Week Worked as a Consultant prior to January 1, 2020.

b.  Each Class Member shall receive an amount of Overtime Points calculated as follows:

i.  For the first six (6) months of a Consultant's employment, one (1) point per Week Worked.

ii.     For the period of time after six (6) months through the Consultant's second anniversary of employment, seven and one-half (7.5) points per Week Worked for Consultants in one of the following Streams: Application Support, Business Analysis, IT Service Management, or Murex.

iii.     For the period of time after six (6) months through the Consultant's second anniversary of employment, four (4) points per Week Worked for Consultants in a Stream other than Application Support, Business Analysis, IT Service Management, and Murex, including Consultants for whom there is no record of Stream worked.

c.     A Class Member's Individual Allotted Points is the sum of each Class Member's points calculated under Section 4.5(A)(2), multiplied by their Overtime Points, and reduced proportionate to litigation risk as follows:

i.     For all Class Members who filed FLSA opt-in forms to join the Litigation, and did not later withdraw their participation in the Litigation, there will be no reduction or modification.

ii.     For all Class Members who did not file a FLSA opt-in form to join the Litigation, and who worked at a Placement in New York there will be a 25% reduction in points.

iii.     For all Class Members who did not file a FLSA opt-in form to join the Litigation, and who did not work at a Placement in New York there will be a 75% reduction in points.

(3)     For all Class Members who received Premium Pay, their Individual Allocated Points will be reduced proportionally by the approximate number of hours worked for which they received Premium Pay.

(4)     Class Members will not receive points for weeks worked after January 1, 2020.  After January 1, 2020 FDM changed its compensation structure in a manner that FDM believes further demonstrates that it satisfies the salary basis test.

(5)     Each Class Member's Individual Allotted Points will be divided by the sum of all of the Class Members' Individual Allotted Points combined.

17

(6)     The Pro Rata Share payable to each Class Member, assuming they do not timely file an Opt-out Statement, will be calculated by multiplying the resulting fraction under Section 4.5(A)(5) by the Net Settlement Fund .

(7)     The Notices to Class Members will indicate the Stream for which they were allocated points and whether records indicated they worked in New York.  Pursuant to the instructions set forth in the Notice, if a Class Member disputes such information, they may provide documentation to the Claims Administrator for review and if accepted their Pro Rata Share may be recalculated accordingly. After the Opt-out Period ends the calculations regarding Class Members' proportionate shares will be final and binding.

(B)     Pro Rata Shares paid to Participating Class Members as calculated pursuant to the formula set forth in paragraph 4.5(A) will be deemed 50% as a wage payment, and 50% as 1099 non-wage income.  The Service Awards will be considered 1099 non-wage income.  A 1099 shall be issued to Class Counsel for attorneys' fees for tax reporting purposes.

(C)     The payments (or portions thereof) deemed as unpaid wages shall be subject to required withholdings and deductions, and shall be reported in the year of payment as wage income to the Plaintiffs on a Form W-2 pursuant to withholdings choices made while the Consultant was employed by FDM.

Those payments (or portions thereof) allocated to all other claims, including without limitations claims for liquidated damages, interest, and other non-wage recovery shall not be subject to withholdings and deductions, and shall be reported in the year of payment as non-wage income to the Plaintiffs on a Form 1099 or analogous form.

(D)     Defendant shall be responsible for any and all applicable employer-side tax contributions on the Pro Rata Shares to Participating Class Members, including, but not limited to, Defendant's share of FICA and FUTA taxes.

(E)     The outcome of the Court's ruling on the allocation methodology set forth in Section 4.5(A) will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  In the event the Court rejects the allocation methodology set forth in this Agreement, the Parties will confer in good faith regarding a new proposed allocation methodology.  In the event the Parties are unable to resolve any outstanding issues concerning the allocation methodology, the Parties will engage the services of mediator Stephen Sonnenberg of JAMS.

18

(F)     The Claims Administrator is responsible to issue appropriate forms associated with payments of any amounts to Participating Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Participating Class Members.

5.      **RELEASE**

5.1     **Release of Claims.**

(A)     **Release of State Wage and Hour Claims.**  As of the Effective Date, and except as to such rights or claims as may be created by this Agreement, Named Plaintiff, Lead Plaintiffs and all Participating Class Members fully release and discharge the Released Parties from any and all claims, rights, and causes of action, whether known or unknown, under any applicable state or local wage and hour law, including the New York Labor Law, including without limitation statutory, constitutional, contractual, and common law claims for wages and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage-and-hour claim (including claims for minimum wages, overtime wages, based on deductions from wages, or any other claims for wages) relating to his or her employment with Defendant for all hours worked during employment and/or as a Trainee, failure to provide accurate wage statements and/or wage notices, failure to keep appropriate timekeeping and payroll records, deductions from wages, and failure to pay any other payments, benefits, claims or form of notice, remuneration or compensation under any applicable state or local wage and hour laws, which was or could have been alleged in the Litigation including, without limitation, any claims arising under the New York Minimum Wage Act, 46 New York Labor Law §§ 650 *et seq.*, the New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, the New York Department of Labor regulations, 2 12 N.Y.C.R.R. part 142, and all other statutes and regulations related to the foregoing, but excluding claims under the Fair Labor Standards Act, from February 26, 2010 through the date the Court grants Preliminary Approval of this Settlement Agreement (the "Released State Law Claims").  This release includes but is not limited to NYLL claims asserted and previously dismissed in the Litigation, including but not limited to the Training Time Claim, the Training Fee Claim, the Deduction Claim, and the Recordkeeping Claims.

(B)     **Release of FLSA Claims**.  As of the Effective Date and except as to such rights or claims as may be created by this Agreement, Named Plaintiff, Lead Plaintiffs and all Opt-in Plaintiffs, including all Participating Class Members who endorse their Initial Settlement Distribution Checks and/or their Subsequent Settlement Distribution Checks, will fully release and discharge the Released Parties from all claims, rights, and causes of action, whether known or unknown, which they may have or claim to have or could claim to have against any of the Released Parties arising under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et. Seq., and any and all regulations issued thereunder, as amended, including any claims which relate to minimum wage and/or overtime pay, failure to pay for all hours worked during employment and/or as a Trainee, failure to provide accurate wage

20

statements and/or wage notices, failure to keep appropriate timekeeping and payroll records, deductions from wages, and failure to pay any other payments, benefits, claims or form of notice, remuneration or compensation under the FLSA, from February 26, 2010 through the date the Court grants Preliminary Approval of this Settlement Agreement (the "Released FLSA Claims"). This release includes but is not limited to FLSA claims asserted and previously dismissed in the Litigation, including but not limited to the Training Time Claim, the Training Fee Claim, the Deduction Claim, and the Recordkeeping Claims.

(C)    **General Release.**  As of the Effective Date, in addition to the releases contained in Sections 5.1(A)-(B) above, in consideration of the Service Awards, to the fullest extent permitted by law, the Class Representatives and Plaintiffs receiving a Service Award hereby release and forever discharge the Released Parties from any and all claims, complaints, liabilities, obligations, promises, covenants, agreements, causes of action, damages, and expenses of any nature whatsoever, in law or in equity, including but not limited to all claims (whether known or unknown) arising from the start of their employment by Defendant up to and including the Effective Date relating to their employment at or termination of employment from Defendant, any contract (express or implied), any claim for equitable relief or recovery of punitive, compensatory, or other damages or monies (including claims as to taxes), attorneys' fees, any tort, and all claims arising under federal, state or local laws, rules or regulations, including but not limited to any claim, asserted or unasserted, which could arise under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991, the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the Americans With Disabilities Act of 1990; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act of 2008; the Family and Medical Leave Act of 1993; the Employee Retirement Income Security Act of 1974; the Worker Adjustment and Retraining Notification ("WARN") Act of 1988; the New York State WARN Act; the New York State Human Rights Law; the New York City Human Rights Law; the New York State Labor Law; and any right under any Defendant's pension, welfare, or stock plans; provided the Named Plaintiff and Lead Plaintiffs are not waiving any right to vested benefits, to enforce the terms of this Agreement, or any right which cannot be waived as a matter of law.

The Parties agree that any refusal by the Court to approve of the General Release as set forth herein shall not be a basis for rendering the remainder of the Agreement voidable or unenforceable.

(D)    It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all Plaintiffs' and Participating Class Members' claims as described in Sections 5.1(A) through 5.1(C), whether known or unknown, liquidated or

unliquidated.  As a consequence, the Plaintiffs and Participating Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the claims described in Sections 5.1(A) through 5.1(C), but the Plaintiffs and Participating Class Members shall be deemed to have, and by operation of the final judgment shall have, fully, finally, and forever settled and released any and all claims as discussed in Sections 5.1(A) through 5.1(C), known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Plaintiffs acknowledge, and each Participating Class Member shall be deemed by operation of the final judgment to have acknowledged, that the foregoing waivers in Sections 5.1(A) through 5.1(C) were separately bargained for and a key element of this Agreement of which the release is a part.

(E)     **Settlement Distribution Check Release Languag**e.  The Notice mailed to Class Members will inform them that all claims under the FLSA and state and local wage and hour laws will be deemed released upon endorsement of the check. Participating Class Members shall be issued checks with the following language:

> By endorsing, depositing, cashing, or negotiating this check, I consent to opt-into the lawsuit *Grace Park, et al. v. FDM Group, Inc.*, Civil Action No. 1:16-cv-01520-LTS-SN, for settlement purposes only, and release Defendant from all Fair Labor Standards Act claims and wage and hour claims arising under state and local law, including New York Labor Law claims, and any related claims as described in the Settlement Agreement and Release in the Litigation.

(F)     **Release of Fees and Costs for Settled Matters.**  Class Counsel and Plaintiffs, on behalf of the Class Members and each individual Participating Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with the Litigation, including Class Counsel's representation of Plaintiffs and the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs.

(G)     Subject to applicable law, the Parties agree that it is their intent that the resolution set forth in this Agreement will release any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by

22

each and all Participating Class Members including but not limited to participation to any extent in any class or collective action, to obtain a recovery against the Released Parties based on each and all Released State Law Claims and Released FLSA Claims.

(H)     All Participating Class Members forever agree that they, and each of them, shall not institute, nor accept any other relief from any other suit, class or collective action, administrative claim, or other claim of any sort or nature whatsoever against the Released Parties for the Released State Law Claims and Released FLSA Claims.

Except as provided in this Agreement and subject to applicable law, Participating Class Members further agree that, with respect to the Released State Law Claims and Released FLSA Claims, they will not affirmatively join, opt-into, or participate as a party plaintiff in any claim under the FLSA or state or local wage and hour law against the Released Parties, and that they will elect to opt-out of any action with respect to the Released State Law Claims and Released FLSA Claims, under the FLSA or state or local wage and hour law against the Released Parties of which they are involuntarily made members or participants either at the time they receive notice of the right to opt-out or such time as this Covenant Not to Sue is brought to their attention.  Moreover, Plaintiffs and Participating Class Members agree that they may not reinstate the Litigation.

If any Participating Class Member does not abide by this paragraph, Counsel for the Released Parties will notify such Class Member of their obligations under this Agreement and provide such individual with 30 days to opt-out of any such litigation. If such Class Members does not, after receiving such notification, opt-out of any such litigations, then he or she will indemnify the Released Parties for all damages and expenses, including attorneys' fees, incurred by any Released Parties in defending, participating in, or investigating any matter or proceeding covered by this paragraph.

(I)     Class Counsel represents and warrants that they have not encouraged any Class Member to opt out of the Settlement.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the settlement or requests for exclusion from the settlement, or appeal from the Final Approval Order.

## 5.2     Denial of Liability and Non-Admission

Defendant has agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this

settlement will avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendant, nor as an admission that a class or collective action class should be certified for any purpose other than settlement purposes.  The Parties agreed to use the point values set forth in Section 4.5 to calculate each Participating Class Member's Individual Allotted Points for settlement purposes only.  The point values used do not constitute an admission by Defendant about the average hours worked by Consultants, the average hours worked by Consultants in certain Streams, or the average hours worked by any individual Participating Class Member.

**5.3     Admissibility**

The Parties agree that neither this Agreement, including but not limited to the hours assumptions in Section 4.5(A)(2), nor any ancillary documents, actions, statements, or filings in furtherance of settlement shall be admissible or offered or useable in any other action or proceeding for any purpose whatsoever.

24

**6.      INTERPRETATION AND ENFORCEMENT**

**6.1      Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  The Parties agree to continue to meet and confer, in good faith, to address and resolve any and all issues that may arise throughout the administration and approval of this Settlement Agreement.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2      Confidentiality.**  The Parties and Parties' Counsel agree to maintain the confidentiality of any documents produced, formally or informally, during the course of the Litigation and to comply with the terms of the protective order entered in the Litigation.

**6.3      No Assignment.**  Class Counsel and Lead Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**6.4      Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.5      Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Lead Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**6.6      Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.7      Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.8      Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting

of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**6.9**    **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**6.10**    **Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**6.11**    **Mediation and Arbitration.** The Parties agree that any conflicts arising out of, or related to, the interpretation or implementation of this Agreement and of the class settlement contemplated thereby shall be referred to JAMS for mediation and, if no agreement is reached, to JAMS for binding arbitration.

**6.12**    **Waivers, etc. to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.13**    **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**6.14**    **Binding Authority of Counsel.** Counsel hereby represent that they are fully authorized to bind the Parties they represent to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

**6.15**    **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**6.16**    **Facsimile and Email Signatures.** Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email/PDF to counsel for the other Party. Any signature made and

26

transmitted by facsimile or email/PDF for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS:**

Dated: _August 12_____, 2020

By: _____
　　Christopher Q. Davis, Esq.
　　Rachel M. Haskell, Esq.
　　**The Law Office of Christopher Q.**
　　**Davis, PLLC**
　　80 Broad Street, Suite 703
　　New York, New York 10004
　　Telephone: (646) 430-7932
　　*Attorneys' for Plaintiffs', the FLSA*
　　*and the Settlement Class*

p.p. *Grace park*
_____
Grace Park
Named Plaintiff

By: _____
　　Stephen L. Ascher, Esq.
　　Emma J. Sullivan, Esq.
　　**Jenner & Block, LLP**
　　919 Third Avenue
　　New York, New York 10022
　　Telephone: (212) 891-1670
　　*Attorneys' for Defendant*

Name: _Keith Cameron_____
Title: _Group General Counsel_
FDM
For and on behalf of Defendant

EXHIBIT A

[PROPOSED] NOTICE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACE PARK, individually and on behalf of all others similarly situated, et al., | |
| Plaintiffs, | Civil Action No. 16-CV-1520 (LTS) |
| vs. | **NOTICE OF PROPOSED CLASS ACTION SETTLEMENT** |
| FDM GROUP, INC. | |
| Defendant. | |

**If you were employed by FDM GROUP, INC ("Defendant") as a Consultant from February 26, 2010 through December 31, 2019, please read this Notice.**

DATED:        [_____, 2020]

## PLEASE READ THIS NOTICE CAREFULLY

**This Notice relates to a proposed settlement of a class and collective action litigation.  It has been authorized by a federal court.  It contains important information as to your right to participate in the settlement, make a claim for payment, or elect not to be included in the class.**

### Introduction

This lawsuit alleges Defendant violated federal and state labor laws governing the payment of wages, minimum wages, and overtime wages, and recordkeeping.  The Court in charge of this case is the United States District Court for the Southern District of New York.  The lawsuit is known as *Grace Park, et al. v. FDM Group, Inc.* (the "Lawsuit").  The persons who filed the Lawsuit are called the Plaintiffs.  Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for Defendant's alleged failure to pay certain wage and overtime amounts to Plaintiffs during training time and while employed as consultants, for alleged deductions from wages including for amounts related to training fees owed by Plaintiffs to Defendant, and for alleged recordkeeping failures.  Defendant denies the Plaintiffs' allegations.  It is Defendant's position that it properly compensated Plaintiffs, made no impermissible deductions, and complied with all applicable recordkeeping and other wage payment requirements.  The Court previously dismissed Plaintiffs' claims related to training time and deductions.

1

Although Defendant denies that it is liable or owes damages to anyone, Defendant has concluded that, to avoid the burden, expense, and uncertainty of continuing this Lawsuit, it is in its best interests to resolve Plaintiffs' claims on behalf of Plaintiffs and other employees. Accordingly, Plaintiffs and Defendant have agreed to settle the Lawsuit. Defendant has agreed to pay up to $4,135,000 to cover the claims of all of the employees in this Lawsuit including expenses such as attorneys' fees. The Court has not decided who is right and who is wrong. Your legal rights may be affected, and you have a choice to make now. These rights and options are summarized below and fully explained in this Notice.

Based on the Claims Administrator's calculation, your settlement share will be approximately $[  ], and you may receive an additional payment of up to approximately $[  ] if funds set aside for errors remain as more fully explained in Section 4 below.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **DO NOTHING** | If you choose to participate in the settlement, you do not have to do anything. Once the settlement is approved by the Court, you will automatically receive a check for your allocated settlement amount. |
| **EXCLUDE YOURSELF** | If you wish to exclude yourself ("opt-out") from the Lawsuit you must follow the directions outlined in response to Section 7 below. |
| **OBJECT** | If you wish to object to the settlement, you may write to the Court about why you believe the settlement is unfair or unreasonable. If the Court rejects your objection, you will still be bound by the terms of the settlement for claims under state law unless you submit a valid and timely opt-out form. You will not be bound by the settlement if you opt-out of this action as described herein. If you object you may appear at the Fairness Hearing to speak to the Court about the fairness of the settlement. |

| **1.** | **Why did I receive this notice?** |
|---|---|

You have received this notice because Defendant's records show that you worked as a Consultant at FDM Group, Inc. sometime between from February 26, 2010 and December 31, 2019.

| 2. | What is a class action? |
|---|---|

A class action is a lawsuit where one or more persons sue not only for themselves, but also for other people who have similar claims. These other people are known as Class Members. In a class action, one court resolves the issues for all Class Members, except for those who exclude themselves from the Class. The Honorable Laura Taylor Swain, United States District Judge of the United States District Court for the Southern District of New York is presiding over this Lawsuit. Judge Swain has not made any determination about who is right or wrong in this Lawsuit. The parties have agreed to have Magistrate Judge Netburn preside over the Lawsuit for the purposes of approving the settlement and related proceedings.

| 3. | Why is there a settlement? |
|---|---|

Class Counsel analyzed and evaluated the claims made against Defendant in the Lawsuit, investigated Defendant's pertinent payroll policies, analyzed payroll data for Plaintiffs and potential Class Members, and evaluated Defendant's ability to pay a judgment. Based upon Class Counsel's analysis and evaluation of this data, relevant law, and the substantial risks of continued litigation, including the possibility that the Lawsuit, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel entered into this proposed settlement. Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of the Plaintiffs and the Class Members. Your estimated portion of the settlement will be based on factors including the number of weeks you worked during the class period, after all attorneys' fees, costs, service payments, and administrative charges have been paid.

| 4. | Payment to Class |
|---|---|

If you do nothing, you will automatically be deemed to be part of the class settlement. Your proportionate share of the settlement, per the allocation formula set forth below, is based on FDM's records regarding your placement Stream and whether your placement was in New York State or not.

Pursuant to FDM's records:

- You worked in the [INSERT STREAM].
- You worked [in New York or outside New York].

If you dispute FDM's records as to (1) your placement Stream, or (2) whether you worked in New York or not, you may provide documentation as to your actual placement Stream for review by the Claims Administrator at [INSERT INFO].

In the event your Stream was unknown, and you have documentation to show you were placed in the Application Support, Business Analysis, IT Service Management, or Murex Streams, please provide such information to the Claims Administrator at [INSERT INFO].

Using this information, you proportionate share of the settlement fund will be calculated as follows:

    (1)    Each Class Member's Individual Allotted Points will be calculated using point values as follows:

        a.    All Class Members shall receive one (1) point for every Week Worked as a Consultant prior to January 1, 2020.

        b.    Each Class Member shall receive an amount of Overtime Points calculated as follows:

            i.    For the first six (6) months of a Consultant's employment, one (1) point per Week Worked.

            ii.    For the period of time after six (6) months through the Consultant's second anniversary of employment, seven and one-half (7.5) points per Week Worked for Consultants in one of the following Streams: Application Support, Business Analysis, IT Service Management, or Murex.

            iii.    For the period of time after six (6) months through the Consultant's second anniversary of employment, four (4) points per Week Worked for Consultants in a Stream other than Application Support, Business Analysis, IT Service Management, and Murex, including Consultants for whom there is no record of Stream worked.

        c.    A Class Member's Individual Allotted Points is the sum of each g Class Member's points calculated under Section (1), multiplied by their Overtime Points, and reduced proportionate to litigation risk as follows:

            i.    For all Class Members who filed FLSA opt-in forms to join the Litigation, and did not later withdraw their participation in the Litigation, there will be no reduction or modification.

            ii.    For all Class Members who did not file a FLSA opt-in form to join the Litigation, and who worked at a Placement in New York there will be a 25% reduction in points.

4

    iii. For all Class Members who did not file a FLSA opt-in form to join the Litigation, and who did not work at a Placement in New York there will be a 75% reduction in points.

 (2) For all Class Members who received Premium Pay, their Individual Allocated Points will be reduced proportionally by the average number of hours worked for which they received Premium Pay.

 (3) Class Members will not receive points for weeks worked after January 1, 2020.  After January 1, 2020 FDM changed its compensation structure in a manner that FDM believes further demonstrates that it satisfies the salary basis test.

 (4) Each Class Member's Individual Allotted Points will be divided by the sum of all Class Members' Individual Allotted Points combined.

 (5) The Pro Rata Share payable to each Class Member, assuming they do not timely file an Opt-out Statement, will be calculated by multiplying the resulting fraction under Section (4) by the Net Settlement Fund.

Based on the information contained in this Notice, the Claims Administrator calculated your Pro Rata Share as approximately [$XX] and you may receive an additional payment not to exceed approximately [$XX] if funds set aside for errors remain.

Again, if you would like more information about the amount of your individual settlement share, or if you dispute your placement Stream or whether you were placed in New York, please contact Claims Administrator, RG/2 Claims Administration at [RG/2 contact information].

After the Opt-out Period ends, and Class Members have been provided an opportunity to dispute their Stream and placement locations, all calculations regarding Class Members' proportionate shares of the Net Settlement Fund will be final and binding.

Any unclaimed funds shall revert to Defendant.

5

| 5. | **Service Payments** |
|---|---|

The Settlement proposes that Plaintiffs Grace Park and Oronde Bell, who each took a lead role in this litigation and assisted in its resolution, will each receive a service payment in the amount of up to $20,000 and $10,000, respectively, for their significant involvement and time in discovery for the benefit of the Class Members.

Additionally, he Settlement proposes, for their significant involvement and time in discovery for the benefit of the Class Members, Plaintiffs Daniel Ferguson, Steve Coupet,  Philip Zeiss, Selenny Luna, Rui Lin, Milosz Kowal, Anthony Ross, Elton Dakaj, Joseph Gaglione, Mario Alexandre, Philip Kim, Tia Mosobbir, John Campagna, Choudhury Ahmed, Kishan Patel, Jeremy Moulton, Ramin Shirvani, Matin Babaev, and Lawrence Leo, will each receive a service payment in the amount of no more than $1,500.

| 6. | **Procedures** |
|---|---|

If you do nothing, you will automatically participate in the class settlement.  If you want to exclude yourself, please refer to Section 7 below.

If the Court grants final approval of the Settlement, this Lawsuit will end, and Class Members who do not opt-out will release Defendant through December 31, 2019, from all claims asserted in the Lawsuit as described below.  This means that you cannot sue, continue to sue, or be party to any other lawsuit against Defendant regarding the claims that were brought or could have been brought in this Lawsuit, although you may still retain certain federal claims.  It also means that all of the Court's orders will apply to you and legally bind you.

The Releases in the Settlement Agreement provide that:

(i)     **With respect to claims under state law, including under New York State law, you are releasing all wage and hour claims that were or could have been asserted, for the period February 26, 2010 through the date the Court grants Preliminary Approval of the Settlement Agreement; and**

(ii)    **With respect to claims under federal law, you are releasing all wage and hour claims that were or could have been asserted, for the period January 29, 2014 through the date the Court grants Preliminary Approval of the Settlement Agreement.**

**By failing to opt-out of this Lawsuit, you will automatically be part of the class settlement for the state law claims.  If you have not previously filed an FLSA opt-in form to join this Lawsuit, by endorsing or depositing a Settlement Distribution Check, you will automatically be part of the collective class settlement for the federal law claims.  If you previously filed an FLSA opt-in form to join this Lawsuit and did not later withdraw your participation, you are part of the collective class settlement for the federal law claims.**

6

**7.        How Do I Exclude Myself From The Settlement?**

If you do not want to participate in the class settlement, you must take steps to exclude yourself from this Lawsuit.

If you want to exclude yourself, you must mail a written, signed statement to the Claims Administrator clearly stating that you elect to opt-out from the settlement, such as by stating: "I opt-out of the FDM Group wage and hour settlement," and include your name, address, and telephone number ("Opt-out Statement").  To be effective, the Opt-out Statement must be mailed to the Claims Administrator via First Class United States Mail, postage prepaid, and postmarked by [  ], 2020.

Claims Administrator
RG/2 Claims Administration
[RG/2 contact information]

If you exclude yourself from this Lawsuit and settlement, you will NOT be allowed to object to the settlement as described in Section 12 below

**8.        If I don't exclude myself from the settlement, can I sue Defendant for the same thing later?**

No.  By participating in the settlement, you give up any rights to sue Defendant with regard to the claims brought in this Lawsuit or which could have been brought in this Lawsuit.  If you have a pending lawsuit, speak to your lawyer in that case immediately to see if this settlement will affect your other case.  Remember, the exclusion deadline is [        ], 2020.

**9.        If I exclude myself, can I get money from this settlement?**

No.  If you exclude yourself, you will not receive any money from this Lawsuit.  But, you may sue, continue to sue, or be part of a different lawsuit against Defendant regarding these same claims.

**10.        Do I have a lawyer in this case?**

The law firm of The Law Office of Christopher Q. Davis, PLLC, 80 Broad Street, Suite 703, New York, NY 10004 has been designated as legal counsel to represent you and the other Class Members in the Lawsuit.  These lawyers are called Class Counsel.  You will not be charged separately for these lawyers.  Their fees are being paid from the total settlement fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**11.        How will the service providers be paid?**

Class Counsel will ask the Court to approve payment of up to $1,378,333.33 to them for attorneys' fees, plus additional costs and expenses not to exceed $120,000.  The fees would pay Class Counsel

for all work that they have performed in this Lawsuit including filing briefs, engaging in discovery, investigating the facts, attending court conferences, and negotiating and overseeing the settlement.

The Court has approved payment of $25,188 as fees to RG/2 Claims Administration to administer the settlement.

| **12.** | **How do I tell the Court that I don't like the settlement?** |
|---|---|

You can object to the settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  If the Court rejects your objection, you will still be bound by the terms of the settlement of your claims under state law unless you have submitted a valid and timely request for exclusion.  To object, you must send a letter saying that you object to the settlement in *Grace Park, et al. v. FDM Group Inc.*  Your statement must include all reasons for the objection and any supporting documentation in your possession. Your statement must also include your name, address, and telephone number.

If you wish to present your objection at the Fairness Hearing described below, you must state your intention to do so in your written objection.  You statement should be as detailed as possible otherwise the Court may not allow you to present reasons for your objection at the fairness hearing that you did not describe in your written objection.  Mail the objection to the Claims Administrator via First-Class United States Mail to the address below.  Your objection will not be heard unless it is mailed to the Claims Administrator via First Class United States Mail and post-marked by [  ], 2020.

> Claims Administrator
> RG/2 Claims Administration
> [RG/2 contact information]

The Claims Administrator will share your objection with Class Counsel and Defendant's counsel and your objection statement will be filed with the Court.

You may not object to the settlement if you submit a letter requesting to exclude yourself or "opt-out" of the settlement of the Lawsuit.

| **13.** | **What's the difference between objecting and excluding?** |
|---|---|

Objecting is simply telling the Court that you don't like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself from the settlement ("opting-out") is telling the Court that you don't want to be part of the Lawsuit.  If you exclude yourself, you are not allowed to object because the case no longer affects you.

The Court will hold a Fairness Hearing to decide whether to approve the settlement.  Class Counsel will answer questions the Judge may have.  You do not have to come to the hearing, but you are welcome to do so at your own expense.

8

If you send an objection, it is not necessary for you to come to Court to talk about it, but you may do so at your own expense or pay your own lawyer to attend.  As long as you mailed your written objection on time, the Court will consider it.  If you do attend the hearing, it is possible that you will not be permitted to speak unless you timely object in writing as described above and notify the Court of your intention to appear at the fairness hearing.

| **14.** | **When and where will the Court decide whether to approve the settlement?** |
| --- | --- |

The Court will hold a Fairness Hearing at [ ] a.m./p.m. on [ ], 2020, [location/virtual].

At this hearing the Court will consider whether the terms of the settlement are fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Judge will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

| **15.** | **Are there more details about the settlement?** |
| --- | --- |

This notice summarizes the proposed settlement.  More details are in the Settlement Agreement and Release.  You can review the Settlement Agreement and Release by asking for a copy of the Settlement Agreement and Release by writing or calling the Claims Administrator at: [insert information].  If you have questions about the Settlement Agreement you may also contact Class Counsel at: [Insert contact information for Park Settlement].